No. 26-1503

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

STUDENTS FOR LIFE-ACTION,

*Plaintiff-Appellant*,

v.

MARTY JACKLEY, *in his official capacity as
Attorney General,* MONAE JOHNSON, *in her
official capacity as Secretary of State,*

*Defendants-Appellees*

Appeal from the United States District Court
for the District of South Dakota
No. 3:2023-cv-03010

**Appellant's Brief**

Jeffrey Schwab
Timothy Kilcullen
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
tkilcullen@ljc.org

*Counsel for Appellant*

# Summary of the Case

South Dakota Codified Law § 12-27-16 requires any person or entity spending more than $100 for an independent, non-candidate "communication concerning a candidate, public office holder, ballot question, or political party" to: (1) include an on-ad disclaimer identifying the speaker, listing the entity's address, and naming the five persons making the largest contributions to the entity during the preceding twelve months; and (2) file a disclosure statement with the Secretary of State within 48 hours. Violations are criminal misdemeanors punishable by jail time and fines.

This case involves three challenges to Section 12-27-16: (1) that it is overbroad; (2) that it is unconstitutional compelled speech, and (3) that it is void-for-vagueness. The district court dismissed the overbreadth, vagueness, and facial compelled speech claims, and granted summary judgment to Defendants on the as-applied compelled speech claim.

Given the complexity of the statute being litigated and the fact that this appeal covers multiple claims, Appellant's counsel requests 20 minutes to present oral argument.

i

## Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Local Rule 26.1A, Plaintiff-Appellant Students for Life Action certifies that it does not have a parent company and no publicly held company owns 10% or more of its stock.

Appellate Case: 26-1503     Page: 3     Date Filed: 06/15/2026 Entry ID: 5651114

# Table of Contents

Summary of the Case.................................................................................... i

Corporate Disclosure Statement ............................................................ ii

Table of Contents ..................................................................................... iii

Table of Authorities..................................................................................vi

Jurisdictional Statement .......................................................................... 1

Statement of Issues................................................................................... 1

Statement of the Case...............................................................................3

Summary of the Argument ...................................................................... 8

Argument ................................................................................................. 11

   I.    Section 12-27-16's on-ad donor disclaimer requirement is facially unconstitutional compelled speech ................................... 11

      A.   Standard of Review.................................................................... 11

      B.   At a minimum, Section 12-27-16 fails exacting scrutiny ............12

      C.   Section 12-27-16 fails exacting scrutiny because it is not narrowly tailored to the government's informational interest....................................................................................16

         1.   Section 12-27-16's text sweeps beyond election-related speech, and the district court's narrowing construction cannot supply the tailoring the statute lacks. .........................18

         2.   The State can achieve its informational interest through reporting—without commandeering the communication itself..................................................................................20

         3.   The district court's "instant information" rationale does not satisfy exacting scrutiny .................................................22

         4.   Section 12-27-16 provides no off-ramp for donors....................23

Appellate Case: 26-1503   Page: 4   Date Filed: 06/15/2026 Entry ID: 5651114

5.  Section 12-27-16's $100 threshold captures routine civic discourse ...................................................................25

6.  Section 12-27-16's absence of any temporal limitation is an independent ground for facial invalidity.............................27

7.  Section 12-27-16's 48-hour filing requirement confirms, rather than cures, the statute's lack of fit................................30

II.  Even if Section 12-27-16 has constitutional applications, it is unconstitutional as applied to SFLA ............................................31

A.  Standard of Review...................................................................31

B.  Section 12-27-16 is unconstitutional as applied to SFLA ..........32

C.  SFLA's donors face a constitutionally cognizable chill................34

D.  The geographic mismatch between SFLA's national operations and South Dakota's disclosure requirements defeats narrow tailoring ............................................................37

E.  Section 12-27-16 is not narrowly tailored to SFLA's activities...................................................................................39

F.  SFLA has standing to bring its as-applied challenge to Section 12-27-16 ......................................................................40

1.  Section 12-27-16's ambiguity creates a credible threat of prosecution .......................................................................42

2.  SFLA should not be required to engage in express advocacy to have standing.......................................................45

3.  The First Amendment chill on SFLA's donors independently confers standing ..............................................46

III.  Section 12-27-16 is unconstitutionally overbroad because its "concerning" trigger reaches nearly all year-round civic discourse regardless of spend or timing ......................................48

A.  Standard of Review...................................................................48

iv

Appellate Case: 26-1503    Page: 5    Date Filed: 06/15/2026 Entry ID: 5651114

B. Section 12-27-16 is unconstitutionally overbroad because it sweeps far beyond the regulation of express advocacy ...............48

IV. Section 12-27-16 is void for vagueness ..........................................55

A. Standard of Review...................................................................55

B. Section 12-27-16 is void for vagueness because it does not define the scope of the term "concerning." .................................55

C. This Court should follow the precedent of its sister court ..........59

Conclusion....................................................................................61

Certificate of Compliance..................................................................62

Appellate Case: 26-1503    Page: 6    Date Filed: 06/15/2026 Entry ID: 5651114

# Table of Authorities

**Cases**

*281 Care Comm. v. Arneson,*
638 F.3d 621 (8th Cir. 2011)............................................................42

*ACLU of Nev. v. Heller,*
378 F.3d 979 (9th Cir. 2004) .......................................................17–18

*Alexis Bailly Vineyard, Inc. v. Harrington,*
931 F.3d 774 (8th Cir. 2019) ...........................................................44

*American Bev. Ass'n v. City & Cnty. of S.F.,*
916 F.3d 749 (9th Cir. 2019) ...........................................................21

*Americans for Prosperity Found. v. Bonta,*
594 U.S. 595 (2021) ................ 1, 2, 3, 16, 17, 21, 22, 26, 28, 34, 36, 37, 47, 48, 52, 55

*Animal Legal Def. Fund v. Reynolds,*
89 F.4th 1071 (8th Cir. 2024) ...........................................................41

*Arizona Free Enter. Club's Freedom Club PAC v. Bennett,*
564 U.S. 721 (2011) .....................................................................13

*Buckley v. Valeo,*
424 U.S. 1 (1976) .............................................2, 3, 13, 17, 29, 52–53

*California Republican Party v. Fair Political Practices Comm'n,*
CIVS-04 2144, 2004 U.S. Dist. LEXIS 22160
(E.D. Cal. Oct. 27, 2004) .................................................................25

*California Teachers Ass'n v. State Bd. of Educ.,*
271 F.3d 1141 (9th Cir. 2001) ...........................................................58

*Carton v. Gen. Motor Acceptance Corp.,*
611 F.3d 451 (8th Cir. 2010)............................................................11

*Citizens United v. FEC,*
558 U.S. 310 (2010) ....................2, 3, 15, 17, 19, 38, 47, 51, 52, 56, 57

*Cornelio v. Connecticut,*
32 F.4th 160 (2d Cir. 2022) .........................................................17, 40

*Dakotans for Health v. Noem,*
52 F.4th 381 (8th Cir. 2022)..........................................................16, 41

Appellate Case: 26-1503    Page: 7    Date Filed: 06/15/2026 Entry ID: 5651114

*Dinner Table Action v. Schneider,*
 2025 U.S. Dist. LEXIS 134052 (D. Me. July 15, 2025) .....................24

*Doe v. Dardanelle Sch. Dist.,*
 928 F.3d 722 (8th Cir. 2019)............................................................32

*FCC v. Fox Television Stations, Inc.,*
 567 U.S. 239 (2012) .......................................................................60

*FDA v. All. For Hippocratic Med.,*
 602 U.S. 367 (2024) .......................................................................40

*FEC v. Wisc. Right to Life, Inc.,*
 551 U.S. 449 (2007) ...................................................................33, 49

*First Choice Women's Res. Ctrs., Inc. v. Davenport,*
 224 L. Ed. 2d 672 (2026)............................................ 2, 35, 36, 37, 47

*Gaspee Project v. Mederos,*
 13 F.4th 79 (1st Cir. 2021) ..............................24, 25, 27, 31, 39, 42, 51

*Grayned v. City of Rockford,*
 408 U.S. 104 (1972) ..................................................................3, 55, 60

*Hill v. Colorado,*
 530 U.S. 703 (2000) .......................................................................56

*Human Life of Wash., Inc. v. Brumsickle,*
 624 F.3d 990 (9th Cir. 2010).........................................................51

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,*
 515 U.S. 557 (1995) .......................................................................12

*Iowa Right to Life Comm., Inc. v. Tooker,*
 717 F.3d 576 (8th Cir. 2013)......................................................15, 46

*Johnson v. United States,*
 576 U.S. 591 (2015) .......................................................................55

*Jones v. Jegley,*
 947 F.3d 1100 (8th Cir. 2020) ........................................................21

*Majors v. Abell,*
 361 F.3d 349 (7th Cir. 2004)..........................................................11

*McCullen v. Coakley,*
 573 U.S. 464 (2014) .......................................................................40

Appellate Case: 26-1503    Page: 8    Date Filed: 06/15/2026 Entry ID: 5651114

*McIntyre v. Ohio Elections Comm'n,*
514 U.S. 334 (1995) ..............................................................22–23

*Minn. Ch. of Assoc. Builders & Contractors, Inc. v. Blissenbach,*
155 F.4th 1015 (8th Cir. 2025)..............................................44–45

*Minn. Citizens Concerned for Life, Inc. v. Swanson,*
692 F.3d 864 (8th Cir. 2012).......................... 16, 20–21, 54

*Missourians v. Klahr,*
892 F.3d 944 (8th Cir. 2018) ................................................20

*Morse v. Frederick,*
551 U.S. 393 (2007) ...............................................................14

*NAACP v. Ala. ex. rel. Patterson,*
357 U.S. 449 (1958) ...............................................................46

*NAACP v. Claiborne Hardware Co.,*
458 U.S. 886 (1982) ...............................................................14

*National Ass'n for Gun Rights v. Mangan,*
933 F.3d 1102 (9th Cir. 2019) ........................................50–51

*National Inst. of Family & Life Advocates v. Becerra,*
585 U.S. 755 (2018) .........................................................1–2, 15

*Nixon v. Shrink Missouri Government PAC,*
528 U.S. 377 (2000) ..........................................................14–15

*No on E v. Chiu,*
85 F.4th 493 (9th Cir. 2023)..........................................53, 54

*Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.,*
475 U.S. 1 (1986) ...................................................................13

*Perry v. Precythe,*
121 F.4th 711 (8th Cir. 2024) ............................... 11, 48, 55

*Police Dep't of Chicago v. Mosley,*
408 U.S. 92 (1972) .................................................................14

*Reed v. Town of Gilbert,*
576 U.S. 155 (2015) ...............................................................14

*Reno v. ACLU,*
521 U.S. 844 (1997) .........................................................55, 56

*Riley v. Nat'l Fed'n of Blind of N.C., Inc.,*

Appellate Case: 26-1503    Page: 9    Date Filed: 06/15/2026 Entry ID: 5651114

487 U.S. 781 (1988) ...........................................................13

*Rio Grande Found. v. Oliver,*
154 F.4th 1213 (10th Cir. 2025) .............................................24, 26, 31

*R.J. Reynolds Tobacco Co. v. FDA,*
696 F.3d 1205 (D.C. Cir. 2012) ........................................................21

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.,*
547 U.S. 47 (2006) ..........................................................................12

*Secretary of Md. v. Joseph H. Munson Co.,*
467 U.S. 947 (1984) .................................................................41, 54

*Shelton v. Tucker,*
364 U.S. 479 (1960) ........................................................................36

*Sisters for Life, Inc. v. Louisville-Jefferson Cnty.,*
56 F.4th 400 (6th Cir. 2022)...........................................................40

*Smith v. Goguen,*
415 U.S. 566 (1974) .................................................................57, 59

*Smith v. Helzer,*
95 F.4th 1207 (9th Cir. 2024) .................................................53, 54

*Stahl v. City of St. Louis,*
687 F.3d 1038 (8th Cir. 2012) ........................................................55

*Stephenson v. Davenport Cmty. Sch. Dist.,*
110 F.3d 1303 (8th Cir. 1997) ........................................................56

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) .........................................................44, 45, 46

*Turner Broad. Sys. Inc. v. FCC,*
512 U.S. 622 (1994) ........................................................................14

*United States v. Freeman,*
808 F.2d 1290 (8th Cir. 1987) ........................................................59

*United States v. Stevens,*
559 U.S. 460 (2010) ............................................... 20, 48, 49–50, 56

*West Va. State Bd. of Educ. v. Barnette,*
319 U.S. 624 (1943) ........................................................................12

*Wis. Right to Life, Inc. v. Barland,*
751 F.3d 804 (7th Cir. 2014) ..........................................................19

Appellate Case: 26-1503    Page: 10    Date Filed: 06/15/2026 Entry ID: 5651114

*Wooley v. Maynard,*
  430 U.S. 705 (1977) ...................................................................12

*Wyo. Gun Owners v. Gray,*
  83 F.4th 1224 (10th Cir. 2023) ......................2, 3, 23, 25, 31, 59–60, 61

**Constitutional Authority**

U.S. CONST. amend. I .................................................................2, 3

U.S. CONST. amend. XIV ................................................................3

**Statutory & Regulatory Authority**

28 U.S.C. § 1291 .........................................................................1

28 U.S.C. § 1331 .........................................................................1

28 U.S.C. § 1343 .........................................................................1

42 U.S.C. § 1983 .........................................................................1

SDCL § 12-27-16 .............1–6, 8–13, 15–20, 23, 25–28, 30–32, 34, 38–40,
  42–44, 46, 48–50, 52, 54–55, 57–60

SDCL § 12-27-35 .........................................................................6

SDCL § 22-6-2 .........................................................................6, 59

Wyo. Stat. Ann. § 22-25-106 ...............................................................60

**Rules**

Fed. R. Civ. P. 12(b)(6) ...........................................................11, 48, 55

Appellate Case: 26-1503     Page: 11     Date Filed: 06/15/2026 Entry ID: 5651114

## Jurisdictional Statement

The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it arises under the United States Constitution, and pursuant to 28 U.S.C. § 1343 because relief is sought under 42 U.S.C. § 1983.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291. On March 13, 2026, Appellant filed a timely notice of appeal, App. 132; R. Doc. 84, from the district court's August 27, 2024 order partially granting the motion to dismiss, Add. 1; App. 43; R. Doc. 44, the court's February 17, 2026 order granting summary judgment to Defendant, Add. 45; App. 91; R. Doc. 82, and the court's February 17, 2026 judgment, Add. 85; App. 131; R. Doc. 83.

## Statement of Issues

I.     Whether SDCL § 12-27-16's on-ad donor disclaimer requirement is facially unconstitutional compelled speech because it lacks any opt-out mechanism, temporal limitation, or distinction between campaign speech and issue advocacy.

Cases: *Americans for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *National Inst. of Family & Life Advocates v. Becerra,* 585 U.S.

1

755 (2018); *Citizens United v. FEC*, 558 U.S. 310 (2010); *Wyo. Gun Owners v. Gray*, 83 F.4th 1224 (10th Cir. 2023).

Statutory & constitutional authority: U.S. Const. amend. I; SDCL § 12-27-16.

II.     Whether SDCL § 12-27-16's on-ad donor disclaimer requirement is unconstitutional compelled speech as applied to SFLA, which engages exclusively in issue advocacy, whose donors face documented threats of retaliation, and whose five largest national donors may have no connection to South Dakota or intent to fund South Dakota communications.

Cases: *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 224 L. Ed. 2d 672 (2026); *Buckley v. Valeo*, 424 U.S. 1 (1976).

Statutory & constitutional authority: U.S. Const. amend. I; SDCL § 12-27-16.

III.    Whether SDCL § 12-27-16 is unconstitutionally overbroad because it sweeps beyond express advocacy to reach every communication concerning a candidate, office holder, ballot question, or

2

Appellate Case: 26-1503     Page: 13     Date Filed: 06/15/2026 Entry ID: 5651114

political party, with a low $100 threshold, and no temporal limitation near an election.

Cases: *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Citizens United v. FEC*, 558 U.S. 310 (2010); *Wyo. Gun Owners v. Gray,* 83 F.4th 1224 (10th Cir. 2023).

Statutory & constitutional authority: U.S. Const. amend. I; SDCL § 12-27-16.

IV.    Whether SDCL § 12-27-16 is void for vagueness under the Fourteenth Amendment because its trigger—communications "concerning" candidates, office holders, ballot questions, or political parties—is undefined, provides no guidance to speakers, and imposes criminal penalties for violations.

Cases: *Citizens United v. FEC*, 558 U.S. 310 (2010); *Grayned v. City of Rockford*, 408 U.S. 104 (1972); *Buckley v. Valeo,* 424 U.S. 1 (1976).

Statutory & constitutional authority: U.S. Const. amend. I; U.S. Const. amend. XIV; SDCL § 12-27-16.

## Statement of the Case

Plaintiff-Appellant Students for Life Action (SFLA) is a nonprofit organization dedicated to training and mobilizing this generation of pro-

3

Appellate Case: 26-1503     Page: 14     Date Filed: 06/15/2026 Entry ID: 5651114

life leaders to impact public policy and influence key elections. App. 5; R. Doc. 24, at ¶ 17. As part of its mission, SFLA engages in advocacy in South Dakota, where it makes efforts to notify citizens prior to elections of various local political leaders' positions on abortion-related issues. App. 1–2, 5; R. Doc. 24, at ¶¶ 2, 18.

In South Dakota, SFLA has communicated with voters through text messages informing them of incumbent legislators' voting records on abortion legislation and their responses to SFLA's candidate surveys, and through mailers urging citizens to contact their state legislators to encourage support for pro-life bills. App. 5–6; R. Doc. 24, ¶¶ 18–21. SFLA's communications do not tell recipients whom to vote for or against; rather, they encourage recipients to sign petitions, urge candidates to keep pro-life pledges, or contact office holders about pending legislation. App. 5–6; R. Doc. 24, ¶¶ 19–21. Each of SFLA's 2022 text messages cost $116.62, and its future communications will likewise exceed $100. App. 5; R. Doc. 24, ¶ 18.

South Dakota law imposes disclaimer and disclosure requirements on any person or entity that spends more than $100 on an "independent communication expenditure." SDCL § 12-27-16. The term "independent

4

communication expenditure" is defined as "an expenditure, including the payment of money or exchange of other valuable consideration or promise, made by a person, entity, or political committee for a communication concerning a candidate or a ballot question" (excluding communications made in coordination with a political campaign or party). SDCL § 12-27-1(11). The term "contributor" is not defined, but the word "contribution" means "any gift, advance, distribution, deposit, or payment of money or any other valuable consideration" that is "made for the purpose of influencing" an election or nomination contest. SDCL § 12-27-1(6).

The statute requires each such communication to include an on-ad disclaimer that (a) identifies the person or entity funding the communication, (b) states a mailing and website address, (c) lists the entity's "Top Five Contributors"—the five largest donors in the preceding twelve months—and (d) states that the communication "is independently funded and not made in consultation with any candidate, public office holder, or political committee." SDCL § 12-27-16(1). In addition, the speaker must file a disclosure statement with the

5

Appellate Case: 26-1503     Page: 16     Date Filed: 06/15/2026 Entry ID: 5651114

Secretary of State within 48 hours of dissemination. SDCL § 12-27-16(2).

The statute contains no temporal limit—it applies regardless of proximity to any election. *See* SDCL § 12-27-16. It contains no minimum donor threshold: even a one-dollar donor may be listed as a top five contributor. *See id.* And it provides no mechanism for donors to opt out of on-ad listing by earmarking their contributions away from election-related spending. *See id.*

The consequences for noncompliance are severe. A first violation is a Class 2 misdemeanor punishable by thirty days' imprisonment, a $500 fine, or both. SDCL §§ 12-27-16(1), 22-6-2. A subsequent offense within a calendar year is a Class 1 misdemeanor carrying up to one year in prison and a $2,000 fine. *Id.* The Attorney General may also seek civil penalties of up to $10,000 per violation. SDCL § 12-27-35.

On June 5, 2023, SFLA sued Defendants, the Attorney General and the Secretary of State, alleging the statute is facially overbroad (Count I), violates the First and Fourteenth Amendments on its face and as applied to SFLA's issue advocacy (Count II), and is void for vagueness (Count III). App. 16–24; R. Doc. 24, ¶¶ 55–93. Defendants moved to

6

dismiss, arguing both that SFLA lacked standing and that the statute is constitutional. Add. 4; App. 46; R. Doc. 44, at 4.

On August 27, 2024, the district court granted the motion in part. Add. 1; App. 43; R. Doc. 44. The court dismissed the facial overbreadth claim (Count I), the facial compelled speech claim in Count II, and the vagueness claim (Count III), but denied dismissal of the as-applied portion of Count II—specifically, the question whether SFLA receives "contributions" subject to disclosure and whether the statute's lack of donor "off-ramps" violates the First Amendment. Add. 44; App. 86; R. Doc. 44, at 44.

Both parties moved for summary judgment. Add. 46; App. 92; R. Doc. 82, at 2. On February 17, 2026, the district court granted Defendants' motion and denied SFLA's. Add. 46; App. 92; R. Doc. 82, at 2. The court held SFLA lacked standing because the "Top Five Contributors" requirement turns on "contributions" as defined in SDCL § 12-27-1(6)—consideration given "for the purpose of influencing" an election—and SFLA's donors contribute to support issue advocacy, not express advocacy, so SFLA faced no credible threat of prosecution. Add. 58–69; App. 104–115; R. Doc. 82, at 14–25. Alternatively, the court held that

7

even if the statute applied, it survived exacting scrutiny despite the absence of off-ramp provisions, minimum donor thresholds, or temporal limits. Add. 69–84; App. 115–130; R. Doc. 82, at 25–40. SFLA filed this timely appeal. App. 132; R. Doc. 84.

## Summary of the Argument

SDCL § 12-27-16 is facially unconstitutional. It compels every entity spending more than $100 on any communication concerning a candidate, office holder, ballot question, or political party to embed the names of its five largest donors directly in the communication, on pain of criminal penalties. South Dakota's statute lacks the limiting features courts have found essential to narrow tailoring: no opt-out mechanism for donors, no segregation of contributions made for non-electoral purposes, a $100 threshold so low that a single text-message campaign exceeds it, and no temporal limitation tying disclosure to any election window. These structural defects render the statute incapable of satisfying exacting scrutiny—let alone strict scrutiny—because it forces organizations to disclose donors who never intended to fund the communication at issue, for communications bearing no nexus to any election, at spending levels that capture routine civic discourse. The

8

district court's narrowing construction cannot supply the tailoring the enacted text lacks—especially for a criminal statute reaching office holders and political parties.

Section 12-27-16 is also unconstitutional as applied to SFLA. SFLA engages exclusively in issue advocacy—educating voters about legislators' records and urging support for pro-life legislation, without telling voters which candidate to support or oppose. Its top five donors are its five largest national donors, who may have no connection to South Dakota or intention that their contributions fund South Dakota communications; compelling their disclosure tells South Dakota voters nothing meaningful about who finances political speech in their state. And SFLA's donors face well-founded fears of retaliation—including threats, vandalism, and doxxing—and compelled disclosure would cause donors to reduce or cease giving. This chilling effect is itself a concrete, cognizable injury. The Supreme Court has held that compelled donor disclosure inflicts a "present injury" to First Amendment associational rights the moment the demand is made. Because the statute reaches SFLA's intended communications and Defendants have not disavowed enforcement, SFLA faces a credible threat of prosecution.

9

Finally, Section 12-27-16 is unconstitutionally overbroad and void for vagueness. The statute sweeps far beyond express advocacy to reach every "communication concerning" a candidate, office holder, ballot question, or political party. Because it applies to communications "concerning" office holders at any time, for any amount over $100, without any nexus to an election, a substantial proportion of its applications reach constitutionally protected issue advocacy; its overbreadth is pervasive, not marginal. The statute also hinges on the undefined term "concerning," which provides no guidance to speakers about what communications trigger criminal liability. This uncertainty is compounded by the absence of an ascertainable standard for identifying which donors qualify as contributors and when their purpose triggers public exposure. Where a statute abuts upon First Amendment freedoms and imposes criminal sanctions, the Constitution demands far greater specificity.

10

Appellate Case: 26-1503    Page: 21    Date Filed: 06/15/2026 Entry ID: 5651114

**Argument**

**I.    Section 12-27-16's on-ad donor disclaimer requirement is facially unconstitutional compelled speech.**

**A.    Standard of Review.**

The district court dismissed SFLA's facial challenge to the on-ad disclaimer[1] requirement in Section 12-27-16 under Fed. R. Civ. P. 12(b)(6). This Court reviews a Rule 12(b)(6) dismissal de novo, accepting all well-pleaded allegations as true and viewing them in the light most favorable to the nonmoving party. *Perry v. Precythe*, 121 F.4th 711, 714 (8th Cir. 2024). To survive dismissal, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010).

---

[1] South Dakota, like many jurisdictions, refers to these on-ad disclosure requirements as "disclaimers," but as Judge Easterbrook has observed, "the state uses this word to mean the opposite of its normal connotation. In everyday language, a disclaimer is a repudiation or denial of responsibility." *Majors v. Abell*, 361 F.3d 349, 358 (7th Cir. 2004) (Easterbrook, J., dubitante). In South Dakota's election code, the term "disclaimer" "denotes a statement *accepting* responsibility or authorship—a *pro*claimer (or just a 'disclosure') rather than a *dis*claimer." *Id.* (emphasis in original).

11

**B.     At a minimum, Section 12-27-16 fails exacting scrutiny.**

The First Amendment protects "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). The general rule is that the government may not compel a person "to utter what is not in his mind." *West Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 634 (1943). Compelled speech on the government's behalf is impermissible if it "affects the message conveyed." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572 (1995). Put another way, the government violates a speaker's First Amendment rights by "interfer[ing] with the [speaker's] ability to communicate its own message." *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 64 (2006).

Here, the disclaimer, which is roughly fifty words long, takes up a staggering amount of time, effectively foreclosing short-form versions of spoken and text-message ads. To comply with South Dakota law, an independent expenditure group must either pay for the more expensive sixty-second spot or extra-word limit text block, or remain silent. If the "'beggar thy neighbor' approach to free speech—'restrict[ing] the speech of some elements of our society in order to enhance the relative voice of

12

others'—is 'wholly foreign to the First Amendment,'" then a speech restriction that targets the least affluent groups while allowing the wealthy to continue speaking must surely be even more unconstitutional. *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. at 741 (quoting *Buckley v. Valeo*, 424 U.S. 1, 48–49 (1976)).

South Dakota requires covered communications to include a government-scripted disclaimer that lists, among other things, the names of the organization's five biggest donors from the preceding 12 months. SDCL § 12-27-16(1)(c). This requirement commandeers a portion of the speaker's own communication—space and time that would otherwise be devoted to the speaker's chosen message—and replaces it with a government-mandated script about the speaker's donors. This "necessarily alters the content of the speech." *Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 795 (1988). "Since all speech inherently involves choices of what to say and what to leave unsaid," *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1, 11 (1986) (plurality opinion), South Dakota's disclaimer requirement restricts

13

SFLA's ability to speak its preferred message and forces it to speak a message it does not want to convey.

"Laws that compel speakers to utter or distribute speech bearing a particular message" are content-based and "subject to the same rigorous scrutiny" as other content-based laws. *Turner Broad. Sys. Inc. v. FCC*, 512 U.S. 622, 642 (1994). Content-based restrictions are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Content-based restrictions on speech are particularly problematic because they "completely undercut the profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 96 (1972) (cleaned up).

Further, the Supreme Court has long held that political speech is at the core of what the First Amendment is designed to protect. *Morse v. Frederick*, 551 U.S. 393, 403 (2007); *see also NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982) ("[E]xpression on public issues has always rested on the highest rung of the hierarchy of First

14

Amendment values") (cleaned up); *Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 411 (2000) (Thomas, J., dissenting) ("Political speech is the primary object of First Amendment protection").

Given the vital importance of political speech and its status as the primary object of the First Amendment and the Court's concern about problems of content-based restrictions on speech to open, public debate, disclosure and disclaimer laws involving speech related to elections should be given the highest form of First Amendment scrutiny—strict scrutiny. *See, e.g., National Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018). Under these principles, then, it follows that Section 12-27-16's on-ad donor disclaimer requirement should be evaluated using strict scrutiny.

However, the Supreme Court and this Court have held that First Amendment challenges to donor disclosure and disclaimer laws involving speech related to elections are evaluated under exacting scrutiny. *See, e.g., Citizens United v. FEC*, 558 U.S. 310, 366–67 (2010); *Iowa Right to Life Comm., Inc. v. Tooker*, 717 F.3d 576, 591 (8th Cir. 2013). Although SFLA contends that consistency dictates that Section

15

12-27-16 be evaluated using strict scrutiny,[2] even under exacting scrutiny the on-ad disclaimer requirement cannot survive.

**C.** **Section 12-27-16 fails exacting scrutiny because it is not narrowly tailored to the government's informational interest.**

"[E]xacting scrutiny requires that there be a substantial relation between the disclosure requirement and a sufficiently important governmental interest, and that the disclosure requirement be narrowly tailored to the interest it promotes." *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 611 (2021) (cleaned up); *see also Dakotans for Health v. Noem*, 52 F.4th 381, 389 (8th Cir. 2022) (describing exacting scrutiny as requiring courts to "proceed to evaluate the fit" between the asserted interests and the disclosure mechanism). The government must "demonstrate its need" for the disclosure regime "in light of any

---

[2] One Supreme Court justice has stated that strict scrutiny should apply, and two justices have stated that the Court's cases do not resolve whether strict or exacting scrutiny should apply. *Bonta*, 594 U.S. at 619–20 (Thomas, J., concurring) (stating that strict scrutiny should apply); *id.* at 622–23 (Alito and Gorsuch, J., concurring) (noting case law suggesting strict scrutiny should apply). *See also Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 875 (8th Cir. 2012) ("We question whether the Supreme Court intended exacting scrutiny [rather than strict scrutiny] to apply to laws" imposing campaign-finance rules on "associations that engage in minimal speech.").

16

Appellate Case: 26-1503    Page: 27    Date Filed: 06/15/2026 Entry ID: 5651114

less intrusive alternatives," *Bonta,* 594 U.S. at 613; *see also Cornelio v. Connecticut,* 32 F.4th 160, 177 (2d Cir. 2022) ("It is the government's burden to demonstrate that the challenged law furthers important governmental interests and is narrowly tailored.").

Courts have found a sufficiently important government interest in informing voters about the sources of election-related spending, *see, e.g., Citizens United,* 558 U.S. at 369 ("the public has an interest in knowing who is speaking about a candidate shortly before an election"); *Buckley,* 424 U.S. at 66–67. But Section 12-27-16 is not narrowly tailored to that informational interest.

Section 12-27-16's disclaimer requirement compels on-ad donor identification: it forces speakers to identify their top five donors in the advertisement itself, directly modifying core political speech. By contrast, the statute's separate, less intrusive disclosure mechanism— an independent-communication expenditure statement filed with the State under Section 12-27-16(3)—does not require disclosure of a speaker's top five donors. Courts have recognized a "constitutionally determinative distinction between on-publication identity disclosure requirements and after-the-fact reporting requirements." *ACLU of Nev.*

17

Appellate Case: 26-1503     Page: 28     Date Filed: 06/15/2026 Entry ID: 5651114

*v. Heller*, 378 F.3d 979, 991–92 (9th Cir. 2004). On-message compelled attribution "necessarily connects the speaker to a particular message directly," while off-communication reporting "does not involve the direct alteration of the content of a communication." *Id.* at 992. That distinction is crucial to tailoring: if the State can serve its informational interests through reporting, it cannot default to commandeering the ad itself without explaining why that added intrusion is necessary. Yet, Section 12-27-16 requires disclosure of donors on the ad itself, not on the separate statement filed with the government.

Four structural features of Section 12-27-16—individually and in combination—confirm that the statute is not narrowly tailored: it sweeps beyond election-related speech, it provides no off-ramp for donors, it imposes a negligible expenditure threshold, and it contains no temporal limitation. Any one of these defects would undermine narrow tailoring. Together, they make the lack of fit undeniable.

> **1. Section 12-27-16's text sweeps beyond election-related speech, and the district court's narrowing construction cannot supply the tailoring the statute lacks.**

The district court adopted a narrowing construction under which Section 12-27-16 supposedly regulates only speech concerning

18

candidates or ballot questions because the statute cross-references the definition of "independent communication expenditure" in SDCL § 12-27-1(11). Add. 28–29; App. 70–71; Doc. 44, at 28–29. But that saving construction cannot do the work assigned to it. Section 12-27-16 explicitly applies to "independent communication expenditures . . . related to communications concerning candidates, public office holders, ballot questions, or political parties," not simply those concerning candidates or ballot questions. A speaker reading the enacted text need not assume those additional categories silently disappear through a cross-reference elsewhere in the code. In the First Amendment context—especially where violation carries criminal consequences—speakers are entitled to clear notice from the operative text itself, not a narrowing construction assembled only after litigation. And as a matter of tailoring, that breadth matters: the government has no legitimate informational interest in compelling campaign-finance-style compelled attribution based on communications "concerning" public officials regardless of whether the communication is election-related. *See Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 836–37 (7th Cir. 2014) (warning it is "a mistake to read *Citizens United* . . . as giving the

19

Appellate Case: 26-1503     Page: 30     Date Filed: 06/15/2026 Entry ID: 5651114

government a green light" to impose campaign-finance obligations on every group that discusses a political issue and refers to a candidate).

A speech regulation that must be judicially narrowed to avoid sweeping in non-election speech is not closely drawn to the State's asserted interest. *See also United States v. Stevens*, 559 U.S. 460, 481 (2010) (courts "will not rewrite a law to conform it to constitutional requirements").

### 2. The State can achieve its informational interest through reporting—without commandeering the communication itself.

Rather than compelling organizations like SFLA to devote valuable ad space to listing their top five donors, the government could serve that interest by requiring entities to report that information on the independent communication expenditure statement, SDCL § 12-27-16(3), which could then be published online. *Cf. Missourians v. Klahr*, 892 F.3d 944, 949 (8th Cir. 2018) (noting that "[d]isclosure laws generally require registration, reporting information [to the government], or keeping necessary records"). That alternative is far less restrictive: it achieves the same informational goal without forcing organizations to alter the content of their communications. *Cf. Minn.*

20

*Citizens Concerned for Life*, 692 F.3d at 876 (independent expenditure law "almost certainly fail[ed]" exacting scrutiny because the state could "accomplish any disclosure-related interests . . . through less problematic measures") (cleaned up). In the commercial context, courts have struck down mandatory warnings as compelled speech in situations where the requirement was only that the "warning occupy at least 20% of the advertisement." *American Bev. Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 754 (9th Cir. 2019); *accord R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205, 1208 (D.C. Cir. 2012) (striking down tobacco warning labels that took up 20% of packaging). The same principle applies with equal force in the political context.

Under exacting scrutiny, the government must "demonstrate its need" for the particular disclosure regime "in light of any less intrusive alternatives." *Bonta*, 594 U.S. at 613. Defendants made no evidentiary showing that it is necessary to include the top five donors on ads rather than on a publicly disclosed independent communication expenditure statement. *See also Jones v. Jegley*, 947 F.3d 1100, 1105–06 (8th Cir. 2020) (rejecting campaign-finance restriction where government failed to support its justification with evidence).

Appellate Case: 26-1503     Page: 32     Date Filed: 06/15/2026 Entry ID: 5651114

### 3. The district court's "instant information" rationale does not satisfy exacting scrutiny.

The district court justified the on-ad donor rosters because they provide "instant" information a voter need not separately search for. Add. 40–41, 82; App. 82–83, 128; R. Doc. 44, at 40–41; R. Doc. 82, at 38. But although a requirement that an ad identify the speaker itself may serve an immediate source-identification function, forcing an ad also to carry the names of five donors is a different and far more burdensome step. For a national organization, those names may say little or nothing about who actually financed the South Dakota message. The district court assumed that any on-ad donor list is necessarily more informative than public reporting, but *Bonta* requires evidence of fit, not intuition alone. Defendants made no showing that a compelled five-name donor roster materially advances voter understanding beyond speaker identification and ordinary reporting.

The State's informational interest is not boundless. "The simple interest in providing voters with additional relevant information does not justify a state requirement that a writer make statements or disclosures she would otherwise omit," and the government's informational interest in compelled on-publication speech "is plainly

22

Appellate Case: 26-1503    Page: 33    Date Filed: 06/15/2026 Entry ID: 5651114

insufficient." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 348–49 (1995).

Whatever weight the informational interest may carry in some electioneering contexts, the fit collapses when the State compels a donor roster on speech that need only "concern" public officials at any time, with no off-ramps, no clear electioneering window, and no showing that the listed donors funded the message at issue.

### 4. Section 12-27-16 provides no off-ramp for donors.

Section 12-27-16(1)(c) provides no mechanism by which donors may segregate their contributions, earmark funds for non-electoral purposes, or otherwise opt out of having their names forcibly appended to communications they may not support.

Courts across the country have recognized that the absence of donor off-ramps is fatal to narrow tailoring. The Tenth Circuit struck down Wyoming's analogous regime because it "provided no way for donors to segregate donations that did not relate to a particular independent expenditure." *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1248–49 (10th Cir. 2023). The District of Maine enjoined a similar statute because "it has no explicit opt out provision for contributors who do not wish to

23

fund independent expenditures, and, most importantly, it requires the disclosure of contributors who give even very small amounts of money." *Dinner Table Action v. Schneider*, No. 1:24-cv-00430, 2025 U.S. Dist. LEXIS 134052, at *18 (D. Me. July 15, 2025).

Even cases upholding disclosure regimes confirm this principle. In *Gaspee Project v. Mederos*, 13 F.4th 79, 89 (1st Cir. 2021), the First Circuit upheld Rhode Island's statute precisely because it provided "off-ramps for individuals who wish to engage in some form of political speech but prefer to avoid attribution." Similarly, in *Rio Grande Foundation v. Oliver*, 154 F.4th 1213, 1228 (10th Cir. 2025), the court emphasized that New Mexico's opt-out provision creates a tighter fit between donors to the general fund and New Mexico's important informational interest. South Dakota's statute has none of these features.

Although an off-ramp may not be indispensable in every disclosure regime, its absence is powerful evidence of poor fit where, as here, the statute also uses a negligible spending threshold, lacks a clear electioneering window, compels attribution of general-fund donors to specific communications, and imposes criminal sanctions.

Appellate Case: 26-1503    Page: 35    Date Filed: 06/15/2026 Entry ID: 5651114

Indeed, compelled disclosure of general-fund donors may actually mislead voters rather than inform them. Listing the organization's top five donors gives voters "a distorted view of the organization's overall donors," and some disclosed donors might even "see their names listed on a message with which they disagree." *California Republican Party v. Fair Political Practices Comm'n*, No. CIVS-04-2144, 2004 U.S. Dist. LEXIS 22160, at *18–21 (E.D. Cal. Oct. 27, 2004). A disclosure regime that misinforms voters cannot serve the government's informational interest.

### 5. Section 12-27-16's $100 threshold captures routine civic discourse.

Section 12-27-16 triggers its full panoply of requirements—on-ad donor listing, 48-hour filing, and criminal penalties—for any communication costing more than $100. This threshold captures the most modest grassroots communications: SFLA's text messages cost just $116.62 each. Add. 2; App. 44; R. Doc. 44, at 2. By contrast, the statutes upheld in other jurisdictions set significantly higher floors. Rhode Island's statute in *Gaspee Project* applied only to organizations spending $1,000 or more. 13 F.4th at 88. Wyoming's struck-down statute triggered at $1,000. *Wyo. Gun Owners*, 83 F.4th at 1230. New

25

Mexico required donor disclosure only from contributors exceeding $5,000. *Rio Grande Found.*, 154 F.4th at 1234.

A $100 threshold in 2026 captures virtually any organized communication about public affairs. It forces even the smallest advocacy voices—a local church group, a neighborhood civic association—to expose their donors to the public if they mention an office holder's name. This is the antithesis of narrow tailoring.

The district court relied on older decisions sustaining lower monetary triggers. Add. 32–33; App. 74–75; R. Doc. 44, at 32–33. But those cases did not involve Section 12-27-16's combination of burdens: a compelled on-ad roster of five donors, no donor off-ramp, no express electioneering window, and criminal sanctions for noncompliance. And to the extent those decisions afforded broad deference to legislative line-drawing, they predate the Supreme Court's clarification in *Bonta* that exacting scrutiny demands real tailoring and attention to less intrusive alternatives. A low threshold might sometimes be defensible for backend reporting; it is not automatically defensible for compelled donor naming on the face of the speech itself.

26

### 6. Section 12-27-16's absence of any temporal limitation is an independent ground for facial invalidity.

Section 12-27-16 contains no pre-election window. It applies to communications at any time—"regardless of whether the next election involving a candidate or office holder is three weeks, three months, or three years away." App. 8; R. Doc. 24, ¶ 31. The statutes upheld by other circuits have been expressly limited in time. Rhode Island's provisions in *Gaspee Project* applied only to "independent expenditures made within one year of an election and to electioneering communications made either within thirty or sixty days of an election." 13 F.4th at 88–89.

The district court reasoned that Section 12-27-16 is implicitly time-limited because candidate and ballot question are election-defined terms. Add. 35–36; App. 77–78; R. Doc. 44, at 35–36. But an implicit boundary is not the same thing as narrow tailoring. First, South Dakota did not adopt the sort of clear 30-, 60-, or 90-day electioneering window that courts have repeatedly relied upon in upholding disclaimer regimes. Second, the statutory definition of "candidate" is broader than a person formally listed on a ballot; it extends to persons who have crossed contribution or expenditure thresholds or authorized

27

solicitations or expenditures. *See* SDCL § 12-27-1(4). Third, even if the statute is bounded in some abstract sense, the relevant question under *Bonta* is fit, not whether the law has any endpoint at all. A regime that can compel public donor identification many months before an election remains far broader than necessary to serve any informational interest at the moment voters actually evaluate campaign-related messages.

Nor does the statute become narrowly tailored because South Dakota election law may, in some circumstances, imply a finite period during which someone is a candidate or an issue becomes a ballot question. *See* Add. 35–36; App. 77–78; R. Doc. 44 at 35–36. The problem is not merely duration; it is indeterminacy. Section 12-27-16 contains no express temporal trigger tied to a primary, general election, or defined electioneering window. Candidate status may arise at different times based on fundraising, authorizations, certifications, or filing activity, and the statute separately reaches "public office holders" and "political parties," terms that provide no clear election-bound endpoint at all. A criminal speech law is not narrowly tailored when its temporal scope must be reverse engineered from scattered provisions rather than stated in the operative section itself.

Appellate Case: 26-1503    Page: 39    Date Filed: 06/15/2026 Entry ID: 5651114

The government's informational interest—"providing the electorate with information as to where political campaign money comes from," *Buckley*, 424 U.S. at 66—is at its zenith in the weeks surrounding an election and diminishes sharply when no election is imminent. A statute that compels donor disclosure for a communication published two years before the next election cycle bears, at best, a weak relation to informing voters' near-term electoral choices. That mismatch is even more pronounced when disclaimer law requires putting donors' names on the face of the ad rather than disclosure through a publicly available filing. An on-ad donor roster is inherently ephemeral: it is typically visible only to those who happen to see the communication when it runs, and it is not reliably available later—when voters are actually deciding how to vote. By contrast, a disclosure statement filed with the State creates a durable public record that voters can access at any time, including close to the election, when the informational interest is strongest.

The absence of any temporal limitation is an independent ground for facial invalidity.

Appellate Case: 26-1503     Page: 40     Date Filed: 06/15/2026 Entry ID: 5651114

### 7. Section 12-27-16's 48-hour filing requirement confirms, rather than cures, the statute's lack of fit.

The district court separately characterized the filing requirement as merely "event-driven" rather than "ongoing." Add. 33; App. 75; R. Doc. 44, at 33. But labels do not answer the tailoring problem. Whether a reporting obligation is ongoing or one-time bears on the magnitude of the burden; it does not answer whether the obligation is properly tailored to the State's asserted informational interest. At a $100 trigger, and for speech that need only "concern" a candidate, office holder, ballot question, or party, the statute imposes rapid reporting obligations backed by criminal sanctions on organizations that are not campaign committees and do not maintain election-specific donor records. The constitutional defect is not that the filing obligation is event-driven. It is that the obligation is triggered by speech so broad and indeterminate that it sweeps far beyond the State's legitimate informational interest. A one-time reporting requirement may be constitutional in a genuinely election-focused regime; it is not narrowly tailored when attached to a trigger of this breadth.

Taken together, these structural defects confirm that Section 12-27-16 is not a calibrated disclosure regime but a sweeping compelled-

Appellate Case: 26-1503    Page: 41    Date Filed: 06/15/2026 Entry ID: 5651114

speech mandate. Each defect independently undermines the fit between the law and the State's asserted interest. In combination, they are fatal. The statute forces organizations to disclose donors who never intended to fund the communication at issue, for communications bearing no nexus to any election, at spending levels so low they capture routine civic discourse.

South Dakota's statute stands alone among disclosure regimes reviewed by federal courts. It lacks every limiting feature that other courts have found essential to narrow tailoring: the off-ramps required by *Wyoming Gun Owners* and *Gaspee Project*; the meaningful spending thresholds in *Gaspee Project* and *Rio Grande Foundation*; the temporal limitations in *Gaspee Project*; and the targeting requirements that ensure disclosure reaches only "the relevant electorate." *Gaspee Project*, 13 F.4th at 88–89. The statute fails exacting scrutiny—and *a fortiori* strict scrutiny—on its face.

## II.   Even if Section 12-27-16 has constitutional applications, it is unconstitutional as applied to SFLA.

### A.   Standard of Review.

The district court granted summary judgment for Defendants with respect to SFLA's as-applied compelled speech challenge to Section 12-

31

27-16 both on the merits and because the court held SFLA lacked standing. This Court reviews the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to SFLA. *Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019).

## B.    Section 12-27-16 is unconstitutional as applied to SFLA.

The undisputed record establishes that SFLA limits its voter communications to candidates' positions on abortion-related issues and does not tell voters which candidate to vote for or against. Add. 46; App. 92; R. Doc. 82, at 2. SFLA's June 2022 text messages informed voters about legislators' voting records and urged recipients to encourage candidates to support pro-life legislation—they did not "expressly advocate" for any candidate's election or defeat. Add. 46–47; App. 92–93; R. Doc. 82, at 2–3. SFLA's 2022 mailers similarly urged South Dakotans to contact legislators about pro-life legislation. Add. 47–48; App. 93–94; R. Doc. 82, at 3–4.

The district court itself found that SFLA's communications "do[] not qualify as express advocacy under South Dakota law." Add. 10; App. 52; R. Doc. 44, at 10. That finding was never disturbed on summary judgment. South Dakota's own statutory definition of "expressly

32

advocate" requires "explicit words of advocacy" such as "vote, re-elect, support, cast your ballot for, reject, and defeat," SDCL § 12-27-1(9)(a), or communications that "may only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidates," SDCL § 12-27-1(9)(b). SFLA's communications satisfy neither prong.

The Supreme Court has long insisted on "distinguish[ing] campaign speech from issue advocacy." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 480 (2007). "Issue advocacy conveys information and educates," and its "impact on an election, if it exists at all, will come only after the voters hear the information and choose—uninvited by the ad—to factor it into their voting decisions." *Id.* at 470.

That distinction matters here not because issue advocacy is categorically exempt from all disclosure regulation, but because it illustrates why this statute fails exacting scrutiny as applied to SFLA. Even assuming South Dakota may constitutionally require donor disclosures in some circumstances, it cannot compel SFLA to append the names of five donors to speech that does not expressly advocate, where those donors may have no connection to the message, the State,

33

Appellate Case: 26-1503    Page: 44    Date Filed: 06/15/2026 Entry ID: 5651114

or the electorate. South Dakota forces SFLA to publicly link general-fund donors to a specific communication without requiring any showing that those donors financed that message, intended to influence any South Dakota election, or had any relationship to the audience receiving the communication. Section 12-27-16 therefore burdens donors who never sought to influence a South Dakota election, provides voters with information of dubious relevance to evaluating the communication, and chills protected association without a sufficient fit to the governmental interest asserted to justify the disclosure.

## C. SFLA's donors face a constitutionally cognizable chill.

Evidence that compelled public identification will deter association and expose donors to a documented risk of retaliation demonstrates a "substantial burden" that the State must justify with a close fit rather than mere speculation. *See Bonta*, 594 U.S. at 613, 616–17.

The record demonstrates that SFLA's donors confront a well-founded fear of retaliation if their identities are forcibly disclosed on SFLA's communications. "As a rule, SFLA does not disclose the names of its donors unless required to by law, because many of SFLA's donors find this anonymity important, or even vital, to their giving." Add. 48; App.

34

94; R. Doc. 82, at 4. SFLA's treasurer declared that if compelled to disclose its top five donors, "donors may reduce the amount of their donations or stop donating entirely." *Id.* The record further reflects that pro-life supporters increasingly face "unprecedented levels of threats," doxxing, and professional retribution. App. 12–14; R. Doc. 24, at ¶ 46–49. This well-documented history of harassment against the very cause SFLA champions underscores why many of its donors find anonymity "vital to their giving." *Id.*

The Supreme Court's unanimous decision in *First Choice Women's Resource Centers, Inc. v. Davenport*, 224 L. Ed. 2d 672 (2026), reinforces SFLA's position. In *First Choice*, the Court held that government demands for private donor information inflict an "ongoing injury" to First Amendment associational rights "not just when a demand is enforced, but when it is made and for as long as it remains outstanding." *Id.* at 681, 685. This injury arises because the threat of disclosure will "inevitably discourage association with groups engaged in protected First Amendment advocacy and encourage groups to cease or modify protected advocacy the government disfavors." *Id.* at 677. The Court recognized that compelled disclosure creates "constant and

35

Appellate Case: 26-1503    Page: 46    Date Filed: 06/15/2026 Entry ID: 5651114

heavy" pressure on both advocacy organizations and their supporters—pressure that is inevitably deterrent of First Amendment activity. *Id.* at 691 (quoting *Shelton v. Tucker*, 364 U. S. 479, 486 (1960)). That is the kind of deterrent burden exacting scrutiny requires courts to weigh when assessing fit and narrow tailoring.

Like the plaintiff in *First Choice*, SFLA is a nonprofit advocacy organization operating in a politically controversial space. Like the donor subpoena in *First Choice*, South Dakota's statute demands the public identification of SFLA's donors on every covered communication—a disclosure even more intrusive than the one at issue in *First Choice*, because it broadcasts donor names not merely to a government office but to the general public. And like the nonprofit in *First Choice*, SFLA has demonstrated that its donors find anonymity "important, or even vital, to their giving" and that compelled disclosure would cause donors to "reduce the amount of their donations or stop donating entirely." Add. 48; App. 94; R. Doc. 82, at 4.

The district court demanded more—essentially requiring SFLA to produce individual donor affidavits recounting specific threats—but that standard finds no support in law. In *Bonta*, the Supreme Court

Appellate Case: 26-1503    Page: 47    Date Filed: 06/15/2026 Entry ID: 5651114

found a constitutionally cognizable chill based on organizational evidence that "they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence," without requiring each individual donor to testify. 594 U.S. at 616–17. And *First Choice* makes clear that the fear of disclosure alone constitutes concrete injury sufficient to demonstrate chill. 224 L. Ed. 2d at 689–90. SFLA's record evidence meets this standard.

To the extent the district court required donor-by-donor affidavits as a prerequisite to relief, that approach misapplies exacting scrutiny. The First Amendment burden arises when the State conditions protected advocacy on public exposure of supporters in a controversial cause; forcing individualized donor testimony would itself magnify the deterrent pressure that *Bonta* and *First Choice* recognize.

### D. The geographic mismatch between SFLA's national operations and South Dakota's disclosure requirements defeats narrow tailoring.

SFLA is a national organization based in Fredericksburg, Virginia. Add. 1; App. 43; R. Doc. 44, at 1. Its top five donors are its five largest *national* donors over the preceding twelve months. These donors may have no connection whatsoever to South Dakota, no interest in South

37

Appellate Case: 26-1503    Page: 48    Date Filed: 06/15/2026 Entry ID: 5651114

Dakota politics, and no intention that their contributions be used for South Dakota communications. Yet under Section 12-27-16, their names must be emblazoned on every SFLA communication in South Dakota that costs more than $100.

Section 12-27-16 does not identify donors to the communication, donors to South Dakota activity, or even donors who intended to support election-related advocacy. It instead captures the organization's top five donors in the aggregate, whether or not those donors bear any meaningful connection to the message South Dakota voters actually receive.

The purpose of donor disclosure is to inform voters "who is speaking about a candidate shortly before an election." *Citizens United*, 558 U.S. at 369. But forcing SFLA to identify its top five national donors on a South Dakota text message tells South Dakota voters nothing meaningful about who is financing political speech in their state. "Students for Life Action's top five donors nationally in a calendar year may not be representative of the organization's work specifically in South Dakota, or familiar to South Dakotans." App. 20–21; R. Doc. 24, at ¶ 74.

Appellate Case: 26-1503    Page: 49    Date Filed: 06/15/2026 Entry ID: 5651114

The First Circuit recognized the importance of geographic tailoring in *Gaspee Project*, where the court noted that Rhode Island's statute required the communication be "targeted to the relevant electorate," meaning it "can be received by two thousand . . . or more persons in the district the candidate seeks to represent." 13 F.4th at 88–89. South Dakota imposes no comparable targeting requirement. The result is a statute that compels misleading disclosures while providing no useful information to South Dakota voters—the opposite of narrow tailoring.

### E. Section 12-27-16 is not narrowly tailored to SFLA's activities.

SFLA engages only in issue advocacy. Its donors are national donors with no necessary connection to South Dakota. Its communications cost barely more than $100. Its donors face documented threats of retaliation. And the statute provides no mechanism for donors to avoid disclosure.

Taken together, these features demonstrate that Section 12-27-16 is unconstitutional as applied to SFLA, regardless of whether the statute might constitutionally be applied in other circumstances. SFLA engages only in issue advocacy. Its donor base is national rather than state specific. Its supporters face documented risks of retaliation. And the

39

statute attributes to a single South Dakota communication a set of donors who may not have funded it, may not have intended to influence any South Dakota election, and may have no relationship whatsoever to the electorate receiving the message. Even assuming the State possesses a sufficiently important informational interest in other applications of the statute, that interest does not justify compelled on-ad donor disclosure as applied to SFLA's speech.

South Dakota has not "seriously undert[aken] to address the problems it faces with less intrusive tools readily available to it." *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 404 (6th Cir. 2022) (quoting *McCullen v. Coakley*, 573 U.S. 464, 494 (2014)). The government bears the burden of demonstrating narrow tailoring, *Cornelio*, 32 F.4th at 177, and it cannot meet that burden here. At minimum, the statute is unconstitutional as applied to SFLA.

## F. SFLA has standing to bring its as-applied challenge to Section 12-27-16.

To establish standing, a plaintiff must show "(1) an injury in fact, (2) a causal connection between the injury and the challenged law, and (3) a likelihood that a favorable decision will redress the injury." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). In the First

40

Amendment context, courts apply "a more lenient standing requirement to pre-enforcement challenges." *Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1077 (8th Cir. 2024); *see also Secretary of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984) (recognizing a "lessening of prudential limitations on standing" for First Amendment claims, particularly those involving a danger of chilled speech). This Court recognizes two types of injuries conferring standing for prospective First Amendment relief: (1) "when a plaintiff alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder," and (2) "when a plaintiff self-censors." *Dakotans for Health*, 52 F.4th at 386.

SFLA satisfies both paths to standing. The statute's text creates a credible threat of enforcement against SFLA's planned communications, and SFLA's need to choose between speaking and risking prosecution or refraining from speaking is itself a concrete First Amendment injury.

In addition, SFLA has engaged in activity Defendants themselves regard as express advocacy and intends to engage in similar advocacy in the future. Add. 50; App. 96; R. Doc. 82, at 6, n.3. That concrete history

41

and intent reinforces the credible threat and "reasonable chill" analysis. *See 281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011).

1. **Section 12-27-16's ambiguity creates a credible threat of prosecution.**

The district court found that SFLA lacks standing because it engages in issue advocacy, and the statute's definition of "contribution" under Section 12-27-1(6) arguably encompasses only contributions made for the purpose of express advocacy. Add. 59–64; App. 105–110; R. Doc. 82, at 15–20. But this reasoning proves too much. It simultaneously holds that the statute's text is broad enough to reach SFLA's communications on its face—since Section 12-27-16 applies to all "communications concerning candidates, public office holders, ballot questions, or political parties" without distinguishing express from issue advocacy—yet SFLA has no standing to challenge it because, properly construed, the statute does not actually reach SFLA's conduct.

But the statute's facial breadth is precisely what creates SFLA's injury. Section 12-27-16 does not on its face distinguish between express and issue advocacy. *See Gaspee Project*, 13 F.4th at 86 (holding that it could not "distinguish between express advocacy and issue advocacy with respect to election-law disclosure regimes"). It applies to any

42

"communication concerning" a candidate or office holder. A reasonable speaker reading Section 12-27-16 would conclude that SFLA's text messages and mailers—which indisputably "concern" candidates and office holders—trigger the statute's requirements. The fact that the State may later argue, in an enforcement proceeding, that the statute was never intended to reach issue advocacy does not eliminate the chilling effect of the statute's facially broad language.

The district court's standing analysis turned on the defined term "contribution," concluding that the statute may require disclosure only of donations made for the purpose of influencing electoral outcomes. Add. 59–64; App. 105–110; R. Doc. 82, at 15–20. But that demonstrates the problem; it does not solve it. Section 12-27-16 itself commands disclosure of an entity's "Top Five Contributors" on any covered communication and nowhere tells an ordinary speaker how a multipurpose nonprofit is supposed to determine which donations count, which do not, and which donors may therefore be exposed to public attribution. A law that on its face sweeps broadly, but in litigation is said to apply only after a speaker parses multiple cross-referenced definitions and reconstructs donors' purposes, is not clear

43

enough to defeat pre-enforcement standing. Nor may the merits question—how the statute should ultimately be construed—be used to erase the present chill produced by the statute's text. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163–64 (2014).

South Dakota also supplies no earmarking mechanism, no segregation procedure, and no administrable rule for general-fund donations. So even if the district court were correct that only certain donations ultimately qualify as "contributions" under Section 12-27-1(6), that would still leave speakers unable to determine before speaking whose names must appear on the ad. That uncertainty itself creates a credible threat of prosecution and chills speech.

"[W]hen a course of action is within the plain text of a statute, a 'credible threat of prosecution' exists." *Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 778 (8th Cir. 2019). SFLA's communications are indisputably within the plain text of Section 12-27-16: they are "communication[s] concerning . . . candidates [and] public office holders" costing more than $100. That SFLA has not yet been prosecuted does not defeat standing where, as here, Defendants have not "disavowed enforcing" the statute against SFLA. *See Minn. Ch. of Assoc. Builders &*

Appellate Case: 26-1503     Page: 55     Date Filed: 06/15/2026 Entry ID: 5651114

*Contractors, Inc. v. Blissenbach*, 155 F.4th 1015, 1020–21 (8th Cir. 2025).

Indeed, the Attorney General has "announced that one of his top priorities is expanded enforcement of South Dakota's campaign finance statutes." App. 9–10; R. Doc. 24, at ¶ 36. He "has sought new legislation to allow his office to prosecute campaign finance violations" and "has criticized decisions by his predecessors not to vigorously enforce campaign laws." *Id.* These are not the hallmarks of a government that has abandoned its enforcement prerogatives. SFLA faces a credible threat.

### 2. SFLA should not be required to engage in express advocacy to have standing.

The district court's standing analysis effectively requires SFLA to engage in the very conduct—express advocacy—that it has consistently disclaimed in order to establish standing to challenge the statute. But a plaintiff need not violate a statute to challenge it. *Susan B. Anthony List*, 573 U.S. at 158–59. And a plaintiff need not engage in the specific category of conduct the government believes the statute targets when the statute's text is broad enough to reach the plaintiff's actual conduct.

Appellate Case: 26-1503    Page: 56    Date Filed: 06/15/2026 Entry ID: 5651114

This Court has found standing where a "plaintiff alleges an intention to engage in a course of conduct that is clearly proscribed by statute" even absent a "specific threat of enforcement." *Iowa Right to Life Comm., Inc.*, 717 F.3d at 604. SFLA intends to engage in future communications concerning candidates and office holders in South Dakota that will cost more than $100. Add. 61; App. 107; R. Doc. 82, at 17. That conduct is "clearly proscribed by" the plain text of Section 12-27-16. The district court's finding that SFLA lacks standing because it does not engage in express advocacy collapses the standing inquiry into the merits—a move the Supreme Court has repeatedly cautioned against. *See Susan B. Anthony List*, 573 U.S. at 163–64.

### 3. The First Amendment chill on SFLA's donors independently confers standing.

Even if SFLA could not establish standing through the credible-threat prong, it has standing based on the chilling effect on its donors' associational rights. The Supreme Court has long recognized that "compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958). A disclaimer statute is

46

"unconstitutional as applied to an organization if there were a reasonable probability that the group's members would face threats, harassment, or reprisals if their names were disclosed." *Citizens United*, 558 U.S. at 370.

The record shows a substantial deterrent effect and a documented retaliation risk associated with compelled disclosure in this context. *First Choice* confirms that "by virtue of being issued," a demand for donors' identity causes "an ongoing injury to [an activist group's] First Amendment rights." 224 L. Ed. 2d at 680. Because the statute publicly attaches donor names to controversial advocacy, the threat of chilled association is concrete.

The district court's reliance on SFLA's interrogatory responses does not change that analysis. *See* Add. 67; App. 113; R. Doc. 82, at 23. The Supreme Court in *First Choice* did not require a nonprofit to produce individualized donor evidence before recognizing an associational injury, and *Bonta* likewise credited organization-level evidence of threats to the organization and its supporters without requiring each donor to submit a separate affidavit.

47

### III. Section 12-27-16 is unconstitutionally overbroad because its "concerning" trigger reaches nearly all year-round civic discourse regardless of spend or timing.

#### A. Standard of Review.

The district court dismissed SFLA's overbreadth claim under Rule 12(b)(6). Review is de novo. *Perry*, 121 F.4th at 714.

#### B. Section 12-27-16 is unconstitutionally overbroad because it sweeps far beyond the regulation of express advocacy.

This overbreadth challenge is distinct from SFLA's facial compelled-speech claim. The facial challenge asks whether South Dakota's donor-disclosure regime satisfies exacting scrutiny. The overbreadth challenge asks a different question: whether the statute reaches a substantial amount of protected speech relative to its legitimate applications. Although the same statutory features inform both analyses, the focus here is on the statute's scope rather than its tailoring.

"[A] law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Bonta*, 594 U.S. at 615 (plurality opinion*)* (quoting *Stevens,* 559 U.S. at 473). The district court reasoned that Section 12-27-16 survives overbreadth review because some applications—like those involving express advocacy—are constitutional.

Appellate Case: 26-1503    Page: 59    Date Filed: 06/15/2026 Entry ID: 5651114

Add. 38; App. 80; R. Doc. 44, at 38. But overbreadth analysis does not require that a statute be unconstitutional in every application; it requires that the statute's unconstitutional reach be "substantial" relative to its "plainly legitimate sweep." *Stevens*, 559 U.S. at 473.

Section 12-27-16 sweeps far beyond the regulation of express advocacy or its functional equivalent. It reaches every "communication concerning a candidate, public office holder, ballot question, or political party." The statute does not even attempt to "distinguish[] campaign speech from issue advocacy," *FEC v. Wis. Right to Life*, Inc., 551 U.S. at 480, the line the Supreme Court has identified as constitutionally essential.

This overbreadth flows from three features working together: (1) the breadth of the topics it covers ("concerning" candidates, office holders, ballot questions, or political parties); (2) the absence of a clear, election-bound temporal limitation; and (3) the unusually burdensome form of disclosure it imposes directly on the speech itself at a $100 trigger.

The district court attempted to save the statute by construing "public office holders" as synonymous with "candidates." Add. 35–36; App. 77–78; R. Doc. 44, at 35–36. But *Stevens* forbids courts from rewriting a

49

statute to avoid constitutional infirmity. 559 U.S. at 481. The enacted text expressly regulates communications concerning "office holders" and "political parties" regardless of their candidate status. By expanding the disclosure trigger to routine communications about non-candidate officials, the statute captures a massive amount of core political speech that has nothing to do with informing voters about an upcoming election.

The statute's overbreadth is not marginal. Because it applies to communications "concerning" office holders at any time, for any amount over $100, without regard to whether the communication has any connection to an election, a substantial proportion—likely the vast majority—of the statute's applications reach constitutionally protected issue advocacy.

Section 12-27-16's lack of temporal limits tied to elections means that the donor disclosure requirement will reach speech year-round that has nothing to do with election-related spending rather than being calibrated to the proximity of an election. Courts that have upheld disclosure regimes have consistently emphasized the importance of temporal restrictions. The Ninth Circuit in *National Association for*

50

*Gun Rights v. Mangan* noted that "electioneering disclosure laws that survive exacting scrutiny" share certain features, which include being "tied with precision to specific election periods." 933 F.3d 1102, 1116–19 (9th Cir. 2019). The Ninth Circuit similarly noted that a disclosure law served the government's interest in informing voters "in the temporal window immediately preceding a vote." *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1019 (9th Cir. 2010).

In *Citizens United*, disclosure was triggered within 30 days of a primary or 60 days of a general election. 558 U.S. at 310. In *Gaspee Project*, the Rhode Island statute applied only to independent expenditures made within one year of an election and to electioneering communications made within 30 or 60 days of an election. 13 F.4th at 88. In *Sullivan*, the Massachusetts statute applied only within a 90-day window preceding an election. 2018 U.S. Dist. LEXIS 189403, at *8. South Dakota's statute has no such limits: it applies to communications "concerning a candidate or a ballot question" at all times, even when an election is years away.

The district court reasoned that the statute is implicitly time-limited because "candidate" and "ballot question" are election-defined terms.

Appellate Case: 26-1503    Page: 62    Date Filed: 06/15/2026 Entry ID: 5651114

Add. 30–31; App. 72–73; R. Doc. 44, at 30–31. But narrow tailoring requires a fit that is "reasonable" and "proportionate to the interest served." *Bonta*, 594 U.S. at 606. An implicit boundary tied to when someone authorizes a solicitation—which could be years before a vote— is not the kind of precision the First Amendment requires. Without a fixed 30- or 60-day window, Section 12-27-16 functions as a permanent tax on mentioning political figures, chilling speech far beyond the period when the State's informational interest is at its peak.

Section 12-27-16's donor disclosure requirement is a far more sweeping speech restriction than, for example, the reporting requirement upheld in *Citizens United*, which only required names to be included in reports (rather than the ads themselves), had an indexed-to-inflation $200 threshold, and required only intermittent reports that were tailored to the proximity of the election. 558 U.S. at 338. Even as it has upheld substantial campaign finance restrictions, the Supreme Court has made clear that the government's informational interest only justifies disclosure for certain specific political activities—not just any public communications about politics or candidates. In *Buckley*, the Court rejected the federal government's attempt "to achieve total

52

Appellate Case: 26-1503     Page: 63     Date Filed: 06/15/2026 Entry ID: 5651114

disclosure by reaching every kind of political activity in order to ensure that the voters are fully informed." 424 U.S. at 76 (cleaned up).

The district court relied on the Ninth Circuit decisions in *No on E v. Chiu*, 85 F.4th 493 (9th Cir. 2023) and *Smith v. Helzer*, 95 F.4th 1207 (9th Cir. 2024), claiming that those courts upheld laws "arguably broader than South Dakota's requirements." Add. 78–82; App. 124–128; R. Doc. 82, at 34–38. But both cases are inapposite. *No on E*'s disclaimer only applies to the "top three contributors of $5,000 or more," and the decision did not pertain to time windows at all. *No on E*, 85 F.4th at 498. *Helzer*'s reporting requirement, meanwhile, only applied to donations exceeding $2,000, its disclaimer only required listing the top three contributors giving over $2,000, and violations only brought civil penalties (rather than jail time). 95 F.4th at 1211, 1212, 1219.

Those cases involved thresholds and donor counts (three contributors at $2,000 or $5,000) that avoided capturing grassroots speech. They also lacked the combination of criminal penalties, zero off-ramps, and a year-round trigger found here. A law that compels a five-name donor roster on a $101 text message sent two years before an election is not

53

"comparable" to the targeted regimes in *No on E* or *Helzer*; it is a substantial overreach.

Despite having the burden of proving their censorship law's constitutionality, *see Minn. Citizens Concerned for Life*, 692 F.3d at 876, Defendants have introduced no evidence for why South Dakota's statute could not mirror San Francisco's (from *No on E*) or Alaska's (from *Helzer*). They have not articulated why listing five contributors is more valuable than listing three, why a $100 threshold is better than a $2,000 threshold, or why 48-hours is a better timeframe than one synchronized to the timing of the election. This is evidence that the censorship law is not "narrowly tailored," but instead overbroad. *Bonta*, 594 U.S. at 605–06.

The overbreadth doctrine exists to protect the First Amendment rights of persons not before the Court. *See Secretary of Md.*, 467 U.S. at 956–57. When "there is a danger of chilling speech," society's interest in challenging a statute may "outweigh the desire to avoid constitutional adjudication." *Id.* at 956. Here, Section 12-27-16 chills a vast range of protected speech: it applies to communications "concerning" candidates, office holders, ballot questions, or political parties; it contains no

54

Appellate Case: 26-1503     Page: 65     Date Filed: 06/15/2026 Entry ID: 5651114

temporal limitation; and requires disclosure of at a low threshold—

$100.

## IV.   Section 12-27-16 is void for vagueness.

### A.    Standard of Review.

The district court dismissed SFLA's vagueness claim under Rule

12(b)(6). Review is de novo. *Perry*, 121 F.4th at 714.

### B.    Section 12-27-16 is void for vagueness because it does not define the scope of the term "concerning."

"[A]n enactment is void for vagueness if its prohibitions are not

clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

Vagueness concerns are "especially pronounced" where "laws abut upon

sensitive areas of basic First Amendment freedoms." *Stahl v. City of St.*

*Louis, Mo.*, 687 F.3d 1038, 1041 (8th Cir. 2012). "The vagueness of such

a regulation raises special First Amendment concerns because of its

obvious chilling effect on free speech." *Reno v. ACLU*, 521 U.S. 844,

871–72 (1997).

The Due Process Clause is violated by a criminal law "so vague that

it fails to give ordinary people fair notice of the conduct it punishes, or

so standardless that it invites arbitrary enforcement." *Johnson v.*

*United States*, 576 U.S. 591, 595 (2015). A law is constitutionally infirm

Appellate Case: 26-1503    Page: 66    Date Filed: 06/15/2026 Entry ID: 5651114

when it "fail[s] to provide adequate notice of prohibited conduct" or invites "arbitrary and discriminatory enforcement." *Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1308 (8th Cir. 1997).

The Supreme Court has listed at least "two independent reasons" for when a statute is void for vagueness. *Hill v. Colorado*, 530 U.S. 703, 732 (2000). First, a statute is unconstitutionally vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Id.* Separately, a statute is unconstitutionally vague "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Id.*; *see also Citizens United*, 558 U.S. at 324 ("vague laws chill speech" because "[p]eople of common intelligence must necessarily guess at the law's meaning and differ as to its application" (cleaned up)).

"The Government may not render a ban on political speech constitutional by carving out a limited exemption through an amorphous regulatory interpretation," *Citizens United*, 558 U.S. at 324, and courts "will not rewrite a law to conform it to constitutional requirements." *Stevens*, 559 U.S. at 481 (cleaned up) (quoting *Reno*, 521 U.S. at 884). "The First Amendment does not permit laws that force

56

speakers to retain a campaign finance attorney, conduct demographic marketing research, or seek declaratory rulings before discussing the most salient political issues of our day." *Citizens United*, 558 U.S. at 324.

Section 12-27-16 hinges on communications "concerning" candidates, office holders, ballot questions, or political parties. The statute does not define "concerning." The district court found this term unambiguous, reasoning that "concerning" simply means "relating to" or "regarding." Add. 43–44; App. 85–86; R. Doc. 44, at 43–44. But by defining "concerning" as "relating to," the court merely traded one vague synonym for another. Does a newsletter "concern" a candidate if it mentions the candidate's name in passing? Does a policy white paper "concern" an office holder if it discusses legislation the office holder sponsored? In the context of political regulation, such elastic terms provide no "ascertainable standard for inclusion and exclusion." *Smith v. Goguen*, 415 U.S. 566, 578 (1974).

The vagueness is compounded by the statute's internal inconsistency. The definition of "independent communication expenditure" in Section 12-27-1(11) covers communications "concerning a candidate or a ballot

Appellate Case: 26-1503    Page: 68    Date Filed: 06/15/2026 Entry ID: 5651114

question." But Section 12-27-16 expands the regulated universe to include communications "concerning candidates, public office holders, ballot questions, or political parties."

The district court attempted to solve the vagueness of the term "public office holder" by reading it to mean "office holder" who is also a "candidate." Add. 35–36; App. 77–78; R. Doc. 44, at 35–36. But "a state court's narrowing construction . . . cannot save a statute from a vagueness challenge if the person of ordinary intelligence cannot 'determine which of the [statute's] possible meanings' the court will ultimately adopt." *California Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1152 (9th Cir. 2001). By finding that "public office holder" adds nothing to the statute, the district court created a construction that contradicts the text's plain meaning.

Vagueness also infects the "contribution" trigger. To comply with the top five disclaimer, a speaker must identify donors who made a contribution for the purpose of influencing an election. SDCL § 12-27-1(6). The district court faulted SFLA for not proving its donors were "contributors" while upholding a statute that provides no mechanism for a nonprofit to determine a donor's subjective "purpose." Add. 62–63;

58

App. 108–109; R. Doc. 82, at 18–19. A statute that "mandates a specific act but provides no standard for performance" is the essence of vagueness.

Citizens face criminal penalties—a Class 2 misdemeanor for first violations and a Class 1 misdemeanor for subsequent offenses within a calendar year, with potential imprisonment—if they guess wrong. SDCL § 12-27-16(1); § 22-6-2. "[W]here a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity." *United States v. Freeman*, 808 F.2d 1290, 1292 (8th Cir. 1987) (quoting *Goguen*, 415 U.S. at 573). No South Dakota court has provided a narrowing construction of "concerning," and the statute's criminal penalties demand the heightened specificity required when speech is at stake.

The statute is void for vagueness.

### C.   This Court should follow the precedent of its sister court.

In *Wyoming Gun Owners v. Gray*, the Tenth Circuit adjudicated a void for vagueness challenge to a statute requiring independent expenditure groups to "list those expenditures and contributions which

59

*relate to* an independent expenditure or electioneering communication." 83 F.4th 1224, 1237 (10th Cir. 2023) (quoting Wyo. Stat. Ann. § 22-25-106(h)(iv)). The court found such a restriction "impermissibly vague," as "the 'relate to' language authorize[d] arbitrary enforcement and [did] not inform" speakers "'what is required of [them] so [they] may act accordingly.'" *Wyo. Gun Owners*, 83 F.4th at 1238 (quoting *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)). The court held that the "bare, standardless 'relate to' language authorize[d]" the state to impose fines "on an 'ad hoc and subjective basis'" against independent expenditure groups that struggled to understand "which contributions in an undifferentiated pool relate to some communication." *Wyo. Gun Owners*, 83 F.4th at 1238 (quoting *Grayned*, 408 U.S. at 109).

The "relate to" language in *Wyoming Gun Owners* is similar to the "concerning" language in Section 12-27-16 here. Both phrases are "bare, standardless" and lead to enforcement on an "ad hoc and subjective basis." *Wyo. Gun Owners*, 83 F.4th at 1238. Just as the Tenth Circuit rejected the "ad hoc and subjective" application of "relate to," this Court should reject the District Court's attempt to sanitize "concerning" by defining it as "relating to."

60

This Court should follow the reasoning set forth in *Wyoming Gun Owners* and reverse the district court's order dismissing SFLA's void-for-vagueness claim.

## Conclusion

For the foregoing reasons, SFLA respectfully requests that this Court reverse the lower court's dismissals of its facial compelled speech, overbreadth, and void-for-vagueness claims, reverse the district court's order granting summary judgment to Defendants on SFLA's as-applied compelled speech claim, and enter summary judgment to SFLA on its as-applied compelled speech claim.

Date: June 10, 2026

Respectfully submitted,

/s/ Jeffrey M. Schwab

Jeffrey Schwab
Timothy Kilcullen
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
tkilcullen@ljc.org

*Counsel for Appellant*

61

## Certificate of Compliance

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 11,550 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point Century Schoolbook font using Microsoft Word for Mac version 16.109.3.

A virus detection program was run on the brief and the addendum and no virus was detected.

 /s/ Jeffrey M. Schwab 
*Counsel for Appellant*

Appellate Case: 26-1503    Page: 73    Date Filed: 06/15/2026 Entry ID: 5651114