No. 26-1503

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

Students for Life-Action,

*Plaintiff-Appellant*,

v.

Marty Jackley, *in his official capacity as Attorney General,* Monae Johnson, *in her official capacity as Secretary of State,*

*Defendants-Appellees*

Appeal from the United States District Court
for the District of South Dakota
No. 3:2023-cv-03010

**Addendum to Appellant's Brief**

Jeffrey Schwab
Timothy Kilcullen
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
tkilcullen@ljc.org

*Counsel for Appellant*

Appellate Case: 26-1503     Page: 1     Date Filed: 06/15/2026 Entry ID: 5651118

# Table of Contents

Opinion and Order Granting in Part Defendants' Motion
to Dismiss, August 27, 2024 (R. Doc. 44) ..................................Add. 1

Opinion and Order Granting Defendants' Motion for
Summary Judgment and Denying Plaintiff's Motion for
Summary Judgment, February 17, 2026 (R. Doc. 82).............Add. 45

Judgment of Dismissal, February 17, 2026 (R. Doc. 83) .............Add. 85

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| STUDENTS FOR LIFE ACTION,<br><br>Plaintiff,<br><br>vs.<br><br>MARTY JACKLEY, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA; AND MONAE JOHNSON, IN HER OFFICIAL CAPACITY AS SOUTH DAKOTA SECRETARY OF STATE;<br><br>Defendants. | 3:23-CV-03010-RAL<br><br><br>OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS |

Plaintiff Students for Life Action ("SFLA") brought this suit against Marty Jackley, in his official capacity as Attorney General of the State of South Dakota, and Monae Johnson, in her official capacity as South Dakota Secretary of State (collectively, "Defendants"). SFLA alleges South Dakota's statute requiring on-ad donor disclaimers and disclosure statements for certain political advocacy speech violates the First and Fourteenth Amendments. See generally Doc. 24. Defendants moved to dismiss, arguing that SFLA lacks standing and that the statute is constitutional. Doc. 22. Advancing American Freedom, Inc., filed an amicus brief in the matter. Doc. 30. This Court conducted a hearing and now grants in part Defendants' Motion to Dismiss.

## I. Facts

SFLA is a 501(c)(4) nonprofit based in Fredericksburg, Virginia, that engages in national pro-life activism. Doc. 24 ¶¶ 10, 17. On June 6, 2022, SFLA sent various text messages intended "to inform voters about 12 incumbent legislators' voting records on banning chemical abortions and about their responses to candidate surveys" but that did not directly tell "the recipients who

Appellate Case: 26-1503     Page: 3     Date Filed: 06/15/2026 Entry ID: 5651118

Add. 1

they should or should not vote for." Id. ¶¶ 18–20.  These text messages were sent the day before the party primary election and cost $116.62 each.  Id. ¶ 18.

The June 6, 2022 text messages, attached by SFLA to the First Amended Complaint, took various forms.  For example, for those candidates who had voted against House Bill 1208 to make it a felony offense to "dispense, distribute, manufacture, sell or transfer any chemical abortion drug," defined as "mifegyn, mifeprex, mifepristone, and any other pharmaceutically equivalent drug,"[1] the text read that the candidate

> voted against Students for Life Action's HB 1208 to Ban Chemical Abortions in S. Dakota, and failed to return his SFLAction candidate survey pledging to vote pro-life.  Please take 5 seconds to tell him to reverse course if nominated in the June 7th primary by signing our petition to ban chemical abortion

with a link attached.  Doc. 24-1 at 2–4.  For its favored candidates, SFLA's test message template was either

> I have great news!  [Candidate name] returned our survey and pledged to vote 100% pro-life if elected.  [He/She] is the only candidate in House District [number] to do so.  Please take 5 seconds to encourage [him/her] to keep [his/her] promise if nominated in the June 7th primary by signing our petition to ban chemical abortion

with a link attached, id. at 5–7, or

> I have great news!  [Candidate name] returned our survey and pledged to vote 100% pro-life if elected.  Please thank [candidate name] for pledging to defend the preborn and encourage [him/her] to keep [his/her] promise to defend life if nominated in the Tuesday, June 7th Republican Primary.

Id. at 8.  The texts did not contain any on-ad disclaimer, and SFLA filed no disclosure statement under SDCL Chapter 12-27.  Defendants took no enforcement action of any nature against SFLA as a consequence of the text messages.  SFLA intends to continue sending similar messages in the future.  Doc. 24 ¶ 22.

---

[1] The text of the 2022 House Bill 1208 is at https://sdlegislature.gov/session/bill/23057/230675.

SFLA also sent out mailers to South Dakota voters during 2022.[2] Id. ¶ 21. The mailers targeted certain South Dakota House of Representative members who had voted "no" on House Bill 1208 and provided their phone numbers before concluding with encouragement to call the representative to tell him or her "to stop opposing pro-life legislation," or, in some iterations, "pro-life bills." Doc. 24-2 at 2–9. At least some of these mailings listed the mailing and website address of SFLA and stated, "Paid for by [SFLA], not by any candidate or candidate's committee." Id. The mailers did not otherwise contain any on-ad disclaimer and SFLA filed no disclosure statement under SDCL Chapter 12-27. SFLA faced no enforcement action from Defendants or anyone else stemming from the mailings and intends to engage in similar messaging in the future. Doc. 24 ¶ 22.

In 2023, SFLA filed a Complaint, Doc. 1, which it subsequently amended, Doc. 24, alleging that SDCL § 12-27-16 requiring on-ad donor disclaimers and disclosure statements for certain advocacy-related communications violates the Free Speech Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment. Doc. 24 ¶¶ 55–93. The on-ad donor disclaimer requirement mandates that certain communications costing over $100 identify who is "making the independent communication expenditure for that communication," include a mailing and website address for the person or entity making the expenditure, and list the entity's top five contributors from the prior twelve-month period before the communication. SDCL § 12-27-16(1)(a)–(c). The disclaimer must also state the following: "This communication is independently funded and not made in consultation with any candidate, public office holder, or political committee." Id. § 12-27-16(1)(c). The disclosure statement requirement mandates those making expenditures subject to the disclaimer requirement "file an independent communication

_____

[2] The timing of these mailers in connection to any primary or election is unclear in the record.

Date Filed: 06/15/2026  Entry ID: 5651118    Appellate Case: 26-1503   Page: 5

Add. 3

expenditure statement within forty-eight hours of the time that the communication is disseminated, broadcast, or otherwise published" with the South Dakota Secretary of State.  Id. § 12-27-16(2).  SFLA had not complied with these statutes when making their 2022 communications.

SFLA challenges both the disclaimer and disclosure statement requirements.  It argues that SDCL § 12-27-16 is facially overbroad in applying to SFLA's issue advocacy, Doc. 24 ¶¶ 56–62, the on-ad disclaimer requirement is a content-based rule that does not pass constitutional muster on its face or as applied to SFLA, id. ¶¶ 65–80, and the on-ad disclaimer requirement is facially void for vagueness, id. ¶¶ 82–92.  SFLA seeks a declaratory judgment that SDCL §§ 12-27-16 and 12-27-1(11) are unconstitutional, an injunction prohibiting Defendants from enforcing SDCL § 12-27-16, and attorney's fees and costs.  Doc. 24 ¶¶ a–f.  Defendants argue that SFLA lacks standing to bring the action, Doc. 23 at 16–23, and that, even if standing existed, the statute is constitutional, id. at 23–36.  On these grounds, Defendants moved to dismiss.  Doc. 22.

## II.    Rule 12(b)(6) Standard

On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's well-pleaded factual allegations as true and make factual inferences in the plaintiff's favor, but need not accept a plaintiff's legal conclusions.  Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012).  To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

Add. 4

alleged," Iqbal, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).   Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard.  Iqbal, 556 U.S. at 678 (cleaned up and citation omitted).

### III.   Analysis

### A. Standing Question

### 1. Requirements for Standing

Defendants seek dismissal, arguing SFLA lacks standing to challenge SDCL § 12-27-16. "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" Murthy v. Missouri, 144 S. Ct. 1972, 1985 (2024); see also Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013).  Federal courts do not "operate as an open forum for citizens 'to press general complaints about the way in which government goes about its business.'" FDA v. All. for Hippocratic Med., 602 U.S. 367, 379 (2024) (quoting Allen v. Wright, 468 U.S. 737, 760 (1984)).   Courts implement this limit through different justiciability doctrines, including standing and ripeness. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006).  Broadly speaking, the standing inquiry concerns whether the plaintiff is the appropriate party to bring a particular suit. Raines v. Byrd, 521 U.S. 811, 818 (1997); Flast v. Cohen, 392 U.S. 83, 99–100 (1968).  The three requirements for standing are (1) an injury in fact, (2) a causal connection between the injury and the challenged law, and (3) a likelihood that a favorable decision will redress the injury. All. for Hippocratic Med., 602 U.S. at 380; Animal Legal Def. Fund v. Vaught, 8 F.4th 714, 718 (8th Cir. 2021) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)).

Add. 5

To satisfy Article III standing, an injury in fact "must be concrete and particularized and actual or imminent, not conjectural or hypothetical." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (cleaned up and citation omitted). A "concrete" injury means "that it must be real and not abstract." All. for Hippocratic Med., 602 U.S. at 381. A "particularized" injury means that it "must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance." Id. (quoting Lujan, 504 U.S. at 560 n.1). "Moreover, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." Id. "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." Susan B. Anthony List, 573 U.S. at 158 (cleaned up and citation omitted). A plaintiff bringing a First Amendment challenge can meet the injury-in-fact requirement by showing there is "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Animal Legal Def. Fund v. Reynolds, 89 F.4th 1071, 1077 (8th Cir. 2024) (citation omitted); see also Iowa Right to Life Comm., Inc. v. Tooker, 717 F.3d 576, 604 (8th Cir. 2013) (finding standing when "plaintiff alleges an intention to engage in a course of conduct that is clearly proscribed by statute" even when there is no "specific threat of enforcement" (citation omitted)).

The Supreme Court of the United States has recognized that the "second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" All. for Hippocratic Med., 602 U.S. at 380 (citation omitted). Causation requires a plaintiff to show an "injury likely was caused or likely will be caused by the defendant's conduct." Id. at 382. "[T]he causation requirement screens out plaintiffs who were not injured by the defendant's action." Id. at 383. For causation, "the plaintiff must show a predictable chain of events leading from the

Appellate Case: 26-1503   Page: 8   Date Filed: 06/15/2026 Entry ID: 5651118

Add. 6

government action to the asserted injury—in other words, that the government action has caused or likely will cause injury in fact to the plaintiff." Id. at 385. "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements." Id. at 382. Where the defendant's action caused injury, redressability—the third element of standing—typically exists through injunctive action or an award of damages. Id. at 381.

A plaintiff bears the burden of establishing standing as of the time the lawsuit was brought and throughout the pendency of the case. See Carney v. Adams, 592 U.S. 53, 59 (2020). "[S]tanding is not dispensed in gross," TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021), but requires a plaintiff to "demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek," Murthy, 144 S. Ct. at 1988 (cleaned up and citation omitted). SFLA faced no enforcement action for its activities and seeks forward-looking relief; SFLA thus must allege that it faces "a real and immediate threat of repeated injury" to avoid dismissal and show the same to justify relief. Murthy, 144 S. Ct. at 1986 (quoting O'Shea v. Littleton, 414 U.S. 488, 496 (1974)); see also Murthy, 144 S. Ct. at 1993.

Defendants argue SFLA has failed to demonstrate it suffered an injury in fact for three reasons. First, at the hearing, Defendants suggest the challenged statute, SDCL § 12-27-16, does not apply to SFLA's issue advocacy and only applies to express advocacy. Second, Defendants argue in their briefs that SFLA's injury is too speculative and hypothetical to confer standing. Doc. 23 at 16–20. Third, Defendants assert SFLA lacks standing to allege a facial overbreadth challenge. Doc. 23 at 20–23. Because standing is jurisdictional, this Court must evaluate standing generally, not confined to just those standing arguments a defendant makes. See Young America's

Add. 7

Foundation v. Kaler, 14 F.4th 879, 887 (8th Cir. 2021) (requiring the court raise the "threshold issue" of standing "sua sponte if need be" (cleaned up and citations omitted)).

## 2. Whether SFLA's Conduct Is Arguably Subject to SDCL § 12-27-16

### a. Application of SDCL § 12-27-16 to SFLA's Advocacy Activities

Defendants argue that SDCL § 12-27-16 does not govern issue advocacy but only applies to express advocacy.[3] Defendants note that SFLA's communications, by their own admissions, do not constitute express advocacy and are merely issue advocacy, and Defendants then assert that SDCL § 12-27-16 does not restrict issue advocacy. See Doc. 24 ¶¶ 4–5, 22, 61–62 (referring to SFLA's conduct as "issue advocacy"). Therefore, Defendants argue SFLA lacks standing because its advocacy work is not governed by the statute at all and does not subject SFLA to a potential enforcement action or civil or criminal penalties. See Animal Legal Def. Fund, 89 F.4th at 1077 (requiring plaintiff show "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution

---

[3] This position, which Defendants first articulated at the hearing and which this Court addresses as a matter of ensuring its subject matter jurisdiction, reflected a shift from Defendants' position in briefing. SFLA in Count I alleges that the statute is overbroad by applying to both express and issue advocacy. Instead of arguing that the statute only applies to express advocacy, as they submitted at the hearing, Defendants' brief noted that "the distinction between issue advocacy and express advocacy plays no role in determining if a disclosure law is unconstitutional." Doc. 23 at 23. At the hearing, however, Defendants emphasized the distinction, arguing that South Dakota statutes distinguish one from the other and SFLA lacks standing to challenge express advocacy constraints as it only engages in issue advocacy. This Court agrees that the constitutionality of a disclosure statute does not hinge upon whether it applies to express or issue advocacy. See Gaspee Project v. Mederos, 13 F.4th 79, 86 (1st Cir. 2021) ("In the election context, the Supreme Court has rejected the attempt to distinguish between express advocacy and issue advocacy when evaluating disclosure laws . . . ." (citing Citizens United v. FEC, 558 U.S. 310, 368–69 (2010))). But SFLA would lack standing to bring suit if the South Dakota statute distinguishes between the two forms of advocacy and does not apply to SFLA's conduct. Thus, whether the statute makes that distinction matters to the standing analysis.

Date Filed: 06/15/2026 Entry ID: 5651118   Page: 10   Appellate Case: 26-1503

thereunder" (citation omitted)).  This argument is unavailing because the statute is not confined to just express advocacy, leaving SFLA's issue advocacy not clearly outside of the statutes at issue.

South Dakota Codified Law § 12-27-1(9), defines the phrase "expressly advocate" to mean communications that advocate for a particular election result by "using explicit words of advocacy" like "vote, re-elect, support, cast your ballot for, reject, and defeat."  SDCL § 12-27-1(9)(a).  SFLA's advocacy did not use any of those terms.  A communication is also express advocacy under South Dakota statute if the communication is one that,

> If taken as a whole and with limited reference to external events, such as the proximity to the election, may only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidates or public office holders, or the placement of a ballot question on the ballot or the adoption or defeat of any ballot question because:
> (i)    The electoral portion of the communication is unmistakable, unambiguous, and suggestive of only one meaning; and
> (ii)    Reasonable minds could not differ as to whether it encourages actions to elect or defeat one or more clearly identified candidates or public office holders, or the placement of a ballot question on the ballot or the adoption or defeat of any ballot question or encourages some other kind of action[.]

§ 12-27-1(9)(b).

SFLA's mailings are not express advocacy because they encourage recipients to contact the office holder to lobby them to act more pro-life and do not encourage a particular vote or even mention the upcoming primary.  Doc. 24-2 at 2–9.  By contrast, SFLA's text messages sent the day before the 2022 primary skirt close to express advocacy under this definition.  The text messages clearly identified candidates running in the June primary, referring to them by name.  Doc. 24-1 at 2–8; see also SDCL § 12-27-1(5) (defining "clearly identified" as "the appearance of the name, nickname, a photograph or a drawing of a candidate or public office holder, or the unambiguous reference to the identity of a candidate or public office holder").  The text messages were sent the day before the June 7 primary elections and mention the June 7 primary.  Still, the

Appellate Case: 26-1503   Page: 11   Date Filed: 06/15/2026 Entry ID: 5651118

Add. 9

text messages focus on the candidate's prior vote on HB 1208 or if the candidate satisfied SFLA's 100% pro-life pledge.  Doc. 24-1 at 2–8.  The text messages requested the recipients of the texts sign a petition "encouraging" or discouraging the candidate from pursuing a particular course of action "if nominated" in the primary.  Id.  The text messages did not tell voters to vote for or reject these candidates based on their stance on pro-life issues using "explicit words of advocacy" under § 12-27-1(9)(a).  Given the timing of the text messages occurring the day before the primary, SFLA may have had a none-too-subtle secondary purpose to urge voters to vote in the June 7 primary for the SFLA-preferred 100% pro-life candidate.  Setting aside the timing of the messages (which the statutory definition contemplates by requiring "limited reference to external events") and literally applying the definition of SDCL § 12-27-9, the text messages could be read as limited to what they specifically instruct: having the recipients sign a pro-life petition or reach out to and encourage or discourage certain behavior from the candidate.  At least arguably, SFLA's messages did not constitute express advocacy as defined under § 12-27-1(9)(b) and reasonable minds could differ, such that SFLA's messages would be outside the literal scope of the statutory definition of express advocacy.  Under SDCL § 12-27-1(9), SFLA's messaging does not qualify as express advocacy under South Dakota law.

But even though SFLA may not participate in express advocacy and only engages in issue advocacy, Defendants are incorrect that SDCL § 12-27-16 thereby cannot apply to SFLA.  South Dakota Codified Law § 12-27-16 makes no distinction between the two types of advocacy for purposes of the disclaimer and disclosure requirements; it applies equally to both.  South Dakota Codified Law § 12-27-16, in relevant part, states:

> The following apply to independent communication expenditures by persons and entities related to communications concerning candidates, public office holders, ballot questions, or political parties who are not controlled by, coordinated with,

Add. 10

requested by, or made upon consultation with that candidate, political committee, or agent of a candidate or political committee:

   (1)   Any person or entity that makes a payment or promise of payment totaling more than one hundred dollars, including donated goods or services for an independent communication expenditure that concerns a candidate, public office holder, ballot question, or political party shall append to or include in each communication a disclaimer that clearly and forthrightly:

      (a)   Identifies the person or entity making the independent communication expenditure for that communication;

      (b)   States the mailing address and website address, if applicable, of the person or entity; and

      (c)   If an independent expenditure is undertaken by an entity not including a candidate, public office holder, political party, or political committee, the following notation must be included: "Top Five Contributors," including a listing of the names of the five persons making the largest contributions in aggregate to the entity during the twelve months preceding that communication. An independent communication expenditure made by a person or entity shall include the following: "This communication is independently funded and not made in consultation with any candidate, public office holder, or political committee.".

A violation of this subdivision is a Class 2 misdemeanor. A subsequent offense within a calendar year is a Class 1 misdemeanor;

   (2)   Any person or entity making a payment or promise of payment of more than one hundred dollars, including donated goods and services, for a communication described in subdivision (1) shall file an independent communication expenditure statement within forty-eight hours of the time that the communication is disseminated, broadcast, or otherwise published.

SDCL § 12-27-16. Both Class 1 and 2 misdemeanors expose a violator to jail time or a fine, SDCL § 22-6-2, and the South Dakota Secretary of State is charged with enforcing civil penalties against violations of SDCL § 12-27-16, SDCL § 12-27-29.2.

The statute itself belies Defendants' argument that SDCL § 12-27-16 distinguishes between express advocacy and issue advocacy. The portions of SDCL § 12-27-16 requiring on-ad disclaimers and disclosure statements do not mention express advocacy at all, let alone distinguish between types of advocacy or limit the statute's application only to those communications that "expressly advocate" for a candidate or ballot issue. In fact, SDCL Chapter 12-27 only mentions express advocacy twice: it defines "expressly advocate" in § 12-27-1(9), and then uses the term

only once more to exclude certain polling activities from the definition of "communication." SDCL § 12-27-16(6)(e) (stating that a "communication" does not include "[a]ny communication used for the purpose of polling if the poll question does not expressly advocate for or against a candidate, public office holder, ballot question, or political party"). Thus, SDCL § 12-27-16 cannot be read to exclude all issue advocacy from the scope of the statute's on-ad disclaimer and disclosure statement provisions.[4]

South Dakota Codified Law § 12-27-16 applies disclaimer and disclosure requirements on "independent communication expenditures." The messages SFLA sent are "independent communication expenditures" subject to SDCL § 12-27-16 because they were sent independent of a candidate's campaign, cost over $100, and were "concerning candidates" by discussing their voting record on HB 1208 or whether they returned material SFLA took to be a pledge to vote 100% pro-life. Doc 24 ¶ 18.

Defendants raised another argument why the disclosure under SDCL § 12-27-16(1)(c) does not apply to issue advocacy, namely that a "contribution" as defined in SDCL § 12-27-1(6) does not exist for SFLA to disclose and thus SFLA lacks standing to challenge at least that portion of the on-ad disclaimer. To be a "contribution" under SDCL § 12-27-1(6), the consideration must be made for the purpose of influencing:

(a) The nomination, election, or re-election of any person to public office; or
(b) The placement of a ballot question on the ballot or the adoption or defeat of any ballot question submitted.

---

[4] This marks the second case where these Defendants advanced a legal argument based on a misreading of portions of SDCL § 12-27-6. See Inst. for Free Speech v. Jackley, 340 F. Supp. 3d 853, 859 (D.S.D. 2018) (addressing arguments centering on misinterpretation by Attorney General and Secretary of State of SDCL § 12-27-16(b)(a)). If Defendants believe the statute should be applied differently than how it is written, then they should seek amendment through the state legislature to refine the language to be what Defendants evidently believe makes sense.

12

Add. 12

SDCL § 12-27-1(6). Defendants are correct that these subsections describe express advocacy, which SFLA disavows doing in South Dakota. This argument against standing may have merit but requires evaluating "the purpose" of the contributions to SFLA. Determining the "purpose" of the contribution cannot be readily done in ruling on a motion to dismiss and is better done on cross motions for summary judgment after Defendants conduct discovery from SFLA. And this standing question affects only SFLA's as-applied challenge to SDCL § 12-27-16 and not necessarily its facial challenge to the statute.

### b. Whether Defendants' Intent to Not Enforce the Statute Against SFLA Defeats Standing

Defendants argued at the motion hearing that they have not and would not pursue any enforcement action against SFLA because Defendants did not believe SFLA's conduct to be subject to the statute. The absence of any enforcement action against SFLA, especially in light of the two recent Supreme Court standing decisions in Murthy and Alliance for Hippocratic Medicine this term, casts some doubt on SFLA's assertion of standing. After all, Alliance for Hippocratic Medicine underscored that an injury in fact "must be real and not abstract," "must affect the plaintiff in a personal and individual way," "must be actual or imminent, not speculative," and "must have already occurred or be likely to occur soon." All. for Hippocratic Med., 602 U.S. at 381 (cleaned up and citations omitted). And Murthy added that, for forward-looking relief such as what SFLA seeks, plaintiffs must show that they "face 'a real and immediate threat of repeated injury.'" Murthy, 144 S. Ct. at 1986 (quoting O'Shea, 414 U.S. at 496). A plaintiff must show standing "with the manner and degree of evidence required at the successive stages of the litigation," Lujan, 504 U.S. at 561, and here SFLA is defending against a motion to dismiss. Much

Appellate Case: 26-1503   Page: 15   Date Filed: 06/15/2026 Entry ID: 5651118

Add. 13

of SFLA's Amended Complaint is devoted to alleging fear of enforcement and potential chilling effect on its donor base surrounding an on-ad, top-five-contributors disclosure. Doc. 24 ¶¶ 24–54.

This Court previously encountered a similar situation involving a different constitutional challenge to this same statute. In Institute for Free Speech v. Jackley, 340 F. Supp. 3d 853 (D.S.D. 2018) ("IFS I"), an organization wanted to publish its analysis and critiques of two South Dakota ballot measures but sued out of concern that doing so would be an "independent communication expenditure" under SDCL § 12-27-16. IFS I, 340 F. Supp. 3d at 855. The Defendants—as here, the South Dakota Attorney General and Secretary of State—opposed granting plaintiff relief and expressed no intent to enforce the statute. Concluding that Defendants had misinterpreted a part of the statute not at issue here—SDCL § 12-27-16(6)(a)—and that plaintiff's planned activity was not completely outside the statute, this Court preliminarily determined that the plaintiff had standing sufficient to seek and obtain a preliminary injunction. IFS I, 340 F. Supp. 3d at 859–62. Plaintiff then published its material, which went beyond what it had represented its intention to be. Inst. for Free Speech v. Ravnsborg, 416 F. Supp. 3d 894, 897 (D.S.D. 2019) ("IFS II"). The preliminary injunction remained in force for eleven months; Defendants represented that it would not enforce the statute against plaintiff but filed a motion for summary judgment some eleven months after plaintiff's publication of its material. IFS II, 416 F. Supp. 3d at 897–98. This Court concluded that plaintiff faced no credible threat of prosecution with the injunction in place and with Defendants' repeated professions of no intent to prosecute plaintiff. See generally id. After Defendants agreed that the preliminary injunction could become a permanent injunction, this Court entered summary judgment based on the absence of any injury in fact necessary for standing.

SFLA's case differs from IFS I and IFS II, with facts that essentially land between the two decisions. Unlike the situation in IFS I, SFLA has published its material in the form of text

Appellate Case: 26-1503     Page: 16     Date Filed: 06/15/2026     Entry ID: 5651118

Add. 14

messages and mailings, with Defendants taking no enforcement action. Doc. 24 ¶¶ 18–21; IFS I, 340 F. Supp. 3d at 855. But unlike the situation in IFS II, Defendants merely argue they will not prosecute and have taken no formal position—let alone signed a stipulation for a permanent injunction against prosecution. See Doc. 24 ¶¶ 32–37; IFS II, 416 F. Supp. 3d at 897. Defendants' profession of no interest in applying SDCL Chapter 12-27 to SFLA's advocacy is, at this stage on a motion to dismiss, simply an argument.

SFLA's standing situation also falls in between Eighth Circuit cases where the court found no standing because a campaign finance statute did not apply to plaintiffs' advocacy and thus did not create a credible threat of prosecution, see Iowa Right to Life, 717 F.3d at 584–87, and where the court has applied "a more lenient standing requirement to pre-enforcement challenges" where the alleged injury "is a chill on constitutionally protected speech," Animal Legal Def. Fund, 89 F.4th at 1077 (cleaned up and citation omitted). The Eighth Circuit has recently faced this same situation where the plaintiffs claim that their First Amendment rights are chilled by the threat of enforcement of allegedly unconstitutional laws and the defendants respond that they have not enforced or threatened to enforce the statute against the plaintiffs. See Minn. RFL Republican Farmer Lab. Caucus v. Freeman, 33 F.4th 985 (8th Cir. 2022) ("Minnesota RFL I"); Minn. RFL Republican Farmer Lab. v. Moriarty, No. 23-1563, 2024 U.S. App. LEXIS 17743 (8th Cir. July 19, 2024) ("Minnesota RFL II"). Neither the Eighth Circuit nor the district court dismissed these cases based on an absence of standing. Rather, the courts reasoned that suit against prosecutors who are declining to prosecute was no exception to Eleventh Amendment immunity under Ex parte Young, 209 U.S. 123 (1908), thereby justifying the denial of preliminary injunctive relief in Minnesota RFL I and the grant of summary judgment for the defendants in Minnesota RFL II. Minnesota RFL I, 33 F.4th at 992; Minnesota RFL II, 2024 U.S. App. LEXIS 17743; see also 281

Add. 15

Care Comm. v. Arneson, 766 F.3d 774, 797 (8th Cir. 2014). In short, the Eighth Circuit has found a different way—other than a standing analysis—to dispose of pre-enforcement First Amendment violation claims where the defendants formally disavowed any intention of enforcing the law against the plaintiffs. Here, it is premature to consider such an issue on a motion to dismiss, and Defendants in this case have not provided the same no-prosecution assurances by testimony or affidavit as existed in Minnesota RFL I and Minnesota RFL II.

A good explanation of why granting a motion to dismiss SFLA's claims for lack of standing is problematic appears in Vermont Right to Life Comm. v. Sorrell, 221 F.3d 376 (2d Cir. 2000), where the Second Circuit rejected the same standing argument that the Defendants make here. In Vermont Right to Life Committee, the Second Circuit reasoned that, while the state may not have had any intention of suing the plaintiff for its activities,

> there is nothing that prevents the State from changing its mind. It is not forever bound, by estoppel or otherwise, to the view of the law that it asserts in this litigation. See Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999) (doctrine of "judicial estoppel" which prevents party from taking mutually exclusive positions in different litigation under some circumstances applies to assertions of factual positions); Vittitow v. City of Upper Arlington, 43 F.3d 1100, 1106 (6th Cir. [1995]) (there is no rule "that requires us to accept representations from [the prosecution's] counsel" (emphasis omitted)), cert. denied, 515 U.S. 1121, 115 S.Ct. 2276, 132 L.Ed.2d 280 (1995); Kucharek v. Hanaway, 902 F.2d 513, 519 (7th Cir.1990) (interpretation of statute offered by Attorney General is not binding because he may "change his mind . . . and he may be replaced in office"). But cf. Wisconsin Right to Life, Inc. v. Paradise, 138 F.3d 1183, 1185 (7th Cir. [1998]) (finding no well-founded fear to support standing where present state attorney general, and every past attorney general since 1976, had adhered to same interpretation of statute), cert. denied, 525 U.S. 873, 119 S.Ct. 172, 142 L.Ed.2d 140 (1998). In light of this uncertainty, the State's representation cannot remove VRLC's reasonable fear that it will be subjected to penalties for its planned expressive activities. If we held otherwise, we would be placing VRLC's asserted First Amendment rights "at the sufferance of" Vermont's Attorney General. North Carolina Right to Life, Inc. v. Bartlett, 168 F.3d 705, 711 (4th Cir. 1999), cert. denied, 528 U.S. 1153, 120 S.Ct. 1156, 145 L.Ed.2d 1069 (2000); see also Stenberg v. Carhart, 530 U.S. 914, 120 S.Ct. 2597, 2614-15, 147 L.Ed.2d 743 (2000). American Booksellers, 484 U.S. at 395, 108 S.Ct. 636 (1988) ("[A]s the Attorney General does not bind the state courts or local law enforcement authorities, we are unable to accept her interpretation of the law as authoritative."); North Carolina Right to Life, Inc., 168 F.3d at 710 (declining in absence of agency rule to rely on "State's litigation position"

Appellate Case: 26-1503   Page: 18   Date Filed: 06/15/2026 Entry ID: 5651118

Add. 16

that it does not interpret statute to apply to issue advocacy). But cf. Graham v. Butterworth, 5 F.3d 496, 499 (11th Cir. 1993) (dismissing First Amendment challenge to state statute as moot after defendants withdrew initial determination that plaintiffs' conduct violated statute and informed plaintiffs that their intended campaign conduct would not be prosecuted).

Vermont Right to Life Comm., 221 F.3d at 383–84. Here, on a motion to dismiss, the Defendants' mere argument that they do not intend to take enforcement action against SFLA is not sufficient to deprive SFLA of the standing it alleges in its Amended Complaint, although the standing or Eleventh Amendment immunity analysis may be different depending on how the litigation proceeds.

### 3. Whether SFLA Has Alleged an Injury in Fact

Defendants' next standing argument is that SFLA's allegations regarding its "intended" future conduct is not sufficiently certain to occur and demonstrates its speech has not been chilled. Doc. 23 at 16–19. SFLA counters that it has alleged an injury in fact related to its own prior and future conduct, Doc. 24 ¶ 38, and with regard to the statute's chilling effect on its donors, id. ¶ 40.

First, Defendants argue that SFLA lacks standing because it "does not state it 'will' engage in issue advocacy, only that they 'intend' to engage in issue advocacy within the next two years." Doc. 23 at 17. Defendants argue that such an intention is too speculative to confer standing. Id. In the First Amendment context, an injury may be too hypothetical or speculative to confer standing if the occurrence of proposed future conduct is uncertain. See Final Exit Network, Inc. v. Ellison, 370 F. Supp. 3d 995, 1010 (D. Minn. 2019) ("'Some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." (cleaned up) (quoting Lujan, 504 U.S. at 564)); Missouri Roundtable for Life v. Carnahan, 676 F.3d 665, 672 (8th Cir. 2012) ("A party cannot show an injury in fact by mere allegations of possible future

17

Add. 17

injury." (internal quotations and citation omitted)).   However, all prospective relief is not automatically too speculative, and the Eighth Circuit recognizes that

> There are two types of injuries conferring standing for prospective First Amendment relief. The first occurs when a plaintiff alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.   The second occurs when a plaintiff self-censors.

Dakotans For Health v. Noem, 52 F.4th 381, 386 (8th Cir. 2022) (cleaned up and citations omitted).

Here, SFLA has alleged that it "has engaged in advocacy about issues and office holders in South Dakota in the past and intends to do so again," Doc. 24 ¶ 4, that "[i]n the next two years, [SFLA] intends to continue to communicate with the public in South Dakota through issue advocacy about candidates and public office holders," id. ¶ 22, and that such "intended communications will exceed $100 in value," id.   Therefore, SFLA has alleged facts supporting standing; it has "allege[d] an intention to engage in" statutorily proscribed conduct that affects its First Amendment rights and for which it may be prosecuted.   See Dakotans For Health, 52 F.4th at 386 (identifying injuries that "confer[] standing for prospective First Amendment relief"); SDCL § 12-27-16 (noting a violation is a misdemeanor); SDCL § 12-27-29.2 (charging the South Dakota Secretary of State with enforcing civil penalties for violations of SDCL § 12-27-16).

Next, Defendants assert that SFLA's statement that they "intend" to engage in future advocacy means that SFLA lacks standing because the statute does not, in fact, chill SFLA's conduct.   Defendants argue that SFLA "has not alleged they would engage in issue advocacy 'but for' S.D. Codified Law § 12-27-16 and does not allege self-censorship.   Rather, Plaintiff has affirmed it intends to speak, despite SDCL § 12-27-16." Doc. 23 at 19–20.   Defendants further argue that, because of its intent to continue with its advocacy, "Plaintiff has not alleged in its

18

Appellate Case: 26-1503     Page: 20     Date Filed: 06/15/2026 Entry ID: 5651118

Complaint that its speech is chilled.  Plaintiff only alleges their donor's speech is chilled." Id. at 20.

Generally, to allege standing to challenge a statute's chilling effect on speech, plaintiffs must allege that they would speak but for the law whose constitutionality they are challenging. See Dakotans For Health, 52 F.4th at 386 (recognizing self-censorship as a basis for prospective First Amendment relief); Animal Legal Defense Fund, 8 F.4th at 718 (finding standing where "plaintiffs allege that, but for the statute, the lead organizations" would engage in the statutorily-proscribed First Amendment conduct).  In donor disclaimer and disclosure actions, an organization may show standing by alleging a disclosure regime has a chilling effect on the organization's donors, thereby violating the donors' First Amendment association rights. See Ams. for Prosperity Found. v. Bonta, 594 U.S. 595, 616 (2021) (recognizing that "disclosure requirements can chill association" and allowing the organization to challenge a disclosure statute that risked chilling the First Amendment activity of the organization's donors).

SFLA has not alleged that it will stop engaging in its advocacy because of the statute and, therefore, has not alleged that its own speech is chilled.  See Dakotans For Health, 52 F.4th at 386 (noting "[s]elf-censoring occurs when a plaintiff alleges it would like to engage in arguably protected speech, but that it is chilled from doing so by the existence of the statute" (cleaned up and citation omitted)).  After all, the statute did not prompt SFLA to place the required disclaimers on its ads that ran before the 2022 primary or to comply with disclosure requirements, and the Defendants' absence of any enforcement action and subsequent disavowal of any plan to apply the statute to SFLA would not chill SFLA from similar conduct.  However, SFLA may be able to challenge the statute's chilling effect on its donors. See Ams. for Prosperity, 594 U.S. at 615–19 (allowing the organization to bring an action on the basis of chilled speech when the statute

Appellate Case: 26-1503    Page: 21    Date Filed: 06/15/2026 Entry ID: 5651118

Add. 19

discouraged the organization's donors from engaging in First Amendment activity). SFLA has alleged South Dakota's disclosure regime threatens chilling the association rights of its donors because donors may fear various forms of reprisals or retaliation for its association with SFLA. Doc. 24 ¶¶ 6, 40. Therefore, SFLA has standing to challenge the top-five-contributors disclaimer requirement of SDCL § 12-27-16 for chilling its donors' protected rights. See Ams. for Prosperity, 594 U.S. at 616.

### 4. Whether SFLA Has Standing to Challenge the Statute as Facially Overbroad

SFLA makes both an as-applied and facial challenge to SDCL § 12-27-16. Doc. 24. Defendants assert SFLA lacks standing to allege a facial overbreadth challenge, citing cases upholding disclaimer and disclosure statement requirements as support for their position. In response, SFLA claims that, despite the general constitutionality of disclaimer and disclosure laws, South Dakota has crafted a statute that reaches far more constitutionally-protected speech than other state statutes upheld by federal courts. Defendants' reply argues why, on its merits, the statute is not overbroad; they do not address whether SFLA has standing to bring a facial overbreadth claim. Nonetheless, because Defendants maintain that SFLA lacks standing and standing is necessary to exercise subject matter jurisdiction over the claim, this Court will address the argument.

"For a federal court to entertain a facial challenge pursuant to the First Amendment overbreadth doctrine, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court." Josephine Havlak Photographer, Inc.  v. Vill. Of Twin Oaks, 864 F.3d 905, 912 (8th Cir. 2017) (cleaned up and citations omitted). For purposes of standing to challenge a statute as facially overbroad, "the party before the court must identify a significant difference between his claim that the statute is

Appellate Case: 26-1503   Page: 22   Date Filed: 06/15/2026 Entry ID: 5651118

Add. 20

facially invalid on overbreadth grounds, and his claim that it is unconstitutional as applied to his particular activity." Id. (citation omitted). "It is inappropriate to entertain a facial overbreadth challenge when the plaintiff fails to adduce any evidence that third parties will be affected in any manner differently from herself." Id. (citations omitted).

In the Eighth Circuit, there is little guidance about exactly what it means for plaintiffs to "identify a significant difference between" the plaintiff's claim of facial overbreadth and any as-applied challenge under Havlak, but one clear example appears in Rodgers v. Stachey, 382 F. Supp. 3d 869, 878–79 (W.D. Ark. 2019). In Rodgers, the district court found the plaintiff had standing to allege that a statute that prohibited pedestrians from speaking to drivers in the roadway was facially overbroad. The plaintiff argued that the statute proscribed not only the plaintiff's begging, but also speech from individuals "asking or answering a question about directions; or hailing a ride from a taxi, Uber driver, or bus; or anyone seeking assistance from an occupant of a vehicle in operation," among others. Rodgers, 382 F. Supp. 3d at 878–79. Relying on the multiple examples the plaintiff mentioned in his brief, the court found he had standing because he "ha[d] identified significant differences between his claim that the Ordinance is unconstitutional as applied to his particular activity of begging, and his claim that the Ordinance is facially invalid on overbreadth grounds." Id.

Other cases relying on Havlak have dismissed facial overbreadth challenges for lack of standing. Harrington v. Strong, 363 F. Supp. 3d 984, 1004 (D. Neb. 2019), is a useful example. In Harrington, the plaintiffs challenged a municipal code provision requiring the chief of police and other officials to enforce public nuisance prevention standards at establishments that sell or serve alcohol during any performance. Id. at 1004 n.17. The plaintiffs alleged that multiple parts of the statute's terms "can be applied to virtually anything the City Defendants do not like," but

they "made no attempt [in their complaint or briefing] to allege any realistic scenarios in which [the ordinance] would 'compromise recognized First Amendment protections of parties not before the court.'" Harrington, 363 F. Supp. 3d at 1004 (quoting Havlak, 864 F.3d at 912). Absent this "realistic scenario," the court dismissed the claim for lack of standing. Id.

Another instructive example is Final Exit Network, 370 F. Supp. 3d at 1014. In Final Exit Network, plaintiffs, an organization dedicated to counseling on suicide and some of its volunteers, attempted to challenge Minnesota's statute criminalizing conduct and speech that "assists" another in committing suicide. Id. at 1004–07. The court emphasized that, "to the extent the Second Amended Complaint references third parties, it does not assert that the statute affects them differently from the Plaintiffs"; in fact, the court highlighted how the plaintiffs argued that anyone may be treated the same way as the plaintiffs, alleging that the "[organization] and its [volunteer] Exit Guides – or even a librarian or a bookstore sales clerk – may be convicted solely for informing a 'targeted' person where to find the same information himself or herself." Id. at 1014. Therefore, because the plaintiffs did not show how they were affected differently from other third parties, the district court dismissed the facial overbreadth challenge for lack of standing. Id. at 1014–15.

SFLA's allegations and arguments appear to fall somewhere between those presented in Rodgers and those in Harrington and Final Exit Network. SFLA argues that SDCL § 12-27-16's lack of a temporal limitation and reference to "public office holders" allows the statute to apply "at all times to all speech concerning public office holders, including issue advocacy not related to or close in time to an election." [5] Doc. 24 ¶ 76. SFLA argues that the scope of the statute

---

[5] Of course, "[w]hen determining whether to dismiss a complaint for lack of standing, a court is to 'construe the allegations of the complaint, and the reasonable inferences drawn therefrom, most favorably to the plaintiff.'" Final Exit Network, 370 F. Supp. 3d at 1008 (quoting Glickert v. Loop Trolley Transp. Dev. Dist., 792 F.3d 876, 880 (8th Cir. 2015)); see Sch. of the Ozarks, Inc. v. Biden, 41 F.4th 992, 997 (8th Cir. 2022) ("At the pleading stage . . . a plaintiff must allege

extends to "purely informational or political speech that is . . . unrelated to an election," Doc. 35 at 17, including speech concerning "public office holders" who hold an elected or appointed position but who are not necessarily running for reelection. As the discussion of SFLA's three counts reveals, some of SFLA's claims are not as-applied challenges as they do not relate to SFLA's advocacy or anticipated advocacy. SFLA has made at least a reasonable "attempt to allege any realistic scenarios in which [§ 12-27-16] would 'compromise recognized First Amendment protections of parties not before the court.'" Harrington, 363 F. Supp. 3d at 1004 (citation omitted). Though somewhat amorphous, SFLA has "identified significant differences between [its] claim that [§ 12-27-16] is unconstitutional as applied to [its] particular activity of [issue advocacy], and [its] claim that [§ 12-27-16] is facially invalid on overbreadth grounds." Rodgers, 382 F. Supp. 3d at 878–79. Resolving standing inferences in favor of the plaintiff, see Glickert v. Loop Trolley Transp. Dev. Dist., 792 F.3d 876, 880 (8th Cir. 2015), SFLA has identified a general political speaker addressing non-election issues as a sufficient comparator. See Doc. 24 ¶ 76 (describing the scope of the statute); Doc. 35 at 17 (same).

## B. Whether SFLA Has Stated Viable Claims

### 1. Claims in Amended Complaint and Level of Scrutiny

Having determined SFLA has standing to bring this action, this Court now turns to the portion of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, Doc. 22, arguing that SFLA failed to state a claim because SDCL § 12-27-16 is constitutional. SFLA's Amended Complaint contains three counts—1) that SDCL § 12-27-16 is unconstitutional "on its face because it is overbroad," Doc. 24 ¶¶ 55–63; 2) that the on-ad donor disclosure rule is

---

sufficient facts to support a reasonable inference that it can satisfy the elements of standing." (cleaned up and citation omitted)).

unconstitutional, Doc. 24 ¶¶ 64–81; and 3) that the on-ad donor disclosure rule is void for vagueness, Doc. 24 ¶¶ 82–93. The first count is a facial attack on the statute, although it contains within it an as-applied challenge to regulation of issue advocacy. The second and third counts of the Amended Complaint contain both facial and as-applied challenges, with some overlap with the first count. See Doe v. Reed, 561 U.S. 186, 194 (2010) (explaining that, in distinguishing between facial and as-applied challenges, what matters is whether the claim and relief "reach beyond the particular circumstances of" the plaintiff).

In all three counts, SFLA invokes the First and Fourteenth Amendments to claim that SDCL § 12-27-16 abridges its right to free speech. Doc. 24. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The Fourteenth Amendment extended protections of the First Amendment to the states. Timbs v. Indiana, 586 U.S. 146, 156 (2019) (noting that "the First Amendment's Free Speech Clause was applicable to the States under the Due Process Clause of the Fourteenth Amendment" (cleaned up and citation omitted)). "Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people." Citizens United v. FEC, 558 U.S. 310, 339 (2010). "Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution." Buckley v. Valeo, 424 U.S. 1, 14 (1976). Thus, laws that burden political speech are "subject to strict scrutiny," requiring the government to prove that the restriction "furthers a compelling interest and is narrowly tailored to achieve that interest." Citizens United, 558 U.S. at 340 (quoting FEC v. Wisc. Right to Life, Inc., 551 U.S. 449, 464 (2007)).

Both in its Amended Complaint, Doc. 24 ¶¶ 68–71, and in briefing, Doc. 35 at 15 n.1, SFLA urges that this Court apply strict scrutiny to strike down SDCL § 12-27-16 altogether. Strict

Add. 24

scrutiny, however, is not the standard for evaluating disclaimer and disclosure laws such as SDCL § 12-27-16.[6]  Disclaimer and disclosure laws like SDCL § 12-27-16 "impose no ceiling on campaign-related activities, and do not prevent anyone from speaking." <u>Citizens United</u>, 558 U.S. at 366 (cleaned up and citations omitted).  Thus, instead of strict scrutiny, such laws are subject to "'exacting scrutiny,' which requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." <u>Id.</u> at 366–67 (citation omitted).  The Supreme Court has recognized such an important interest includes "providing the electorate with information" about the sources of spending behind political speech. <u>Citizens United</u>, 558 U.S. at 367 (quoting <u>Buckley</u>, 424 U.S. at 66).  Because groups can finance political election-related speech "while hiding behind dubious and misleading names," disclaimers and disclosures help citizens "make informed choices in the political marketplace." <u>Id.</u> at 367 (cleaned up and citations omitted).  Such disclosures also deter corruption and expose large contributors and expenditures to the light of day. <u>Buckley</u>, 424 U.S. at 67.

**2.  Facial Overbreadth Claim in Count I**

**a.  Facial Challenges and Generalized Challenge to SDCL § 12-27-16**

Part of Count I in SFLA's Amended Complaint contains a facial challenge to SDCL § 12-27-16 as being overbroad.  "In the First Amendment context, a law is overbroad when 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" <u>Animal Legal Def. Fund</u>, 89 F.4th at 1079 (quoting <u>United States v. Stevens</u>, 559 U.S. 460, 473 (2010)).  Courts routinely uphold disclosure laws like the one challenged in this case when they satisfy exacting scrutiny. <u>See Citizens United</u>, 558 U.S. at 366–67 (applying exacting

---

[6]SFLA recognizes that exacting scrutiny is prevailing law for evaluating disclaimer and disclosure laws, Doc. 35 at 14–15, but urges a change in law to apply strict scrutiny.

Appellate Case: 26-1503   Page: 27   Date Filed: 06/15/2026 Entry ID: 5651118

Add. 25

scrutiny to disclaimer and disclosure requirements).  Under exacting scrutiny, the state has the burden to show the restriction "employs means closely drawn [to advancing the state interest] to avoid unnecessary abridgement of First Amendment freedoms." Jones v. Jegley, 947 F.3d 1100, 1105 (8th Cir. 2020) (cleaned up and citation omitted).  "While exacting scrutiny does not require that disclosure regimes be the least restrictive means of achieving their ends, it does require that they be narrowly tailored to the government's asserted interest." Ams. for Prosperity, 594 U.S. at 608.  This means the court will "require a fit that is not necessarily perfect, but reasonable." Id. at 609 (quoting McCutcheon v. FEC, 572 U.S. 185, 218 (2014)).  Government interests in "provid[ing] the electorate with information as to where political campaign money comes from and how it is spent by the candidate," "deter[ring] actual corruption and avoid[ing] the appearance of corruption by exposing large contributions and expenditures to the light of publicity," and "gathering the data necessary to detect violations of the contribution limitations" can be sufficiently important to justify disclosure requirements. Buckley, 424 U.S. at 66–67; see also Citizens United, 558 U.S. at 369 (determining the "information interest alone is sufficient to justify application of" the challenged disclaimer and disclosure requirements); Gaspee Project v. Mederos, 13 F.4th 79, 88 (1st Cir. 2021) (finding a state's "interest in an informed electorate is sufficiently important to satisfy the first imperative of exacting scrutiny").

"Facial challenges are disfavored because they often rest on speculation and raise the risk of premature interpretation of statutes on the basis of factually barebones records." Phelps-Roper v. City of Manchester, 697 F.3d 678, 685 (8th Cir. 2012) (cleaned up and citations omitted); see also Iowa Right to Life, 717 F.3d at 588.  "[A]pplication of the [overbreadth] doctrine is 'strong medicine' that should be employed 'sparingly and only as a last resort.'" Neely v. McDaniel, 677 F.3d 346, 350 (8th Cir. 2012) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973)).

Appellate Case: 26-1503   Page: 28   Date Filed: 06/15/2026   Entry ID: 5651118

Add. 26

Typically courts "apply the 'normal rule that partial, rather than facial, invalidation is the required course.'" Iowa Right to Life, 717 F.3d at 588 (quoting Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 502–04 (1985)).

South Dakota has a sufficiently important governmental interest to justify SDCL § 12-27-16 surviving a facial challenge.  Identifying donors of an organization who make independent communication expenditures informs voters of the source of the communication and helps them to gauge any bias, motives, and validity within the messages. See Citizens United, 558 U.S. at 371 ("[D]isclosure permits citizens and shareholders to react to the speech of corporate entities in a proper way.  This transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages.").  Informing voters of the source of an election-related communication is a sufficiently important interest.  See id. 558 U.S. at 369 (explaining a government interest in an informed electorate alone justifies disclosure requirements).  Therefore, South Dakota's statute has "satisf[ied] the first imperative of exacting scrutiny." Gaspee, 13 F.4th at 88.

Because South Dakota's disclaimer and disclosure regime advances a sufficiently important government interest, the motion to dismiss on SFLA's overbreadth claim must be granted unless SFLA has shown a plausible right to relief that the statute is not narrowly tailored to the state's informational interest.  SFLA claims the statute "is not narrowly tailored because it applies at all times to all speech concerning public office holders, including issue advocacy not related to or close in time to an election." Doc. 24 ¶ 76.  SFLA specifically asserts that the statute is not narrowly tailored because of its absence of temporal limitations, low spending thresholds, disclosure statement requirements, and provisions regarding public office holders and issue advocacy.  However, on a facial challenge, a court is not called upon to critique each provision

27

Appellate Case: 26-1503   Page: 29   Date Filed: 06/15/2026 Entry ID: 5651118

and determine whether it is constitutional in every conceivable application. See Ams. for Prosperity, 594 U.S. at 615 (stating a law "may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep"). Rather, "[g]enerally speaking, facial challenges leave no room for particularized considerations and must fail as long as the challenged regulation has any legitimate application." Gaspee Project, 13 F.4th at 92 (citing Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008)); see also United States v. Salerno, 481 U.S. 739, 745 (1987) (explaining that, to successfully mount a facial constitutional challenge, a movant "must establish that no set of circumstances exists under which [an act] would be valid").[7] Viewed in this light, SDCL § 12-27-16 survives the overbreadth claim.

At its core, SDCL § 12-27-16 applies to election-related speech. The statute requires disclosure statements and on-ad disclaimers for expenditures for "independent communications," which refers to speech "concerning a candidate or a ballot question." SDCL § 12-27-1(11). A "candidate" is

> any person *who seeks nomination for or election to public office*. A person is a candidate if the person raises, collects, or disburses contributions in excess of five hundred dollars; has authorized the solicitation of contributions or the making of expenditures; has been certified as a candidate by a political party; has created a candidate campaign committee for the purpose of obtaining public office; or has taken all actions required by state law to qualify for nomination for election to public office.

---

[7]The Supreme Court of the United States has recognized a second way for a facial challenge under the First Amendment to an overbroad law, which requires showing that a substantial number of the law's applications are unconstitutional when "judged in relation to the statute's plainly legitimate sweep." Ams. for Prosperity, 594 U.S. at 615 (citation omitted). This standard still does not impel a court to critique each provision of the law, and the result ultimately is the same under either standard.

Add. 28

SDCL § 12-27-1(4) (emphasis added). A "ballot question" is "any referendum, initiative, proposed constitutional amendment, or other measure *submitted to voters at any election.*" SDCL § 12-27-1(1) (emphasis added). Based on these statutory definitions, to the extent the challenged statute applies to communications that "concern[] a candidate or a ballot question," SDCL § 12-27-1(11), the regulated speech is certainly election-related because candidates and ballot questions are defined by their relationship to an election. The candidate-or-ballot-question prerequisite to the statute's application explicitly ties the disclaimer and disclosure statement requirements to election-related communications, as opposed to general political speech. Therefore, the statute's application to communications "concerning a candidate or a ballot question" is sufficiently narrowly tailored to survive a facial overbreadth challenge and "tethers [§ 12-27-16's] disclosure requirements to [South Dakota]'s informational interest" in informing voters about the source of election-related communications. See Gaspee Project, 13 F.4th at 88. The connection to election-related speech narrowly tailors the statute's primary application toward achieving the state's sufficiently important interest in creating an informed electorate.

**b. Addressing Particularized Challenges to SDCL § 12-27-16's Breadth**

As part of Count I, SFLA makes particularized arguments for why SDCL § 12-27-16 is unconstitutional, but such particularized challenges are better suited for as-applied and not facial overbreadth claims. Gaspee Project, 13 F.4th at 92 ("Generally speaking, facial challenges leave no room for particularized considerations and must fail as long as the challenged regulation has any legitimate application." (citations omitted)). After all, on facial overbreadth claims, a court simply determines "if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Ams. for Prosperity, 594 U.S. at 615. Nonetheless, this Court turns to the overbreadth challenges raised by SFLA. SFLA argues that

Add. 29

SDCL § 12-27-16 is too broad in applying to speech concerning public office holders and to issue advocacy and that its temporal scope, spending thresholds, and disclosure statement requirements make the statute overbroad.

SFLA in part of Count I challenges the statute's temporal scope as not narrowly tailored because it supposedly applies to election-related speech "at all times" and not "close in time to an election." Doc. 24 ¶ 76. SFLA's argument overstates the breadth of the statute. The challenged statute only applies to communications that "concern[] a candidate or a ballot question." § 12-27-1(11). For a communication to meet the definition of a "ballot question" or "candidate," the communication would need to be made within a finite window of time before an election. Under South Dakota law, for any initiated amendment or measure petition "to qualify for submission to the voters at the next general election," the petition must undergo circulation and garner signatures, which "may [not] be obtained more than twenty-four months preceding the general election"; the signatures are due by six months before the election on "the first Tuesday in May of a general election year."[8] SDCL §§ 2-1-1.1, 2-1-1.2. Therefore, an issue cannot "qualify for submission to voters" even under the widest notion before two years prior to an election and, more realistically, will not qualify until closer to six months before an election. See SDCL §§ 2-1-1.1, 2-1-1.2. Therefore, there can be no "ballot question"—or an issue "submitted to voters at any election" under SDCL § 12-27-1(1)—before that time period, either.

An individual must submit his or her mandatory nominating petition "by the last Tuesday of March . . . before the date of the primary election" but cannot begin circulating the mandatory nominating petition or certificate until January 1 of the year of the election, meaning an individual

---

[8] In election years, the general election in South Dakota takes place "[o]n the first Tuesday after the first Monday in November." SDCL § 12-2-2.

Appellate Case: 26-1503   Page: 32   Date Filed: 06/15/2026   Entry ID: 5651118

cannot be an official "candidate" before the start of the election year and does not secure a position on the ballot until about three months before the primary and a little more than seven months before the general election. See SDCL §§ 12-6-4, 12-6-4.1, 12-27-1(4). This creates a limited window of time for which speech concerning ballot issues and candidates could be subject to § 12-27-16, and SFLA's position that there is no temporal limit whatsoever on which communications are subject to the disclaimer and disclosure statement provisions is flawed. Although the statute in this case does not explicitly limit the operation of the statute to communications occurring within a set window of time, such as within 30 or 60 days of an election, the statute does impose some temporal limitation on the application of SDCL § 12-27-16.

SFLA emphasizes that this window of time during which speech is subject to South Dakota's disclosure regime is longer than those upheld in other states. See, e.g., Citizens United, 558 U.S. at 321, 372 (upholding a disclosure requirement for electioneering communications "made within 30 days of a primary or 60 days of a general election"); Gaspee Project, 13 F.4th at 83, 96 (upholding disclosure requirement for electioneering communications "made within sixty days of a general election or referendum or within thirty days of a primary election"); Natl'l Ass'n for Gun Rights v. Mangan, 933 F.3d 1102, 1108, 1122 (9th Cir. 2019) (upholding disclosure requirement for communications "made within 60 days of the initiation of voting in an election"). SFLA has a point, but nowhere in case law is there a set threshold of time before the election where disclaimers and disclosures can be required, and this Court is ruling on a facial challenge only since SFLA's communications came very close in time to a primary election and thus SFLA does not make this claim as a separate as-applied challenge.

A governmental interest in informing voters about the source of a communication may apply equally to all communications which concern a measure "submitted to voters at any election"

31

Date Filed: 06/15/2026 Entry ID: 5651118   Page: 33   Appellate Case: 26-1503

or a person "seek[ing] nomination for or election to public office" whether such communication is made six days or six months before an election. Moreover, any determinations of when the disclosure most usefully serves the state's informational interest are best left to the legislature. See Buckley, 424 U.S. at 83 (indicating setting spending thresholds is "necessarily a judgmental decision, best left . . . to congressional discretion"); Gaspee Project, 13 F.4th at 92 (explaining the "line-drawing exercise – which asks, at bottom, whether to mandate a list of five top donors or some greater or lesser number – is a task best left to the legislature"). For these reasons, the statute's time limits, though more expansive than those in other states, do not justify invalidating the statute as a whole on a facial challenge as overbroad.

SFLA also asserts in Count I that South Dakota's low spending threshold subjecting certain speech to the disclosure requirement makes the statute overbroad and may apply to general political speech and not just election-related speech. This Court's ruling would be different if SDCL § 12-27-16 indeed applied to general political speech because political speech "is at the very core of the First Amendment's protections." Winred, Inc. v. Ellison, 59 F.4th 934, 947 (8th Cir. 2023). But, as discussed previously, the statute does not apply to general political speech but only to communications concerning a candidate or ballot issue, thus limiting the range of speech swept into South Dakota's regulatory scheme. Although the minimum threshold for disclosures is just $100 under SDCL § 12-27-16(1), other courts have also upheld similarly low thresholds. See, e.g., Minn. State Ethical Practices Bd. v. Nat'l Rifle Ass'n, 761 F.2d 509, 512 (8th Cir. 1985) (per curiam) (upholding Minnesota's law requiring disclosure for election-related communication spending of or exceeding $50 for legislative races or $100 for state races or ballot questions); Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 59–61 (1st Cir. 2011) (upholding Maine's law requiring disclosure for express advocacy communication expenditures exceeding $100); Nat'l Ass'n for

32

Add. 32

Gun Rights, 933 F.3d at 1122 (upholding Montana's law requiring disclosure for election-related communication spending exceeding $250). As the Supreme Court has recognized, the legislature is in the best position to set a spending threshold. Buckley, 424 U.S. at 83 (indicating setting spending thresholds is "necessarily a judgmental decision, best left . . . to congressional discretion"); see also Gaspee Project, 13 F.4th at 92 (explaining the "line-drawing exercise – which asks, at bottom, whether to mandate a list of five top donors or some greater or lesser number – is a task best left to the legislature"). Therefore, SFLA has not demonstrated it is entitled to relief on its facial overbreadth claim for the statute's $100 spending threshold. For these same reasons, to the extent SFLA presents an as-applied challenge by alleging that its communications cost slightly more than $100, this challenge also can be dismissed.

When there has been an independent communication expenditure, South Dakota law requires filing a disclosure statement within 48 hours of the funded communication's publication. SDCL § 12-27-16(2). The disclosure statement must "[i]dentify the person or entity making the expenditure," including providing a mailing address and website; information about the communication, including the amount spent on it and its content and subject matter; and the name and title of various individuals associated with any entity that made a communication expenditure subject to the statute. SDCL § 12-27-16(3). SFLA argues that this requirement unconstitutionally "subjects organizations to ongoing disclosure requirements" for communication expenditures. Doc. 24 ¶ 59. This argument is without merit.

First, the one-time, event-driven reporting requirement is not "ongoing." Certainly, an ongoing reporting regime would impose a greater burden on speech which would potentially fail narrow tailoring, but the statute here only applies once expenditures are made. Compare SDCL § 12-27-16(2)–(3) (requiring a disclosure statement within 48 hours of a communication being

Appellate Case: 26-1503   Page: 35   Date Filed: 06/15/2026 Entry ID: 5651118

Add. 33

made only when there is a "payment or promise of payment") with <u>Minn. Citizens Concerned for Life, Inc. v. Swanson</u>, 692 F.3d 864, 873, 877 (8th Cir. 2012) (invalidating an "ongoing reporting requirement" that required repeated reporting and that, "[o]nce initiated, . . . is potentially perpetual regardless of whether the association ever again makes an independent expenditure").  Second, the disclosure requirement is not unduly burdensome because the temporal window it sets is reasonable, the form can be completed and filed electronically, and the form only requests basic information useful to identifying the source of a communication.  <u>See</u> SDCL § 12-27-16(2)–(3); Doc. 23 at 25.  The requested information provides voters information about a communication's source, the form does not present onerous filing burdens, and the Eighth Circuit has previously upheld a 48-hour reporting requirement.  <u>See</u> <u>Iowa Right to Life</u>, 717 F.3d at 595–96 (upholding a 48-hour reporting requirement); <u>see also</u> <u>id.</u> (collecting cases upholding 24- and 48-hour reporting requirements).

SFLA advances multiple arguments that the disclaimer and disclosure statement requirements apply to non-election speech, making the statute overbroad and not narrowly tailored. SFLA first argues the statute governs non-election speech because it applies to speech concerning "public office holders."  South Dakota Codified Law § 12-27-16 troublingly includes the term "public office holder" between "candidates" and "ballot questions."[9]  The justification for disclaimer and disclosure requirements is, of course, to inform voters on the source of election-related speech.  <u>See</u> Doc. 23 at 28; <u>Citizens United</u>, 558 U.S. at 369 (explaining a government interest in an informed electorate justifies disclosure requirements).  When speech is about public

---

[9]South Dakota has no legislative history to help explain why the term "public office holder" appears in § 12-27-16.  <u>See</u> <u>S.D. Farm Bureau, Inc. v. Hazeltine</u>, 202 F. Supp. 2d 1020, 1028 (D.S.D. 2002) ("We know that South Dakota, even when the legislature acts, has no legislative history to help guide courts.").

Appellate Case: 26-1503   Page: 36   Date Filed: 06/15/2026 Entry ID: 5651118

office holders, SFLA argues, it is not inherently election-related and, therefore, no longer relates to or advances the state's legitimate interest in an informed electorate. SFLA has a valid point on this facial challenge because, after all, speech about public office holders is not inherently election-related. A public office holder's tenure in office is not perpetually marked with "candidate" status; rather, he or she only becomes a "candidate" when the public office holder runs for reelection or participates in any other action outlined in SDCL § 12-27-1(4). Extending SDCL § 12-27-16 to speech concerning public office holders disconnects the reporting requirement from its informational purpose and exposes speakers to the statutory requirements for non-election speech, including speech regarding public office holders that is unrelated to election conduct, speech about a public office holder during his or her entire tenure, and speech about a public office holder when that person may not be running (or even eligible) for reelection.

There exists an interpretation of SDCL § 12-27-16 under which "public office holders" is not so broadly interpreted to include non-candidates. South Dakota Codified Law § 12-27-16, by its terms, regulates "independent communication expenditures," which are confined to "communication[s] concerning a candidate or a ballot question." SDCL § 12-27-1(11). Thus, SDCL § 12-27-16's inclusion of "public office holders" does not broaden the statute because communications related to a non-candidate public office holder do not "concern[] a candidate," and therefore would not qualify as an "independent communication expenditure" or necessitate complying with the disclaimer and disclosure statement requirements of § 12-27-16, unless and until the public office holder becomes a "candidate" in an upcoming election. For there to be "public office holders" subject to the statute, those office holders must at the same time be "candidates"; the term "public office holders" is not otherwise defined in SDCL Chapter 12-27.

35

Moreover, the rule of lenity, applicable to this criminal statute, would require a court to interpret any ambiguity to determine that non-candidates cannot be included in "public office holders." See Fischer v. United States, 529 U.S. 667, 691 (2000); United States v. Bass, 404 U.S. 336, 347 (1971). SFLA's best argument would be that the inclusion of "public office holder" in SDCL § 12-27-16 renders the statute ambiguous, yet courts must construe ambiguous provisions in a way to preserve a statute's constitutionality. See McFadden v. United States, 576 U.S. 186, 196–97 (2015); see also Aptheker v. Secretary of State, 378 U.S. 500, 515 (1964) (stating the court "will not consider the abstract question of whether Congress might have enacted a valid statute but instead must ask whether the statute that Congress did enact will permissibly bear a construction rendering it free from constitutional defects"). Here, this Court need not resolve the ambiguity (if indeed there is one) given how "independent communication expenditures" is defined. Properly read, SDCL § 12-27-16 only governs "independent communication expenditures" and does not extend to communications concerning non-candidate office holders. If Defendants had enforced the statute against SFLA or anyone for speech about a non-candidate "public office holder," this Court would rule quite differently.

SFLA's next overbreadth argument—and one that doubles as an as-applied challenge—asserts that the statute regulates non-election speech because it applies to issue advocacy and not just express advocacy. Unlike express advocacy, issue advocacy is not inherently election-related; therefore, SFLA argues, the statute applies to non-election speech and does not advance the government's goal of having an informed electorate. As discussed above in the standing analysis, SFLA's primary-eve text messages tread close to express advocacy but do not meet the statutory definition in SDCL § 12-27-1(9)(b) of "expressly advocate." Yet, SDCL § 12-27-16 does not

36

differentiate between express advocacy and issue advocacy, except as to an unrelated subsection involving polling.  See SDCL § 12-27-16(6)(e).

SFLA argues that "Supreme Court precedent requires 'distinguish[ing] campaign speech from issue advocacy.'"  Doc. 24 ¶ 5 (quoting FEC v. Wisc. Right to Life, Inc., 551 U.S. 449, 480 (2007)).  SFLA misreads Wisconsin Right to Life to insulate its issue advocacy from any regulation.  Doc. 24 ¶¶ 56–57.  Although the Court in Wisconsin Right to Life acknowledged the importance of determining whether speech was issue or express advocacy, it did not do so to prohibit imposing any and all disclosure requirements on issue advocacy.  Rather, before conducting its analysis for an as-applied challenge, the Court merely recognized that campaign speech regulations on issue advocacy may not always be appropriate, noting that "the interests that justify the regulation of campaign speech might not apply to the regulation of genuine issue ads." Wisc. Right to Life, 551 U.S. at 456 (quoting McConnell v. FEC, 540 U.S. 93, 206 n.88 (2003)).

The Supreme Court and many circuits have made clear that the constitutionality of disclosure laws does not hinge on whether the regulated speech constitutes issue or express advocacy.  See, e.g., Citizens United, 558 U.S. at 368–69 (refusing to extend the issue/express advocacy distinction relevant to restrictions on independent expenditures to disclosure requirements); Gaspee Project, 13 F.4th at 88 (recognizing "the Supreme Court has rejected the attempt to distinguish between express advocacy and issue advocacy when evaluating disclosure laws – even though the Court has deemed such a distinction relevant when evaluating limits on expenditures" and determining "there is no principled basis for us to distinguish between express advocacy and issue advocacy with respect to election-law disclosure regimes"); Del. Strong Families v. AG of Del., 793 F.3d 304, 308 (3d Cir. 2015) ("Any possibility that the Constitution limits the reach of disclosure to express advocacy or its functional equivalent is surely repudiated

37

Add. 37

by Citizens United v. FEC . . . ."); Ctr. for Individual Freedom v. Madigan, 697 F.3d 464, 484 (7th Cir. 2012) ("Citizens United made clear that the wooden distinction between express advocacy and issue discussion does not apply in the disclosure context."); Human Life of Wash., Inc. v. Brumsickle, 624 F.3d 990, 1016 (9th Cir. 2010) ("However, even if [appellant's] proposed communications constitute unadulterated issue advocacy, its argument has been foreclosed by the Supreme Court's opinion in Citizens United.").

In this case, then, what matters is not whether the statute applies to express or issue advocacy. Rather, the relevant question is whether the statute's regulation of advocacy—whether express or issue—is narrowly tailored to its informational interests. Here, to the extent the statute applies to expenditures for "independent communications," which consists of speech "concerning a candidate or a ballot question," the disclosure regime only applies to election-related speech. See SDCL § 12-27-1(11). This is because "candidate" or "ballot question" is, by definition, election-related. See SDCL § 12-27-1(4) (defining a "candidate" as one "who seeks nomination for or election to public office"); SDCL § 12-27-1(1) (defining a "ballot question" as a proposal "submitted to voters at any election"). Therefore, any issue advocacy about a candidate or ballot question that triggers the disclosure and disclaimer requirements is inherently linked to an election, narrowly tailoring the statute toward achieving the state's sufficiently important interest in creating an informed electorate. For this same reason, any as-applied challenge arising from SDCL § 12-27-16's application to SFLA's issue advocacy is insufficient to state a claim that the statute unconstitutionally burdens free speech. In sum, SDCL § 12-27-16 survives the facial challenge made in Count I, and those aspects of Count I that are as-applied challenges likewise fail to state a claim as a matter of law.

### 3. Compelled Speech Claim in Count II

Add. 38

Appellate Case: 26-1503   Page: 40   Date Filed: 06/15/2026 Entry ID: 5651118

Count II of SFLA's Amended Complaint asserts the donor disclosure requirement is an unconstitutional form of compelled speech because it requires political speakers to disseminate a government message that is not narrowly tailored. Parts of Count II repeat facial challenges to SDCL § 12-27-16 and invoke that strict scrutiny should apply, but this Court will not repeat its analysis of those claims.

"The First Amendment protects both the right to speak freely and the right to refrain from speaking at all. The compelled speech doctrine prohibits the government from making someone disseminate a political or ideological message." Ark. Times LP v. Waldrip, 37 F.4th 1386, 1394 (8th Cir. 2022) (cleaned up and citation omitted). Compelled speech inhibiting a speaker's ability to convey his or her intended message is generally unconstitutional. See, e.g., Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos., 515 U.S. 557, 572–73 (1995) (finding that requiring a privately-organized parade to include a group whom they wanted to exclude was unconstitutional for "essentially requiring petitioners to alter the expressive content of their parade"); Nat'l Inst. of Family & Life Advocates v. Becerra, 585 U.S. 755, 761, 766 (2018) (invalidating a disclosure requirement that would require pregnancy centers to identify available state abortion resources because it would require presenting information about "the very practice that petitioners are devoted to opposing," which "plainly alters the content of petitioners' speech" (cleaned up and citation omitted)); Riley v. Nat'l Fed'n of Bline, 487 U.S. 781, 795 (1988) (explaining "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech"). Disclosure requirements can constitute violations of the First and Fourteenth Amendments by compelling speech. See NIFLA, 585 U.S. at 138 S. Ct. at 777–79 (invalidating a disclosure requirement on facilities providing "pregnancy-related" services); Miami Herald

39

Date Filed: 06/15/2026 Entry ID: 5651118   Page: 41   Appellate Case: 26-1503

Publishing Co. v. Tornillo, 418 U.S. 241, 256 (1974) (invalidating a "compelled printing" requirement on newspapers).

Election-related disclosure requirements, however, have survived constitutional scrutiny. See Gaspee Project, 13 F.4th 79. Similar to SFLA, the petitioners in Gaspee Project relied on NIFLA to argue Rhode Island's on-ad disclosure requirement that included the organization's five largest donors from the previous year was unconstitutional compelled speech. The Court of Appeals for the First Circuit disagreed, explaining that "[d]isclaimers – in the unique election-related context – serve the salutary purpose of helping the public to understand where money comes from. The election-related context . . . is alone sufficient to distinguish" election-related disclaimers from the disclaimers that violated the First Amendment in NIFLA. Gaspee Project, 13 F.4th at 95 (cleaned up and citation omitted).

This is true even when the required on-ad disclaimer could be accessible elsewhere. SFLA argues that "the government could serve [its informational] interest by requiring entities to report that information to the state, which could then publish it online," Doc. 35 at 26, thereby avioding the impact of on-ad disclosures.[10] Immediately accessible voter information is different from information a voter could access through searching state publications and files. See No on E v. Chiu, 85 F.4th 493, 509 (9th Cir. 2023) ("Case law and scholarly research support the proposition that, because of its instant accessibility, an on-advertisement disclaimer is a more effective method

---

[10] SFLA argues that the requirement fails to serve the government's informational interest because "listing the organization's top five donors might *decrease* viewers' or readers' information by giving them a distorted view of the organization's overall donors" and because the disclosure requirement could result in donors being listed on messages "with which they disagree— potentially *misleading* voters." Doc. 35 at 26–27. This is a novel argument but not one that renders the statute unconstitutional. Listing an organization's top five donors gives voters and the general public a view of the top five funders of the organization, which is useful information in understanding who funds the messenger, even if those donors may not directly approve of the particular message.

Appellate Case: 26-1503   Page: 42   Date Filed: 06/15/2026   Entry ID: 5651118

of informing voters than a disclosure that voters must seek out."); Gaspee Project, 13 F.4th at 91 ("The on-ad donor disclaimer, moreover, is not entirely redundant to the donor information revealed by public disclosures. . . . [T]he on-ad donor disclaimer provides an instantaneous heuristic by which to evaluate generic or uninformative speaker names."); Majors v. Abell, 361 F.3d 349, 353 (7th Cir. 2004) ("But of course the very thing that makes reporting less inhibiting than notice in the ad itself—fewer people are likely to see the report than the notice—makes reporting a less effective method of conveying information that by hypothesis the voting public values."). Therefore, requiring the on-ad disclaimers is narrowly tailored to South Dakota's informational interest because it informs voters of the source of a communication in a manner other alternatives could not similarly do.

The fact that the disclaimer consumes space or time in a communication that the speaker would have used in a different manner similarly does not thereby make the donor-disclosure requirement not narrowly tailored. SFLA cites American Beverage Ass'n v. City & County of S.F., 916 F.3d 749, 754 (9th Cir. 2019) and R.J. Reynolds Tobacco Co. v. FDA, 696 F.3d 1205, 1208 (D.C. Cir. 2012) as support for its position. In both cases, the courts invalidated a statute mandating warnings that constituted 20% of the advertisement or packaging. These cases, however, involve commercial products and are not analogous to the present case; they do not address the specific issue of on-ad disclaimers for election-related communications. In the election context, donor disclaimers are not unconstitutional as compelled speech simply because they use ad space the speaker would have preferred using differently. See Citizens United, 558 U.S. at 320, 366, 371 (upholding a requirement for a disclaimer that occupied 40% of the ad space); No on E v. Chiu, 85 F.4th 493, 507–08 (9th Cir. 2023) (affirming denial of a preliminary injunction where plaintiffs did not show likely success on their claim that California's disclaimer requirement was

Add. 41

unconstitutional for constituting up to 33% of a video ad or 35% of a printed ad); Smith v. Helzer, 95 F.4th 1207, 1219–21 (9th Cir. 2024) (affirming denial of a preliminary injunction where plaintiff was not likely to succeed on its challenge to Alaska's disclaimer requirement that taking time or space on the ad violated the First Amendment).

For these reasons, South Dakota's statute requiring on-ad donor disclosures is not the sort of compelled speech that violates the First Amendment. To the extent the requirement imposes any burden on speech, the statute is narrowly tailored to the state's significant interest in an informed electorate. Therefore, SFLA has failed to plead a viable claim of constitutional overbreadth, and Defendants' motion to dismiss the facial component of SFLA's compelled speech claim in Count II is granted.

SFLA in Count II alleges both a facial and an as-applied challenge, Doc. 24 ¶ 80, that SDCL § 12-27-16 is constitutionally invalid "because it applies at all times to all speech concerning public office holders, including issue advocacy not related to or close in time to an election," Doc. 24 ¶ 76. The record is unclear whether the mailer messages sent by SFLA, which plainly are issue advocacy, targeted non-candidate office holders, but for the reasons explained above, the statute does not extend to non-candidate public office holders; the regulations apply only to "independent communication expenditures," which, by definition, means "a communication concerning a candidate or a ballot question." SDCL §§ 12-27-1(11); 12-27-16. SFLA's claims in Count II ultimately do not survive to the extent the count alleges facial overbreadth or an as-applied challenge on the basis of issue advocacy or speech regarding public office holders.

There remains a narrow as-applied challenge in Count II that survives the motion to dismiss. The question of whether SFLA is the sort of organization that receives a "contribution"

42

Date Filed: 06/15/2026   Entry ID: 5651118     Page: 44     Appellate Case: 26-1503

under SDCL § 12-27-1(6) and the absence of so-called "off-ramps"[11] to on-ad disclaimers in the South Dakota statute cause this Court to hesitate in granting the motion to dismiss as to that narrow as-applied challenge in Count II.

### 4. Vagueness Claim in Count III

SFLA's final claim is that the statute's use of "concerning," as well as its references to "public office holders" within the definition of "independent communication expenditures," make the disclaimer requirement of SDCL § 12-27-16 unconstitutionally vague. See Doc. 24 ¶ 90. Courts rely on "the common usage of statutory language" in deciding whether a statute is unconstitutionally vague. Stephenson v. Davenport Cmty. Sch. Dist., 110 F.3d 1303, 1309 (8th Cir. 1997). "A government policy is unconstitutionally vague if it fails to provide adequate notice of the proscribed conduct and lends itself to arbitrary enforcement." Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist., 83 F.4th 658, 668 (8th Cir. 2023) (cleaned up and citation omitted). "[W]hen speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." FCC v. Fox Television Stations, Inc., 567 U.S. 239, 253–54 (2012). However, a federal court has an "obligation to construe the statute, if that can be done consistent with the legislature's purpose, to avoid the shoals of vagueness." Buckley, 424 U.S. at 77–78.

Here, the use of "concerning" is not unconstitutionally vague. The plain meaning of "concerning" is as a preposition meaning "relating to" or "regarding." None of these phrases leave

---

[11] Many on-ad donor disclosure statutes offer off-ramps for donors who do not want to be disclosed by allowing them to donate less than the triggering value and/or opting their donation out of use for electioneering communications. See, e.g., Gaspee, 13 F.4th at 92 (referring to "off ramp" provision in finding on-ad donor disclosure rule constitutionally narrowly tailored). South Dakota's statutes offer neither of these options.

Add. 43

Appellate Case: 26-1503   Page: 45   Date Filed: 06/15/2026   Entry ID: 5651118

an average person uncertain about what type of speech "concerns" a candidate or ballot question. SFLA provided no examples of speech that may be "concerning" a candidate or ballot question under one interpretation of that statutory language but that does not under a different interpretation. Nor does SFLA assert that communications "concerning" a candidate or ballot question extends to communications that should not be subject to the statute or that would cause an average speaker to be uncertain about whether particular speech was subject to the statute's disclosure and disclaimer regime. For these reasons, SFLA's vagueness claim based on the statute's use of "concerning" fails to state a viable claim.

SFLA also argues that the statute is vague because it is unclear whether the statute regulates speech about public office holders. This Court dealt at length with this argument previously to explain why the statute textually does not extend to non-candidate office holders and, if ambiguous, why that ambiguity must be resolved to limit SDCL § 12-27-16 to "candidates and ballot questions" and not to extend to non-candidate office holders.

### IV.    Conclusion

For the reasons explained, it is

ORDERED that Defendants' Motion to Dismiss, Doc. 22, is granted in part and denied in part. All of Counts I and II and the facial challenge in Count II are dismissed, but the motion to dismiss is denied regarding the as-applied portion of Count II concerning whether SFLA receives a "contribution" constitutionally subject to disclosure and the absence of "off ramps" for donors to avoid on-ad listing requirements on certain messages.

DATED this 27ᵗʰ day of August, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

44

Add. 44

Appellate Case: 26-1503   Page: 46   Date Filed: 06/15/2026 Entry ID: 5651118

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| STUDENTS FOR LIFE ACTION,<br><br>Plaintiff,<br><br>vs.<br><br>MARTY JACKLEY, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA; AND MONAE JOHNSON, IN HER OFFICIAL CAPACITY AS SOUTH DAKOTA SECRETARY OF STATE;<br><br>Defendants. | 3:23-CV-03010-RAL<br><br><br>OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Students for Life Action (SFLA) brought this suit against Marty Jackley, in his official capacity as Attorney General of the State of South Dakota, and Monae Johnson, in her official capacity as South Dakota Secretary of State (collectively, Defendants). SFLA alleges South Dakota's statute requiring on-ad donor disclaimers and disclosure statements for certain political advocacy speech violates the First and Fourteenth Amendments. See generally Doc. 24. Defendants moved to dismiss, arguing that SFLA lacks standing and that the statute is constitutional, Doc. 22, which this Court granted in part, Doc. 44. Following the Opinion and Order on the Motion to Dismiss, only two parts of the SFLA's claims remained: the as-applied portion of Count II concerning whether SFLA receives a "contribution" constitutionally subject to disclosure and the absence of "off-ramps" for donors to avoid on-ad listing requirements on certain messages. Doc. 44 at 13, 44.

1

Appellate Case: 26-1503    Page: 47    Date Filed: 06/15/2026 Entry ID: 5651118

Add. 45

Both SFLA and Defendants have moved for summary judgment. Docs. 64, 67. Because SFLA has failed to show a cognizable injury in fact for the reasons explained below, this Court concludes that SFLA lacks standing to bring its as-applied challenge to SDCL § 12-27-16. However, even if SFLA had standing, SDCL § 12-27-16 is constitutional despite the statute's lack of "off-ramp" provisions because South Dakota has a sufficiently important interest in an informed electorate, the donor-disclaimer requirements are substantially related to that interest, and the requirements are narrowly tailored to serving it.

## I.    Facts

There are no genuine issues of material facts, and the parties largely agree upon the core facts. SFLA is a 501(c)(4) nonprofit based in Fredericksburg, Virginia, that conducts national pro-life activism. Doc. 73 ¶¶ 8–9; Doc. 68-1 ¶¶ 3–4. SFLA "engages in issue advocacy nationwide" and "limits its voter communications to candidates' positions on abortion-related issues and to encourage activism for pro-life policies; it does not tell voters which candidate to vote for or against." Doc. 73 ¶¶ 8–9; Doc. 68-1 ¶¶ 3–4. On June 6, 2022, SFLA sent various text messages intended to inform "voters about 12 incumbent [South Dakota] legislators' voting records on banning chemical abortions and about their responses to candidate surveys" but that did not directly tell "the recipients who [sic] they should or should not vote for." Doc. 73 ¶¶ 11–12; Doc. 68-1 ¶¶ 6–7, 5–9 (attaching text messages). These text messages were sent the day before the South Dakota party primary election and cost $116.62 each. Doc. 73 ¶ 11; Doc. 68-1 ¶ 6.

The June 6, 2022 text messages, attached by SFLA both to the First Amended Complaint and to the Declaration of SFLA Treasurer Tina Whittington, which was submitted with SFLA's Motion for Summary Judgment, took various forms. For example, for those candidates who had voted against South Dakota House Bill 1208 to make it a felony offense to "dispense, distribute,

2

manufacture, sell, or transfer any chemical abortion drug," defined as "mifegyne, mifeprex, mifepristone, and any other pharmaceutically equivalent drug,"[1] the text read that the candidate

> voted against Students for Life Action's HB 1208 to Ban Chemical Abortions in S. Dakota, and failed to return his SFLAction candidate survey pledging to vote pro-life. Please take 5 seconds to tell him to reverse course if nominated in the June 7th primary by signing our petition to ban chemical abortion

with a link attached. Doc. 68-1 at 5–9. For its favored candidates, SFLA's text message template was either

> I have great news! [Candidate name] returned our survey and pledged to vote 100% pro-life if elected. [He/She] is the only candidate in [Senate/House] District [number] to do so. Please take 5 seconds to encourage [him/her] to keep [his/her] promise if nominated in the June 7th primary by signing our petition to ban chemical abortion

with a link attached, Doc. 68-1 at 5–9, or

> I have great news! [Candidate name] returned our survey and pledged to vote 100% pro-life if elected. Please thank [candidate name] for pledging to defend the preborn and encourage [him/her] to keep [his/her] promise to defend life if nominated in the Tuesday, June 7th Republican Primary.

Doc. 68-1 at 5–9. The texts did not contain any on-ad disclaimer, and SFLA filed no disclosure statement under SDCL Chapter 12-27. Defendants took no enforcement action of any nature against SFLA as a consequence of the text messages. In its Amended Complaint and its Statement of Undisputed Material Fact, SFLA represents that it intends to continue sending similar messages "concerning candidates and office holders" in the future. Doc. 24 ¶ 22; Doc. 73 ¶ 10.

SFLA also sent out mailers to South Dakota voters during 2022.[2] Doc. 73 ¶ 13; Doc. 68-1 ¶ 8. The mailers targeted certain South Dakota House of Representative members who had voted "no" on House Bill 1208 and provided their phone numbers before concluding with encouragement

---

[1] The text of the 2022 House Bill 1208 is at https://sdlegislature.gov/session/bill/23057/230675.

[2] The timing of these mailers in connection to any primary or election is unclear in the record.

3

to call the representative to tell him or her "to stop opposing pro-life legislation," or, in some iterations, "pro-life bills." Doc. 24-2 at 2–9; Doc. 73 ¶ 13; Doc. 68-1 ¶ 8. Other mailers urged South Dakotans to contact their state legislators to encourage them to continue to support pro-life legislation. Doc. 68-1 at 12–13. At least some of these mailers listed the mailing and website address of SFLA and stated, "Paid for & authorized by [SFLA] . . . Not by a candidate," or "Paid for & authorized by [SFLA] . . . Not authorized or paid for by any candidate or candidate's committee." Doc. 68-1 at 10, 13. The mailers did not otherwise contain any on-ad disclaimer and SFLA filed no disclosure statement under SDCL Chapter 12-27. SFLA faced no enforcement action from Defendants or anyone else stemming from the mailings and intends to engage in similar messaging in the future. Doc. 68-1 ¶ 5.

SFLA accepts donations that are earmarked for certain uses. Doc. 73 ¶ 15; Doc. 68-1 ¶ 10. "As a rule, SFLA does not disclose the names of its donors unless required to by law, because many of SFLA's donors find this anonymity important, or even vital to their giving." Doc. 73 ¶ 16; Doc. 68-1 ¶ 11. SFLA represents through a declaration of its treasurer that if it "were required to disclose its top five donors in given year, even if those donors have made donations earmarked so those funds will not be used for communications concerning a candidate or ballot question in South Dakota, donors may reduce the amount of their donations or stop donating entirely." Doc. 73 ¶ 17; Doc. 68-1 ¶ 12.

South Dakota requires on-ad donor disclaimers and disclosure statements for certain political advocacy-related communications. See SDCL § 12-27-16. South Dakota Codified Law § 12-27-16, in relevant part, states:

> The following apply to independent communication expenditures by persons and entities related to communications concerning candidates, public office holders, ballot questions, or political parties who are not controlled by, coordinated with,

4

requested by, or made upon consultation with that candidate, political committee, or agent of a candidate or political committee:

(1)    Any person or entity that makes a payment or promise of payment totaling more than one hundred dollars, including donated goods or services for an independent communication expenditure that concerns a candidate, public office holder, ballot question, or political party shall append to or include in each communication a disclaimer that clearly and forthrightly:

(a)    Identifies the person or entity making the independent communication expenditure for that communication;

(b)    States the mailing address and website address, if applicable, of the person or entity; and

(c)    If an independent expenditure is undertaken by an entity not including a candidate, public office holder, political party, or political committee, the following notation must be included: "Top Five Contributors," including a listing of the names of the five persons making the largest contributions in aggregate to the entity during the twelve months preceding that communication. An independent communication expenditure made by a person or entity shall include the following: "This communication is independently funded and not made in consultation with any candidate, public office holder, or political committee.".

A violation of this subdivision is a Class 2 misdemeanor. A subsequent offense within a calendar year is a Class 1 misdemeanor;

(2)    Any person or entity making a payment or promise of payment of more than one hundred dollars, including donated goods and services, for a communication described in subdivision (1) shall file an independent communication expenditure statement within forty-eight hours of the time that the communication is disseminated, broadcast, or otherwise published.

SDCL § 12-27-16. Both Class 1 and 2 misdemeanors expose a violator to jail time or a fine. SDCL § 22-6-2. The South Dakota Secretary of State is charged with enforcing civil penalties against violations of SDCL § 12-27-16. SDCL § 12-27-29.2.

In 2023, SFLA filed a Complaint, Doc. 1, which it subsequently amended, Doc. 24, alleging that SDCL § 12-27-16 requiring on-ad donor disclaimers and disclosure statements for certain advocacy-related communications violates the Free Speech Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment. Doc. 24 ¶¶ 55–93.[3] The on-ad donor

---

[3] In Defendants' Statement of Undisputed Material Facts, Defendants raise that in the run-up to the 2024 election, which occurred the November after this Court's August 2024 Opinion and Order

5

disclaimer requirement mandates that certain communications costing over $100 identify who is "making the independent communication expenditure for that communication," include a mailing and website address for the person or entity making the expenditure, and list the entity's top five contributors from the prior twelve-month period before the communication. SDCL § 12-27-16(1)(a)–(c). The disclaimer must also state the following: "This communication is independently funded and not made in consultation with any candidate, public office holder, or political

---

granting the motion to dismiss in part, SFLA issued a pamphlet stating, "Vote No," on proposed Amendment G. See Doc. 75 ¶ 18 (undisputed as to the fact the pamphlet says, "Vote No"). Amendment G sought to establish a state constitutional right to abortion. See Constitutional Amendment Attorney General's Statement, S.D. Sec. of State, https://sdsos.gov/elections-voting/assets/2024%20Assets/2024CAAGRickWeilandabortionfinal.pdf (Aug. 24, 2022). SFLA does not include or mention the Amendment G pamphlet in its Statement of Undisputed Material Facts, motion for summary judgment, or attached exhibits. See Docs. 67, 68, 68-1.

Only in its response to Defendants' Motion for Summary Judgment does SFLA mention this pamphlet for the first time and argue, also for the first time, that it intends to produce similar pamphlets in the future, although SFLA does not itself call the pamphlet "express advocacy." See Doc. 76 at 3 ("Plaintiff has also distributed pamphlets asking readers to 'Vote "No"' on a specific amendment, which Defendants regard as express advocacy. Plaintiff intends to produce similar pamphlets in the future. Although Plaintiff intends these communications to advocate for the specific issues it cares about—abortion-related and pro-life issues—not to influence the outcomes of elections, Defendants believe such communications are subject to the statute." (citations omitted)). Defendants took no enforcement action regarding the pamphlet, and the existence of SDCL § 12-27-16 evidentially did not chill SFLA from issuing the pamphlet.

SFLA's Amended Complaint presents a First Amendment challenge to Defendants' ability to regulate SFLA's texts and mailers engaging in issue advocacy. The burden is on the plaintiff to establish standing at each phase of the litigation. See Carney v. Adams, 592 U.S. 53, 59–60 (2020). SFLA has neither relied on this pamphlet in its own argument for summary judgment, which was filed after the Defendants' motion and attachments, nor moved to amend or supplement its Amended Complaint in the approximate year between the 2024 election and Plaintiff's motion for summary judgment to base any part of the case on this pamphlet or its intent to distribute pamphlets of this kind in the future. Therefore, this Court will not address the Amendment G pamphlet in this Opinion and Order. See Singleton v. Ark. Hous. Auths. Prop. & Cas. Self-Insured Fund, Inc., 934 F.3d 830, 837 (8th Cir. 2019) ("[Although] the pleading requirements under the Federal Rules [of Civil Procedure] are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." (alterations in original) (citation omitted)); Young Am.'s Found. v. Kaler, 14 F.4th 879, 889 (8th Cir. 2021) (same).

Appellate Case: 26-1503    Page: 52    Date Filed: 06/15/2026 Entry ID: 5651118

Add. 50

committee." Id. § 12-27-16(1)(c). The disclosure statement requirement mandates those making expenditures subject to the disclaimer requirement "file an independent communication expenditure statement within forty-eight hours of the time that the communication is disseminated, broadcast, or otherwise published" with the South Dakota Secretary of State. Id. § 12-27-16(2). SFLA has not complied with these statutes when making its communications.

SFLA challenges both the disclaimer and disclosure statement requirements. The Amended Complaint argues that SDCL § 12-27-16 is facially overbroad in applying to SFLA's issue advocacy, Doc. 24 ¶¶ 56–62, the on-ad disclaimer requirement is a content-based rule that does not pass constitutional muster on its face or as applied to SFLA, id. ¶¶ 65–80, and the on-ad disclaimer requirement is facially void for vagueness, id. ¶¶ 82–92. SFLA seeks a declaratory judgment that SDCL §§ 12-27-16 and 12-27-1(11) are unconstitutional, an injunction prohibiting Defendants from enforcing SDCL § 12-27-16, and attorney's fees and costs. Doc. 24 ¶¶ a–f.

Defendants moved to dismiss, Doc. 22, and argued that SFLA lacks standing to bring the action, Doc. 23 at 16–23, and that, even if standing existed, the statute is constitutional, id. at 23–36. This Court granted the Defendants' motion to dismiss in part. Doc. 44. This Court dismissed the majority of SFLA's claims, finding two claims survived the motion to dismiss. Id. Defendants' motion to dismiss was denied "regarding the as-applied portion of Count II concerning whether SFLA receives a 'contribution' constitutionally subject to disclosure and the absence of 'off-ramps' for donors to avoid on-ad listing requirements." Id. at 44. In its motion to dismiss briefing, Defendants had raised that SFLA did not receive any "contributions" as defined in SDCL § 12-27-1(6) because the consideration must be made for an express advocacy purpose; therefore, Defendants argued, SFLA lacked standing. Id. at 12. This Court agreed that the challenged statute's subsections describe express advocacy, which this Court noted "SFLA disavows doing in

7

South Dakota." Id. at 13. However, this Court did not dismiss SFLA's as-applied challenge as it concluded that Defendants' standing argument "may have merit but requires evaluating 'the purpose' of the contributions to SFLA . . . [which] is better done on cross motions for summary judgment." Id. at 13.

Both parties now move for summary judgment on the remaining questions. Docs. 64, 67. In their motion, Defendants argue that SFLA lacks standing to challenge SDCL § 12-27-16 because the disclosure requirement only applies to express advocacy and SFLA is an entity that exclusively engages in issue advocacy. Doc. 65 at 1, 6–11. Alternatively, Defendants argue that the disclosure requirement survives exacting scrutiny and is therefore constitutional despite the lack of an off-ramp provision. Id. at 11–21. SFLA separately moves for summary judgment, but it does not address the standing issue. Doc. 67. Instead, SFLA argues that SDCL § 12-27-16 violates the First and Fourteenth Amendments, as applied to SFLA, because SDCL § 12-27-16 cannot survive exacting scrutiny. Id. Because SFLA has failed to set forth facts establishing an injury-in-fact to show standing to challenge the constitutionality of SDCL § 12-27-16, this Court grants Defendants' motion for summary judgment and dismisses the case without prejudice. Even if SFLA had established standing, SDCL § 12-27-16 survives exacting scrutiny and is therefore constitutional.

## II.    Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (citation omitted). There is a genuine issue of material fact if a

8

"reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007). When there are cross motions for summary judgment, each party's motion must be evaluated independently with facts taken in the light most favorable to the nonmoving party to determine whether there is any genuine issue of material fact. See Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983); Fed. Ins. v. Great Am. Ins., 893 F.3d 1098, 1102 (8th Cir. 2018); Rodriguez v. VanIperen, 736 F. Supp. 3d 699, 711 (D.S.D. 2024).

## III.    Analysis

As "federal courts are courts of limited jurisdiction," this Court first considers Defendants' challenge to SFLA's standing. United States v. Afremov, 611 F.3d 970, 975 (8th Cir. 2010). As explained below, SFLA has failed to set forth specific facts to meet its burden to establish an injury in fact conferring standing for prospective First Amendment relief. See Young Am.'s Found., 14 F.4th at 887–88; Animal Legal Def. Fund v. Reynolds, 89 F.4th 1071, 1077 (8th Cir. 2024).

### A. Standing

#### 1.  Standing Generally and Injury in Fact Requirement

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" Murthy v. Missouri, 603 U.S. 43, 56 (2024); see also Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013). Federal courts do not "operate as an open forum for citizens 'to

press general complaints about the way in which government goes about its business.'" FDA v. All. for Hippocratic Med., 602 U.S. 367, 379 (2024) (quoting Allen v. Wright, 468 U.S. 737, 760 (1984)). Courts implement this limit through different justiciability doctrines, including standing and ripeness. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006).

Broadly speaking, the standing inquiry concerns whether the plaintiff is the appropriate party to bring a particular suit. Raines v. Byrd, 521 U.S. 811, 818 (1997); Flast v. Cohen, 392 U.S. 83, 99–100 (1968). The three requirements for standing are (1) an injury in fact, (2) a causal connection between the injury and the challenged law, and (3) a likelihood that a favorable decision will redress the injury. All. for Hippocratic Med., 602 U.S. at 380; Animal Legal Def. Fund v. Vaught, 8 F.4th 714, 718 (8th Cir. 2021) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). Standing is jurisdictional, requiring a federal court to consider all standing defects, even those parties may overlook. See Young Am.'s Found., 14 F.4th at 887 (requiring the court raise the "threshold issue" of standing "sua sponte if need be" (cleaned up and citations omitted)).

To satisfy Article III standing, an injury in fact "must be concrete and particularized and actual or imminent, not conjectural or hypothetical." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (cleaned up and citation omitted). A "concrete" injury means "that it must be real and not abstract." All. for Hippocratic Med., 602 U.S. at 381. A "particularized" injury means that it "must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance." Id. (quoting Lujan, 504 U.S. at 560 n.1). "Moreover, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." Id. "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." Susan B. Anthony List, 573

10

U.S. at 158 (cleaned up and citation omitted); see also Minn. Chapter of Associated Builders & Contractors, Inc. v. Blissenbach, 155 F.4th 1015, 1020–21 (8th Cir. 2025) ("Because the [plaintiffs] allege specific conduct that the Act targets, and because state officials have not disavowed enforcing it, the [plaintiffs] have standing.").

In the First Amendment context, an injury may be too hypothetical or speculative to confer standing if the occurrence of proposed future conduct is uncertain. See Final Exit Network, Inc. v. Ellison, 370 F. Supp. 3d 995, 1010 (D. Minn. 2019) ("'Some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.'" (cleaned up) (quoting Lujan, 504 U.S. at 564)); Mo. Roundtable for Life v. Carnahan, 676 F.3d 665, 672 (8th Cir. 2012) ("A party cannot show an injury in fact by mere allegations of possible future injury." (internal quotations and citation omitted)). However, all prospective relief is not automatically too speculative in the First Amendment context because "[w]hen the alleged injury is a chill on constitutionally protected speech, the First Amendment gives a more 'lenient standing requirement' to pre-enforcement challenges." Animal Legal Def. Fund, 89 F.4th at 1077. The Eighth Circuit recognizes that

> [t]here are two types of injuries conferring standing for prospective First Amendment relief. The first occurs when a plaintiff alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder. The second occurs when a plaintiff self-censors.

Dakotans for Health v. Noem, 52 F.4th 381, 386 (8th Cir. 2022) (cleaned up and citations omitted). See also Animal Legal Def. Fund, 89 F.4th at 1077; Iowa Right to Life Comm., Inc. v. Tooker, 717 F.3d 576, 604 (8th Cir. 2013) (finding standing when "plaintiff alleges an intention to engage in a course of conduct that is clearly proscribed by statute" even when there is no "specific threat

11

Add. 55

of enforcement" (citation omitted)). "[W]hen a course of action is within the plain text of a statute, a 'credible threat of prosecution' exists." <u>Alexis Bailly Vineyard, Inc. v. Harrington</u>, 931 F.3d 774, 778 (8th Cir. 2019); <u>see also</u> <u>Kohls v. Ellison</u>, No. 25-1300, 2026 WL 350923, at *2 (8th Cir. Feb. 9, 2026) ("Kohls's videos, labeled as parodies, are not deep fakes under the statute, so he is not injured by any threat of enforcement.").

The Supreme Court of the United States has recognized that the "second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" <u>All. for Hippocratic Med.</u>, 602 U.S. at 380 (citation omitted). Causation requires a plaintiff to show an "injury likely was caused or likely will be caused by the defendant's conduct." <u>Id.</u> at 382. "[T]he causation requirement screens out plaintiffs who were not injured by the defendant's action." <u>Id.</u> at 383. For causation, "the plaintiff must show a predictable chain of events leading from the government action to the asserted injury—in other words, that the government action has caused or likely will cause injury in fact to the plaintiff." <u>Id.</u> at 385. "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements." <u>Id.</u> at 382. Where the defendant's action caused injury, redressability—the third element of standing—typically exists through injunctive action or an award of damages. <u>Id.</u> at 381.

A plaintiff bears the burden of establishing standing as of the time the lawsuit was brought and throughout the pendency of the case. <u>See</u> <u>Carney</u>, 592 U.S. at 59. "[S]tanding is not dispensed in gross," <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413, 431 (2021), but requires a plaintiff to "demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek," <u>Murthy</u>, 603 U.S. at 61 (cleaned up and citation omitted). "Because these requirements are 'an indispensable part of the plaintiff's case, each element must be supported in

Appellate Case: 26-1503    Page: 58    Date Filed: 06/15/2026 Entry ID: 5651118

Add. 56

the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation.[']" Young Am.'s Found., 14 F.4th at 887 (quoting Bernbeck v. Gale, 829 F.3d 643, 646 (8th Cir. 2016)).

"[A]t the summary judgment stage, [] a party can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts," Clapper, 568 U.S. at 412 (cleaned up and citation omitted), "which for purposes of the summary judgment motion will be taken to be true," to show there is no genuine dispute as to facts that attest its standing. Lujan, 504 U.S. at 561; Fed. R. Civ. P. 56(c). "Conversely, to defeat a defendant's motion for summary judgment on the same issue, the plaintiff must produce evidence showing the presence of a genuine issue regarding standing that would warrant resolution by trial." Minn. Chamber of Com. v. Choi, 765 F. Supp. 3d 821, 835 (D. Minn. 2025) (quoting Lugo v. City of Troy, 114 F.4th 80, 87–88 (2d Cir. 2024)). SFLA has faced no enforcement action for its activities and seeks forward-looking relief; SFLA thus must produce evidence showing the presence of a genuine issue regarding standing, that it faces an injury in fact, whether a credible threat of prosecution or actual self-censoring. Dakotans for Health, 52 F.4th at 386; Clapper, 568 U.S. at 412.

In its 2024 Opinion and Order Granting the Motion to Dismiss in Part, this Court noted that the absence of any enforcement action against SFLA, especially in light of the two recent Supreme Court standing decisions in Murthy and Alliance for Hippocratic Medicine, casts doubt on SFLA's assertion of standing. See Doc. 44 at 13. As of 2026, SFLA has not faced any enforcement action.[4] However, Defendants have not signed a stipulation for a permanent injunction against prosecution or formally disavowed any intention of enforcing the law against

---

[4] Neither parties' statement of undisputed material facts included evidence of an initiated or threatened enforcement action. See Docs. 73, 75.

13

SFLA by testimony or affidavit.[5]  Therefore, although South Dakota may not have had any present intention of enforcing its disclosure requirements against SFLA for its advocacy activities, "there is nothing that prevents the State from changing its mind," Vt. Right to Life Comm. v. Sorrell, 221 F.3d 376, 383 (2d Cir. 2000), so this Court will evaluate whether SFLA has established either of the two injuries-in-fact conferring standing for prospective First Amendment relief as outlined in Dakotans for Health.  See 52 F.4th at 386.  As Defendants have requested summary judgment on the standing issue, and SFLA has not raised the issue in its motion, the facts on standing must be viewed in the light most favorable to SFLA.

### 2.  Absence of Credible Threat of Prosecution

To establish a credible threat of prosecution at the summary judgment stage, SFLA "must set forth by affidavit or other evidence specific facts," Clapper, 568 U.S. at 412 (cleaned up and quoting Lujan, 504 U.S. at 561), "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder," Dakotans for Health, 52 F.4th at 386; see also Kohls, 2026 WL 350923, at *2.  SFLA has not established that it faces a credible threat of prosecution.  SFLA has only set forth specific facts detailing its intention to engage in issue advocacy, as well as its intention to solicit contributions to support its issue advocacy, but the challenged statute only mandates disclosure of the top five donors who have contributed to further an entity's express advocacy. See Dakotans for Health, 52 F.4th at 386; SDCL §§ 12-27-1(6), 12-27-16.

SDCL § 12-27-1(9), defines the phrase "expressly advocate" to mean communications that advocate for a particular election result by "using explicit words of advocacy" like "vote, re-elect,

---

[5] This Court refers the parties to its discussion of District of South Dakota and Eighth Circuit cases where the First Amendment violation claim was dismissed after the government defendant formally disavowed any intention of prosecution.  See Doc. 44 at 13–17 (collecting cases).

support, cast your ballot for, reject, and defeat." SDCL § 12-27-1(9)(a). A communication is also express advocacy under South Dakota statute if the communication is one that,

> If taken as a whole and with limited reference to external events, such as the proximity to the election, may only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidates or public office holders, or the placement of a ballot question on the ballot or the adoption or defeat of any ballot question because:
>
> (i)    The electoral portion of the communication is unmistakable, unambiguous, and suggestive of only one meaning; and
>
> (ii)   Reasonable minds could not differ as to whether it encourages actions to elect or defeat one or more clearly identified candidates or public office holders, or the placement of a ballot question on the ballot or the adoption or defeat of any ballot question or encourages some other kind of action[.]

§ 12-27-1(9)(b). This Court previously found that under SDCL § 12-27-1(9), SFLA's messaging that is the subject of the Amended Complaint does not qualify as express advocacy under South Dakota law. Doc. 44 at 10.

As previously discussed, the challenged statute, SDCL § 12-27-16, requiring on-ad disclaimers and disclosure statements does not mention express advocacy, distinguish between types of advocacy, or limit the statute's application only to those communications that "expressly advocate" for a candidate or ballot issue. See SDCL § 12-27-16. SDCL § 12-27-16 specifically requires the disclosure of an entity's "'Top Five Contributors,' including a listing of the names of the five persons making the largest *contributions* in aggregate to the entity during the twelve months preceding that communication." SDCL § 12-27-16(1)(c) (emphasis added). However, to qualify as a "contribution," as defined in SDCL § 12-27-1(6), the consideration must be made for the purpose of influencing:

> (a) The nomination, election, or re-election of any person to public office; or
> (b) The placement of a ballot question on the ballot or the adoption or defeat of any ballot question submitted.

15

SDCL § 12-27-1(6). As discussed previously, these subsections describe express advocacy, which SFLA disavows doing in South Dakota. See Doc. 44 at 13.

The law governing disclosure requirements does not itself differentiate between express and issue advocacy. See Citizens United v. FEC, 558 U.S. 310, 368–69 (2010) (rejecting Citizens United's contention "that the disclosure requirements must be limited to speech that is the functional equivalent of express advocacy"). The South Dakota statute section at issue, however, does and applies just to contributions for the purpose of sponsoring express advocacy. See SDCL §§ 12-27-16(1)(c), 12-27-1(6). Therefore, to determine whether SFLA has standing to bring an as-applied challenge to SDCL § 12-27-16 requires evaluating "the purpose" of the contributions to SFLA. SFLA's standing to bring this as-applied challenge depends at the summary judgment stage on whether it has set forth specific facts demonstrating its solicitation of contributions for the purpose of express advocacy, the failure to disclose would be prohibited by SDCL § 12-27-16.

In its opposition to Defendants' motion for summary judgment, SFLA argues it has standing because the purpose of its advocacy is subject to the state's subjective determination, and because the state could conclude its advocacy is a type of express advocacy, it suffers an injury-in-fact. Doc. 76 at 1–3. Referring to its exhibits and declaration attached to its Motion for Summary Judgment, Doc. 67, SFLA proposes a double-layered hypothetical: "The state *may conclude* that encouraging recipients to urge candidates and legislators to sign a pro-life pledge and support pro-life legislation implies that those recipients should vote for candidates that do so and against those that do not . . . . therefore, the state *may attempt* to enforce the statute against Plaintiff." Doc. 76 at 2 (emphasis added).

In its Statements of Undisputed Material Facts and attachments, SFLA included a declaration from its treasurer that SFLA "engages in issue advocacy" and works to "achieve issue-

16

specific results." Doc. 68-1 ¶ 3. SFLA's treasurer averred that, "SFLA limits its voter communications to candidates' positions on abortion related issues and to encourage activism for pro-life policies; it does not tell voters which candidate to vote for or against." Doc. 68-1 ¶ 4; Doc. 73 ¶ 9. SFLA's treasurer described voter communications such as text messages and mailers and attaches copies of each to the declaration. See Doc. 68-1 ¶¶ 6–8, 5–13. SFLA's treasurer declared that "SFLA's future expenditures . . . will mention candidates and elected officials." Id. ¶ 9; see also Doc. 73 ¶ 10 ("The SFLA has engaged in communications concerning candidates and office holders in South Dakota . . . and will continue to make similar communications costing more than $100 in South Dakota in the future."). Neither SFLA's treasurer's declaration, SFLA's Statement of Undisputed Material Facts, nor attached texts and mailers mention ballot initiatives—all concern SFLA's views on the pro-life bona fides of candidates and elected officials. Within the specific texts and mailers SFLA submitted in support of its motion for summary judgment, SFLA describes candidates and elected officials' stances on reproductive health policies, but SFLA does not expressly say for whom to vote. See Doc. 68-1 at 5–13.[6] SFLA has objected to certain "facts" within Defendants' Statement of Materials Facts discussing their texts and mailers as forms of issue advocacy by arguing that classifying the materials as express or issue advocacy is "a legal conclusion, not a statement of fact." See Doc. 75 ¶¶ 9, 11. But SFLA has resubmitted the same materials analyzed when deciding the motion to dismiss, leaving no justification for this Court to reach any different legal conclusion than that SFLA's messaging in its texts and mailers at issue

---

[6] In its Response, SFLA also cites Exhibit 9 to Defendants' Motion for Summary Judgment, a pamphlet stating "Vote No." Doc. 76 at 3. SFLA asserts that it "intends to produce similar pamphlets in the future," and "[a]lthough Plaintiff intends these communications to advocate for the specific issues it cares about—abortion-related and pro-life issues—not to influence the outcomes of elections, Defendants believe such communications are subject to the statute." Id. For the reasons explained in Footnote 3, supra, this argument is not properly raised on summary judgment.

17

in the Amended Complaint does not qualify as express advocacy. See Doc. 44 at 9–10 (finding that SFLA's messaging, through its mailings and texts, "does not qualify as express advocacy under South Dakota law" when ruling on the motion to dismiss claims in the Amended Complaint).

Although SFLA in fact "accepts donations that are earmarked by donors for certain uses," SFLA set forth no facts to support that it solicits contributions *for the purpose* of express advocacy, a crucial component of its ability to show standing to challenge this South Dakota statute. See Doc. 73 ¶¶ 15–17; Doc. 68-1 ¶¶ 10–12. SFLA's attachments and facts reiterate and reinforce its earlier arguments that it engages in and intends to engage in issue advocacy that avoids "tell[ing] voters which candidate to vote for or against" in its future "communications concerning candidates and office holders in South Dakota." Doc. 68-1 ¶ 4–5; Doc. 73 ¶ 9–10; see also Doc. 77 at 4–5 (listing SFLA's allegations in its Amended Complaint and its representations in earlier filings on its engagement in issue advocacy). Instead, SFLA merely objects to Defendants' statements that its solicitation messaging does not expressly advocate for a particular candidate or ballot measure as defined in SDCL § 12-27-1(9) as a legal conclusion and not a statement of fact. See Doc. 75 ¶¶ 12–13. The solicitation messaging at issue in the Amended Complaint, which itself is undisputed by the parties, see id., is not express advocacy because the messaging encourages recipients to donate to "cover the cost of an entire Lobby Day" and to "send[] young pro-lifers right to your politicians' office to speak to them on your behalf," and state that SFLA is "committed to abolishing abortion in America." Doc. 66-6; 66-8.

Even viewing facts in the light most favorable toward standing, SFLA has failed to set forth specific facts establishing that contributions are made to SFLA for the purpose of engaging in express advocacy within the purview of SDCL § 12-27-1(6). See Clapper, 568 U.S. at 412 (requiring "specific facts" to avoid summary judgment on the standing issue). If SFLA does not

Appellate Case: 26-1503    Page: 64    Date Filed: 06/15/2026 Entry ID: 5651118

Add. 62

solicit contributions for the purposes of express advocacy, as defined by SDCL § 12-27-1(6), it does not face a credible threat of prosecution for failing to disclose the top five donors of those contributions, made to support express advocacy, under SDCL § 12-27-16 because its activity falls outside of the regulation of the statute. See Minn. Citizens Concerned for Life, Inc. v. Kelley, 427 F.3d 1106, 1110 (8th Cir. 2005) (affirming district court's finding on summary judgment that organization lacked standing to challenge Minnesota statute because the statute subsections did not apply to groups engaged in "pure issue advocacy," which the plaintiff organization claimed to do). Cf. Animal Legal Def. Fund, 89 F.4th at 1079 (concluding plaintiffs lacked standing to challenge provision that chilled conduct they had not shown a desire to engage in)[7]; Young Am.'s Found., 14 F.4th at 888 ("Accordingly, a plaintiff does not have standing to challenge a policy that was not applied to it."); Iowa Right To Life Comm., Inc., 717 F.3d at 585 ("IRTL claims its 'major purpose is not and will never be the nomination or election of candidates.' It does not face a realistic danger that Iowa will deem it a PAC or permanent organization."). Because SFLA bears the burden to establish standing throughout the case, Carney, 592 U.S. at 59, and it has failed to establish "specific facts" constituting an intention to engage in a course of conduct arguably

---

[7] The Eighth Circuit denied standing at the pleadings stage for one count in Animal Legal Defense Fund because the plaintiffs had not shown a desire to engage in the activity proscribed by the challenged statute:

> As to Plaintiffs' standing to challenge the Place Provision, we need not decide whether Plaintiffs have a First Amendment right to place cameras on trespassed property because Plaintiffs have not pled any facts suggesting they have historically placed cameras or plan to place cameras on trespassed property. Plaintiffs only plead they *use* cameras, not that they *place* cameras. Plaintiffs cannot say the Place Provision chills them from engaging in their desired conduct because they have shown no desire to place cameras. Because the Place Provision does not injure Plaintiffs' speech, they lack Article III standing to challenge it.

89 F.4th at 1079.

affected with a constitutional interest, but proscribed by South Dakota statutes, or a credible threat of prosecution thereunder, SFLA does not have standing to bring an as-applied challenge based on this prong of the <u>Dakotans for Health</u> standing test, 52 F.4th at 386. <u>Clapper</u>, 568 U.S. at 412 (quoting <u>Lujan</u>, 504 U.S. at 561).

### 3. Absence of Self-Censorship

As this Court previously noted, SFLA has not alleged that it will stop engaging in its advocacy because of the statute and, therefore, has not alleged that its own speech is chilled. <u>See</u> <u>Dakotans for Health</u>, 52 F.4th at 386 (noting "[s]elf-censoring occurs when a plaintiff alleges it would like to engage in arguably protected speech, but that it is chilled from doing so by the existence of the statute" (cleaned up and citation omitted)); Doc. 44 at 19–20. However, this Court declined to dismiss the Amended Complaint in full because enough was alleged to suggest that SFLA may be able to challenge the statute's chilling effect on its donors, <u>see</u> <u>Ams. for Prosperity</u>, 594 U.S. at 615–19 (allowing the organization to bring an action on the basis of chilled speech when the statute discouraged the organization's donors from engaging in First Amendment activity). After all, SFLA had alleged South Dakota's disclosure regime threatens chilling the association rights of its donors because donors may fear various forms of reprisals or retaliation for its association with SFLA. Doc. 24 ¶¶ 6, 40; Doc. 44 at 19–20. This Court reasoned that SFLA might have standing to challenge the top-five-contributors disclaimer requirement of SDCL § 12-27-16 for chilling its donors' protected rights as long as it meets "the burden of proof, <i>i.e.</i>, with the manner and degree of evidence required" at the particular stage of the litigation. Doc. 44 at 19–20; <u>Young Am.'s Found.</u>, 14 F.4th at 887 (quoting <u>Bernbeck</u>, 829 F.3d at 646); <u>Ams. for</u> <u>Prosperity</u>, 594 U.S. at 616. However, SFLA has failed to advance facts, even taken as true, of

20

any chilling effect on donors, and therefore, it cannot rely on self-censorship to establish an injury in fact, and by extension, standing.

SFLA nonetheless argues that the statute chills the speech of its donors, and therefore, it suffers an injury in fact. Doc. 76 at 3–5. Citing cases such as NAACP v. Alabama ex rel. Patterson, 357 U.S. 449 (1958), SFLA argues, "When SFLA's donors are forcibly outed, their freedom of association is restricted—in other words, their speech [is] chilled." Id. at 3. It argues this risk is heightened in the twenty-first century because of the "increased ability for people to gather sensitive information about someone and post it publicly." Id. at 3–4 (citing Ams. for Prosperity, 594 U.S. at 617).

The Supreme Court has "recognized that compelled disclosures may impose an unconstitutional burden on the freedom to associate in support of a particular cause." McConnell v. FEC, 540 U.S. 93, 197–98 (2003), (overruled on other grounds by Citizens United, 558 U.S. 310). A disclosure statute "would be unconstitutional as applied to an organization if there were a reasonable probability that the group's members would face threats, harassment, or reprisals if their names were disclosed." Citizens United, 558 U.S. at 370 (citing McConnell, 540 U.S. at 198). For example, in NAACP v. Alabama ex rel. Patterson, the Court found that the First Amendment prohibited Alabama from compelling the disclosure of NAACP's membership lists in part because, during the civil rights movement, NAACP "[had] made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members [had] exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." 357 U.S. 449, 462 (1958). In more recent years, although the Supreme Court has acknowledged how the Internet transforms the ability of the average person to discover more information about a disclosed member or donor, it still relies upon evidence

21

introduced by the challenger party when finding a "disclosure requirement 'creates an unnecessary risk of chilling' in violation of the First Amendment." Ams. for Prosperity, 594 U.S. at 616–17 ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence."). See also Citizens United, 558 U.S. at 370–71 (rejecting plaintiff's assertion that disclosure requirements could chill donations to an organization by exposing donors to retaliation, noting that plaintiff "has offered no evidence that its members may face similar threats or reprisals," and finding the disclosure requirements constitutional given that "there has been no showing that, as applied in this case, these requirements would impose a chill on speech and expression").

However, a challenger's representation that its organization stands for a publicly disfavored view is insufficient to establish an injury in fact without more. The Supreme Court has rejected the contention that "disclosure requirements could not constitutionally be applied to minor parties and independent candidates because the Government's interest in obtaining information from such parties was minimal and the danger of infringing their rights substantial" after finding "no evidence that any party had been exposed to economic reprisals or physical threats as a result of the compelled disclosures." McConnell, 540 U.S. at 198 (comparing Buckley v. Valeo, 424 U.S. 1, 69–70 (1976) with NAACP, 37 U.S. 449).

SFLA has set forth minimal facts about its donors generally, and none that show "a reasonable probability that the group's members would face threats, harassment, or reprisals if their names were disclosed." Citizens United, 558 U.S. at 370 (citing McConnell, 540 U.S. at 198). SFLA has only submitted facts that establish (1) it "accepts donations that are earmarked by donors for certain uses," (2) "[a]s a rule, SFLA does not disclose the names of its donors unless required to by law, because many of SFLA's donors find this anonymity important, or even vital,

22

to their giving," and (3) "[i]f SFLA were required to disclose its top five donors in a given year, even if those donors have made donations earmarked . . ., donors may reduce the amount of their donations or stop donating entirely." Doc. 73 ¶¶ 15–17 (citing Doc. 68-1 ¶¶ 10–12). Even taking the third statement in the light most favorable to SFLA, that donors "may reduce" their future donations, SFLA has only set forth one hypothetical impact of disclosure that is uncorroborated by any additional evidence, let alone evidence showing a reasonable probability that the possible reduction in donations would *be caused* by threats, harassment, or reprisals stemming from South Dakota's disclosure requirements. The absence of any evidence of donor retaliation is further highlighted by Plaintiff's responses to Defendants' interrogatories, which Defendants attached to their Statement of Undisputed Facts. Doc. 66-2. When asked for the factual basis of or documents relating to its allegations concerning how South Dakota's disclosure requirements threaten to chill the association rights of its donors, SFLA referred Defendants back to the allegations in the Amended Complaint, indicated that SFLA was not aware of any documents responsive to the Defendants' request, and responded, "Investigation continues." See id. at 7, 10–11 (listing SFLA's Response to Interrogatory No. 6, Request No. 10, Request No. 11).

SFLA's remaining arguments likewise do not establish standing. See Doc. 76 at 4–5. SFLA argues that disclosure regimes that only indirectly chill First Amendment speech will fail exacting scrutiny if not narrowly tailored to a compelling government interest. Id. at 4. But SFLA must first establish standing to bring this challenge by showing one of the two injuries detailed in Dakotans for Health. See 52 F.4th at 386. SFLA concludes its argument on its donors' chilled speech injury by citing Citizens United, namely, "[a] law that 'chills speech can and must be invalidated where its facial invalidity has been demonstrated.'" Doc. 76 at 4–5 (citing 558 U.S. at

23

Appellate Case: 26-1503    Page: 69    Date Filed: 06/15/2026 Entry ID: 5651118

Add. 67

312).  This Court already has dismissed SFLA's facial challenge to SDCL § 12-27-16, and therefore, this is not applicable to the case at hand.  See Doc. 44.

Although SFLA has alleged South Dakota's disclosure regime threatens chilling the association rights of its donors because donors may fear various forms of reprisals or retaliation for its association with SFLA, Doc. 24 ¶¶ 6, 40, mere allegations are insufficient to establish an injury-in-fact at the summary judgment stage.  Clapper, 568 U.S. at 412 (cleaned up and quoting Lujan, 504 U.S. at 561) ("[A]t the summary judgment stage, [] a party can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts.").  Cf. Kohls, 2026 WL 350923, at *3 ("Kohls did not present evidence that others were deterred from sharing the video or that he lost income from any such reduction in sharing.  A plaintiff cannot establish standing based merely on an unsupported assumption that some users of YouTube or X might decline to share a video because of the Minnesota statute.").  SFLA "cannot establish standing 'simply by claiming that [it] experienced a "chilling effect" that resulted from a governmental policy that does not regulate, constrain, or compel any action on [its] part.'"  Iowa Right to Life Comm., Inc., 717 F.3d at 587 (alteration in original) (quoting Clapper, 568 U.S. at 419).  As SFLA bears the burden to establish standing throughout the case, Carney, 592 U.S. at 59, and it has failed to establish "specific facts" that the top-five-contributors disclaimer requirement of SDCL § 12-27-16 chills its donors' protected rights, SFLA does not have standing to bring an as-applied challenge based on this second possible injury-in-fact of the Dakotans for Health test, 52 F.4th at 386 ("The second occurs when a plaintiff self-censors.").  Clapper, 568 U.S. at 412 (quoting Lujan, 504 U.S. at 561).

SFLA has produced no facts, even viewing the record in the light most favorable to SFLA, to establish either of the "two types of injuries conferring standing for prospective First

24

Appellate Case: 26-1503   Page: 70   Date Filed: 06/15/2026 Entry ID: 5651118

Amendment relief." Dakotans for Health, 52 F.4th at 386. SFLA thus has failed to establish an injury-in-fact, and therefore does not have standing to bring this as-applied challenge. All. for Hippocratic Med., 602 U.S. at 380; Animal Legal Def. Fund, 8 F.4th at 718 (citing Lujan, 504 U.S. at 560–61); Lujan, 504 U.S. at 566 ("Standing is not 'an ingenious academic exercise in the conceivable,' but as we have said requires, at the summary judgment stage, a factual showing of perceptible harm." (quoting United States v. Students Challenging Regul. Agency Procs. (SCRAP), 412 U.S. 669, 688 (1973)). This Court accordingly dismisses SFLA's remaining claims without prejudice. See Young Am.'s Found., 14 F.4th at 891 (dismissing without prejudice after finding appellants lacked standing).

## B. Constitutionality of SDCL § 12-27-16

Even if SFLA had standing, this Court would still grant summary judgment on the remaining claims because SDCL § 12-27-16 survives exacting scrutiny and is therefore constitutional.

### 1. Defendants' Motion for Summary Judgment

SFLA has brought an as-applied challenge to SDCL § 12-27-16 seeking the issuance of a permanent injunction enjoining Defendants from enforcing the on-ad disclaimer requirement against it. Doc. 24 ¶¶ 80–81. This Court dismissed all but SFLA's as-applied challenge to SDCL § 12-27-16 due to the absence of a so-called "off ramp" provision. Doc. 44 at 44.[8] In addition to their lack of standing argument, Defendants alternatively move for summary judgment arguing that an off-ramp provision is not necessary for SDCL § 12-27-16 to survive exacting scrutiny

---

[8] Some on-ad donor disclaimer statutes offer off ramps for donors who wish to avoid having their names disclosed by allowing them to donate less than the triggering value or by opting to direct their donations not to apply to electioneering communications. See Gaspee Project v. Mederos, 13 F.4th 79, 92 (1st Cir. 2021). South Dakota's statute lacks any such so-called "off ramp."

because of South Dakota's important interest in an informed electorate and because the provisions of SDCL § 12-27-16 substantially relate to that purpose and are narrowly tailored. Doc. 65 at 11–21. SFLA opposes the Defendants' motion for summary judgment and argues that the lack of an off-ramp provision means that the on-ad disclosure rule is not narrowly tailored, and therefore, SDCL § 12-27-16 cannot survive exacting scrutiny. Doc. 76 at 5–9.

### a. As-Applied Challenge Standard

"An as-applied challenge asks the reviewing court to declare the disputed statute unconstitutional on the facts of the particular case." United States v. Perez, 145 F.4th 800, 804 (8th Cir. 2025) (cleaned up and citation omitted). See also Minn. Chamber of Com., 765 F. Supp. 3d at 845–46 (citing United States v. Veasley, 98 F.4th 906, 909 (8th Cir. 2024)). "The challenge is not 'that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right.'" United States v. Lehman, 8 F.4th 754, 757 (8th Cir. 2021) (quoting United States v. Adams, 914 F.3d 602, 605 (8th Cir. 2019)). "If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." Phelps-Roper v. Ricketts, 867 F.3d 883, 896 (8th Cir. 2017) (quoting Republican Party of Minn., Third Cong. Dist. v. Klobuchar, 381 F.3d 785, 790 (8th Cir. 2004)). A party "generally cannot prevail on an as-applied challenge without showing that the law has in fact been . . . unconstitutionally applied to" it. McCullen v. Coakley, 573 U.S. 464, 485 n.4 (2014). An as-applied challenge to a disclosure law "would be available if a group could show a reasonable probability that disclosure of its contributors' names will subject them to threats,

26

harassment, or reprisals from either Government officials or private parties." Citizens United, 558 U.S. at 367 (cleaned up and citation omitted).

In Count II of its Amended Complaint, SFLA does not specifically allege facts concerning how the statute has been unconstitutionally applied to it but alleges an absence of narrow tailoring in part because South Dakota requires nonprofits to disclose their donors in advocacy communications but "does not require on-ad donor disclaimer by candidates, political action committees, political parties, or ballot measure committees." See Doc. 24 ¶ 75 (describing the scope of the statute), ¶ 80 ("South Dakota's law violates the First Amendment, incorporated against South Dakota through the Fourteenth Amendment, on its face and as applied to the communication of Students for Life Action."). But in its opposition to Defendants' Motion for Summary Judgment, SFLA does not "ask[] the reviewing court to declare the disputed statute unconstitutional on the facts of the particular case," Perez, 145 F.4th at 804, but continues to argue generally about the constitutionally of a statute in line with its earlier, now-dismissed, facial challenge, see Doc. 76 at 5–9 (citing no facts and making no arguments about how the statute is unconstitutional *as-applied* to SFLA). This may be in part because Defendants have not enforced this law against SFLA for its issue advocacy, a fact which has affected SFLA's ability to show standing as discussed above. However, even if SFLA had been able to show that it has standing to bring this as-applied challenge, viewing the evidence in the light most favorable to SFLA, summary judgment is proper as the Defendants have shown there is no genuine dispute as to any material fact and they are entitled to judgment on the constitutionality of SDCL § 12-27-16 as a

27

matter of law. True, 612 F.3d at 679 (citation omitted); Fed. R. Civ. P. 56(a); see also Doc. 44 (explaining grounds for prior dismissal).

### b. Exacting Scrutiny Standard

As noted in the last Opinion and Order, courts routinely uphold disclosure laws like the one challenged in this case when they satisfy exacting scrutiny. See Citizens United, 558 U.S. at 366–67 (applying exacting scrutiny to disclaimer and disclosure requirements). Under exacting scrutiny, the state has the burden to show the restriction "employs means closely drawn [to advancing the state interest] to avoid unnecessary abridgement of First Amendment freedoms." Jones v. Jegley, 947 F.3d 1100, 1105 (8th Cir. 2020) (cleaned up and citation omitted). In other words, the state must show that there is "a substantial relation between the disclosure requirement and a sufficiently important governmental interest." Ams. for Prosperity, 594 U.S. at 607 (quoting Doe v. Reed, 561 U.S. 186, 196 (2010)). "While exacting scrutiny does not require that disclosure regimes be the least restrictive means of achieving their ends, it does require that they be narrowly tailored to the government's asserted interest." Id. at 608. This means the court will "require a fit that is not necessarily perfect, but reasonable." Id. at 609 (quoting McCutcheon v. FEC, 572 U.S. 185, 218 (2014)).

### 1) Important Informational Interest

The Supreme Court has recognized such an important interest includes "providing the electorate with information" about the sources of spending behind political speech. Citizens United, 558 U.S. at 367 (quoting Buckley, 424 U.S. at 66). When concurring in Doe v. Reed, Justice Scalia wrote, "Our Nation's longstanding traditions of legislating and voting in public refute the claim that the First Amendment accords a right to anonymity in the performance of an

28

act with governmental effect." 561 U.S. 186, 221 (2010) (Scalia, J., concurring).[9] Because groups can finance political election-related speech "while hiding behind dubious and misleading names," disclaimers and disclosures help citizens "make informed choices in the political marketplace." Citizens United, 558 U.S. at 367 (cleaned up and citations omitted). Such disclosures also deter corruption and expose large contributors and expenditures to the light of day. Buckley, 424 U.S. at 67.

Government interests in "provid[ing] the electorate with information as to where political campaign money comes from and how it is spent by the candidate," "deter[ring] actual corruption and avoid[ing] the appearance of corruption by exposing large contributions and expenditures to the light of publicity," and "gathering the data necessary to detect violations of the contribution limitations" can be sufficiently important to justify disclosure requirements. Buckley, 424 U.S. at 66–67; see also Citizens United, 558 U.S. at 369 (determining the "information interest alone is sufficient to justify application of" the challenged disclaimer and disclosure requirements); Gaspee Project, 13 F.4th at 88 (finding a state's "interest in an informed electorate is sufficiently important to satisfy the first imperative of exacting scrutiny"). SFLA has conceded that South Dakota has a sufficiently important government interest in informing its voters of who is financing election-

---

[9] Justice Scalia believed the public nature of lawmaking to be critical to democracy:

> There are laws against threats and intimidation; and harsh criticism, short of unlawful action, is a price our people have traditionally been willing to pay for self-governance. Requiring people to stand up in public for their political acts fosters civic courage, without which democracy is doomed. For my part, I do not look forward to a society which, thanks to the Supreme Court, campaigns anonymously (McIntyre) and even exercises the direct democracy of initiative and referendum hidden from public scrutiny and protected from the accountability of criticism. This does not resemble the Home of the Brave.

Doe, 561 U.S. at 228 (Scalia, J., concurring).

29

related speech. Doc. 76 at 5; see also Doc. 67 at 9. Therefore, this Court will focus its analysis on whether the provisions of SDCL § 12-27-16 substantially relate to that interest in an informed electorate and whether they are narrowly tailored.

### 2) Substantial Relation to an Important Government Interest

Exacting scrutiny "requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' interest." Citizens United, 558 U.S. at 366–67 (citing Buckley, 424 U.S. at 64). "To withstand this scrutiny, 'the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights.'" Doe, 561 U.S. at 196 (quoting Davis v. FEC, 554 U.S. 724, 744 (2008)). "In refining its articulation of exacting scrutiny, the Americans for Prosperity Court heightened this requirement, emphasizing that '[i]n the First Amendment context, fit matters.'" Gaspee Project, 13 F.4th at 85 (quoting 594 U.S. at 609). As noted above, exacting scrutiny "require[s] a fit that is not necessarily perfect, but reasonable," and "[a] substantial relation is necessary but not sufficient to assure that the government adequately considers the potential for First Amendment harms before requiring" donor disclosure. Ams. for Prosperity, 594 U.S. at 609 (quoting McCutcheon, 572 U.S. at 218).

In Citizens United, the Supreme Court found that the burden imposed by the on-ad disclaimer required by the Bipartisan Campaign Reform Act of 2002 was substantially related to the important government interest in providing information to the electorate because the disclaimers directly provide the ads' audience with information and "'insure that the voters are fully informed' about the person or group who is speaking." Citizens United, 558 U.S. at 368 (citing Buckley, 424 U.S. at 76). In addition, "[a]t the very least, the disclaimers avoid confusion by making clear that the ads are not funded by a candidate or political party." Id. Following Citizens United, other courts applying this standard in challenges to disclosure requirements have

30

similarly found that the prompt provision of information to voters about the source of funding for political advertisements substantially relates to the sufficiently important interest of an informed electorate and are not unduly burdensome. See Smith, 614 F. Supp. 3d at 685–86 ("While voters have access to donor information through the required disclosures to the APOC, the on-ad placement of some of that information provides a far more efficient and effective form of disclosure . . . . Given the modest nature of the burden imposed by the on-ad top-three-donor disclaimer requirement and the fact that exacting scrutiny does not require that the government use the least restrictive means possible, there is a sufficient relationship between the government's informational interest and the on-ad top-three-donor disclaimer requirement to withstand constitutional scrutiny."); Rio Grande Found., 727 F. Supp. 3d at 1006–09 (noting that the statute was substantially related to New Mexico's important informational interest in part because it "target[s] ads that are 'published and disseminated to the relevant electorate in New Mexico' . . . [and] thus focuses on disclosures on those funders of expenditures designed to influence the relevant electorate" (quoting N.M. Stat. Ann. § 1-19-26(N)(3)(c))); No on E v. Chiu, 85 F.4th 493, 505–06 (9th Cir. 2023) (discussing how "committees often obscure their actual donors through misleading and even deceptive committee names" and concluding "[b]ecause the interest in learning the source of funding for a political advertisement extends past the entity that is directly responsible, the challenged ordinance is substantially related to the governmental interest in informing the electorate"); Gaspee Project, 13 F.4th at 85–86 (reviewing how the "compelling interest in identifying the speakers behind politically oriented messages . . . is especially true in the age of new media, given the proliferation of speakers in the marketplace of ideas" and concluding "consequently, reasonable disclosure regimes enable[] the electorate to make informed

31

decisions and give proper weight to different speakers and messages." (cleaned up and citations omitted)).

Defendants assert that "South Dakota's important interest in an informed electorate is substantially related to the requirements of SDCL [§] 12-27-16" because "on-ad disclosure laws are an effective method of informing the public by notifying the voters who is truly responsible for a message." Doc. 65 at 20 (citing Ctr. for Ariz. Pol'y Inc. v. Ariz. Sec'y of State, 560 P.3d 923, 935 (Ariz. Ct. App. 2024); Smith v. Helzer, 95 F.4th 1207, 1212, 1216 (9th Cir. 2024); Gaspee Project, 13 F.4th at 83, 88, 95–96; No on E, 85 F.4th at 506). SFLA does not oppose Defendants' argument on substantial relation, instead focusing on exacting scrutiny's narrowly tailored prong. See Doc. 76 at 5–12 (arguing that the on-ad disclosure rule is not narrowly tailored and omitting any argument on substantial relation); see also Doc. 67 at 9–10 (same). SFLA has not produced any evidence to support an argument that the law is unduly burdensome upon it or its donors. See Smith, 614 F. Supp. 3d at 679 (highlighting how Plaintiffs had "fail[ed] to provide evidence . . . to support their assertion that compliance has been burdensome or onerous" before concluding that the donor disclosure requirement substantially related to Alaska's important informational interest). In line with other courts discussing this factor, this Court finds that South Dakota's important interest in an informed electorate is substantially related to an on-ad disclosure requirement because requiring the donor information to appear on the ad is an effective method of informing the public by notifying the voters instantaneously who is responsible for a message. See Smith, 614 F. Supp. 3d at 685–86; Gaspee Project, 13 F.4th at 85–86; No on E, 85 F.4th at 506.

### 3) Narrowly Tailored

"[A] substantial relation to an important interest is not enough to save a disclosure regime that is insufficiently tailored." Ams. for Prosperity, 594 U.S. at 609. However, exacting scrutiny

32

does not require "the least restrictive means of achieving that end." Id. at 610. Defendants assert that SDCL § 12-27-16 is narrowly tailored to South Dakota's informational interest "[r]egardless of an off-ramp provision" because similar state statutes have been upheld under exacting scrutiny. Doc. 65 at 20–21 (citing Smith, 95 F.4th at 1221; No on E, 85 F.4th at 510; Del. Strong Families v. Att'y Gen. of Del., 793 F.3d 304, 310 (3d Cir. 2015)). Plaintiffs counter that "[t]he volume of statutes that Defendants present with some sort of minimum triggering value and/or opt-[out] provision speaks to the extreme nature of South Dakota's law." Doc. 76 at 9. However, SFLA only raises the following challenges: SFLA argues that the on-ad disclosure requirement in SDCL § 12-27-16 is not narrowly tailored because (1) "it contains no triggering value, allowing the disclosure to apply to any monetary value";[10] (2) there is no opt-out process, or "off-ramp" provision, "meaning that a donor's information could appear on an advertisement that he or she does not even agree with"; and (3) there are no time limitations on when disclosure is required. Id. SFLA does not support these arguments with specific facts demonstrating how this statute unconstitutionally affects its donors. See Doc. 76.

This Court already has dismissed SFLA's facial challenges to SDCL § 12-27-16 concerning whether the statute was narrowly tailored because of its absence of temporal limitations, low spending thresholds, disclosure statement requirements, and provisions regarding public office holders and issue advocacy. See Doc. 44 at 27.[11]  This Court explained that "SFLA

---

[10] In its Amended Complaint and its arguments on Defendants' Motion to Dismiss, SFLA previously focused on raising a facial overbreadth claim for the statute's $100 spending threshold. Now, SFLA has raised what appears to be a facial challenge to the absence of a minimum donation to trigger disclosure. SDCL § 12-27-16 only requires the disclosure of the entity's top five donors, but that requirement is not tied to any minimum amount donated.

[11] In its argument on the statute's absence of temporal limitations, SFLA raised that the window of time during which speech is subject to South Dakota's disclosure regime is longer than those upheld in other states. Doc. 44 at 31. However, this Court concluded that "nowhere in case law

33

ha[d] not demonstrated it is entitled to relief on its facial overbreadth claim for the statute's $100 spending threshold," and "to the extent SFLA present[ed] an as-applied challenge by alleging that its communications cost slightly more than $100, this challenge [was also] dismissed." Id. at 33. Given that this Court has already considered and rejected SFLA's facial challenge concerning time limitations within the statute, the remaining analysis will focus on whether SDCL § 12-27-16 is narrowly tailored despite the lack of a minimum donation threshold or an off-ramp provision.

Relatively few cases address election disclosure law concerning the constitutionality of on-ad disclaimers. See, e.g., Citizens United, 558 U.S. at 366–71; Smith, 614 F. Supp. 3d at 685–86, aff'd, 95 F.4th 1207; San Franciscans Supporting Prop B v. Chiu, 604 F. Supp. 3d 903, 905, 911 (N.D. Cal. 2022), aff'd sub nom. No on E, San Franciscans Opposing the Affordable Hous. Prod. Act v. Chiu, 62 F.4th 529 (9th Cir. 2023), and aff'd sub nom. No on E, 85 F.4th 493. In Smith, the court concluded that Alaska's statute was narrowly tailored in requiring that political communications include a sponsor disclaimer stating who paid for the communication, the names and locations of the person or organization's top three contributors, and whether that communication was paid for by an outside-funded entity. 614 F. Supp. 3d at 675, 685–86. The challenged Alaska statute did not contain an off-ramp provision, and although other parts of the campaign finance regulations contained minimum contribution amounts to trigger reporting obligations, nothing in the on-ad disclaimer requirement imposed similar minimum donor

---

is there a set threshold of time before the election where disclaimers and disclosures can be required, and this Court is ruling on a facial challenge only since SFLA's communications came very close in time to a primary election and thus SFLA does not make this claim as a separate as-applied challenge." Id.

34

contribution amounts before the donor could be included on the ad as a "top three donor." See Alaska Stat. § 15.13.090.[12]

In No on E, the district court found that a requirement for "committees in San Francisco [to] include on their advertisements a disclaimer disclosing their secondary contributors" was narrowly tailored and rejected the two alternatives proposed by plaintiffs because Citizens United did not imply that "an election-related disclaimer passes exacting scrutiny only if no hypothetical alternative disclosure regime is conceivable," and "Plaintiffs provide no plausible reason to think that either of their proposals would succeed at informing voters." San Franciscans Supporting Prop B, 604 F. Supp. 3d at 905, 911. San Francisco's on-ad disclaimer ordinance required the ad to identify "the committee's top three donors of $5,000," and "[i]f one of those contributors is itself a committee, the ad must also disclose that committee's top two donors of $5,000 or more in the last five months." Id. at 906 (citing SF Code § 1.161(a)(1)). Not only were the names of the contributors required on the ads, "[i]n all ads other than audio ads, the names of both primary and secondary contributors must be followed by the amount of money they contributed" in 14-point font. Id.

---

[12] Alaska Statute § 15.13.090 contains an internal reference to Alaska Statute § 15.13.400, which defines an "outside-funded entity" as

> an entity that makes one or more independent expenditures in one or more candidate elections and that, during the previous 12-month period, received more than 50 percent of its aggregate contributions from true sources, or their equivalents, who at the time of the contribution, resided or had their principal place of business outside of Alaska.

Alaska Stat. § 15.13.400(15). This definition also does not include minimum donation amounts to qualify as a "top three donor."

Appellate Case: 26-1503    Page: 81    Date Filed: 06/15/2026 Entry ID: 5651118

Add. 79

The Ninth Circuit affirmed that San Francisco's on-ad disclaimer was narrowly tailored in part because "an on-advertisement disclaimer is a more effective method of informing voters than a disclosure that voters must seek out." No on E, 85 F.4th at 509–10 (citation omitted). The Ninth Circuit highlighted, "Given the realities of voters' decision-making processes amidst a 'cacophony' of electoral communications, the district court was within its discretion to conclude that the secondary-contributor requirement has a scope in proportion to the City's objective." Id. (citation omitted). The Ninth Circuit then rejected the plaintiffs' argument that the law could not be narrowly tailored because it did not include any off-ramp provision. Id. at 510. The Ninth Circuit noted that other courts had concluded that disclosure laws were narrowly tailored in applying to donations earmarked for electioneering, but had not "suggested that, or had occasion to consider whether, a law fails narrow tailoring unless it is limited to the disclosure of earmarked contributions." Id. The Ninth Circuit further noted that the San Francisco ordinance was narrowly tailored because it required listing only the top donors to entities engaged in election-related activities. See id. ("By donating to a primarily formed committee, a secondary committee necessarily is making an affirmative choice to engage in election-related activity."); see also id. at 506 ("[A]dopting Plaintiffs' position could call into question the logic underlying decisions that uphold disclosure and disclaimer requirements as applied to primary donors . . . [as they] emphasize that the laws . . . further the governmental interest in revealing the source of campaign funding, not ensuring that every donor agrees with every aspect of the message.").

Like the plaintiffs in No on E, SFLA points to decisions where courts include a statute's off-ramp provision in support of their findings on narrow tailoring, Doc. 76 at 5. But precedent does not require a statute to contain an off-ramp provision for it to be narrowly tailored. See id. at 5–12. Although SFLA is correct that Wyoming Gun Owners v. Gray concluded that Wyoming's

Add. 80

campaign finance law was not narrowly tailored, that statute is distinguishable as it dealt with a more extensive and burdensome requirement that "organizations that spend over $1,000 [] issue an 'electioneering communication' to notify the state and file a statement identifying itself and the donors whose contributions made the communication possible;" that statute contained constitutionally vague language as opposed to the more limited, on-ad disclaimer requirement at issue in this case that this Court has already concluded is not void for vagueness. See 83 F.4th 1224, 1230, 1239 (10th Cir. 2023); Doc. 44. Similarly, the other case cited by SFLA from the District of Maine dealt with the constitutionality of a separate, much broader requirement that a "'person, party committee, or [PAC] that makes any independent expenditure in excess of $250 during any one candidate's election' disclose 'the *total* contributions from *each* contributor' regardless of the amount of the contribution" where the plaintiff had "aver[red] that multiple of its smaller dollar amount contributors have indicated that they will not contribute as they have done in the past if their identities will be publicly revealed." Dinner Table Action v. Schneider, No. 1:24-CV-00430, 2025 WL 1939946, at *5 (D. Me. July 15, 2025) (emphasis added); see also Doc. 76 at 7 (noting that Maine's on-ad disclaimer rule has not been challenged).

Although the Alaska statute in Smith and San Franscisco ordinance in No on E differ from South Dakota's statute in various aspects, both of those laws' requirements are arguably broader than South Dakota's requirements. Alaska's law does not have a minimum donor threshold or off-ramp provision and requires both names and locations of donors as well as a general on-ad disclaimer that the majority of entity's contributions, beyond the top three donors, came from outside of Alaska. Although San Francisco's ordinance does have a minimum donor amount set at $5,000, it further requires both primary and secondary contributors as well as the amounts contributed of the listed donors in 14-point font.

Add. 81

South Dakota's statute, where it applies, only requires listing the names of top five contributors during the last twelve months preceding the communication and a notation indicating that the "communication is independently funded and not made in consultation with any candidate, public office holder, or political committee." SDCL § 12-27-16(c). This requirement is only triggered if the person or entity makes a payment or promise of payment more than one hundred dollars for an independent communication expenditure. Id. § 12-27-16(1). Unlike the Alaska statute or San Francisco ordinance, whose laws were found to be narrowly tailored without an off-ramp provision, South Dakota does not require the publication of information on donors' locations or individual amounts contributed. As the Ninth Circuit aptly put it, "[c]ase law and scholarly research support the proposition that, because of its instant accessibility, an on-advertisement disclaimer is a more effective method of informing voters than a disclosure that voters must seek out." No on E, 85 F.4th at 509. SDCL § 12-27-16 is narrowly tailored despite the lack of an off-ramp provision or minimum donor donation amount.

Defendants have demonstrated a substantial relation between SDCL § 12-27-16's disclosure burdens and an important government interest and that SDCL § 12-27-16 is narrowly tailored to that informational interest. Defendants have shown on the record construed in favor of SFLA that SDCL § 12-27-16 survives exacting scrutiny. The record lacks evidence that there is a reasonable probability that the compelled disclosure of the top five donors to SFLA will subject them to threats, harassment, or reprisals from either Government officials or private parties. See supra Section III.A.1.b. Therefore, even if SFLA had standing to bring this as-applied challenge, Defendants remain entitled to summary judgment on the remaining claims before it.

Appellate Case: 26-1503   Page: 84   Date Filed: 06/15/2026 Entry ID: 5651118   Add. 82

### 2. Plaintiff's Motion for Summary Judgment

On SFLA's motion for summary judgment, this Court must construe all facts and make reasonable inferences in the light most favorable to the Defendants as the non-moving party. Although SFLA does not raise arguments on standing in its motion, this Court has concluded above that SFLA lacks standing to bring this challenge. See supra Section III.A. However, even if SFLA had established standing, this Court would deny SFLA's motion for summary judgment. SFLA argues that SDCL § 12-27-16(1)(c)'s disclosure requirements violate the First and Fourteenth Amendment as applied to SFLA because the statute provides no "off-ramp" for donors to avoid disclosure. Doc. 67 at 6.

As discussed above, to survive "exacting scrutiny," the government must show "a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." Citizens United, 558 U.S. at 366–67 (citation omitted). "While exacting scrutiny does not require that disclosure regimes be the least restrictive means of achieving their ends, it does require that they be narrowly tailored to the government's asserted interest." Ams. for Prosperity, 594 U.S. at 608. This means the court will "require a fit that is not necessarily perfect, but reasonable." Id. at 609 (quoting McCutcheon, 572 U.S. at 218). The Defendants have satisfied that burden when viewing the factual record favorably to SFLA. The Defendants likewise shown, based on the undisputed facts and inferences in their favor, that South Dakota has a sufficiently important governmental interest to justify SDCL § 12-27-16 surviving an as-applied challenge. Identifying donors of an organization who make independent communication expenditures informs voters of the source of the communication and helps them to gauge any bias, motives, and validity within the messages. See Citizens United, 558 U.S. at 371 ("[D]isclosure permits citizens and shareholders to react to the speech of corporate entities in a proper way. This

39

transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages."). In addition, as discussed above, the statute's requirements substantially relate to that interest, and the statute is narrowly tailored. SFLA failed to produce evidence to establish standing, or, in the alternative, to support its as-applied challenge to SDCL § 12-27-16. Therefore, SFLA is not entitled to summary judgment on the remaining claims in the Amended Complaint. SFLA's failure to prevail on the merits justifies denial of its request for a permanent injunction. Doc. 67 at 16–17.

## IV.    Conclusion

For the foregoing reasons, it is hereby

ORDERED that Defendants' Motion for Summary Judgment, Doc. 64, is granted. It is further

ORDERED that Plaintiff's Motion for Summary Judgment, Doc. 67, is denied. It is further

ORDERED that the remaining claims regarding the as-applied portion of Count II concerning whether SFLA receives a "contribution" constitutionally subject to disclosure and the absence of "off-ramps" for donors to avoid on-ad listing requirements on certain messages are dismissed for lack of standing without prejudice.

DATED this 17th day of February, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

40

Appellate Case: 26-1503    Page: 86    Date Filed: 06/15/2026 Entry ID: 5651118

Add. 84

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| STUDENTS FOR LIFE ACTION,<br><br>Plaintiff,<br><br>vs.<br><br>MARTY JACKLEY, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA; AND MONAE JOHNSON, IN HER OFFICIAL CAPACITY AS SOUTH DAKOTA SECRETARY OF STATE;<br><br>Defendants. | 3:23-CV-03010-RAL<br><br>JUDGMENT OF DISMISSAL |

Based on the Opinion and Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment and the reasons contained therein, it is hereby

ORDERED, ADJUDGED AND DECREED that this case is dismissed for lack of standing under Rules 54 and 58 of the Rules of Civil Procedure with judgment against Plaintiff and for the Defendants hereby entering.

DATED this 17th day of February, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

Add. 85