No. 26-1503

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

STUDENTS FOR LIFE-ACTION,

*Plaintiff-Appellant,*

v.

MARTY JACKLEY, *in his official capacity as Attorney General,* MONAE JOHNSON, *in her official capacity as Secretary of State,*

*Defendants-Appellees*

Appeal from the United States District Court
for the District of South Dakota
No. 3:2023-cv-03010

**Appellant's Reply Brief**

Jeffrey Schwab
Timothy Kilcullen
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
tkilcullen@ljc.org

*Counsel for Appellant*

Appellate Case: 26-1503    Page: 1    Date Filed: 08/07/2026 Entry ID: 5670140

# Table of Contents

Table of Authorities.................................................................... iii

Introduction ...................................................................................1

Argument ......................................................................................2

I.    SFLA has standing to bring its First Amendment claims against Section 12-27-16 .......................................................2

    A.    Section 12-27-16 applies to SFLA's issue advocacy, creating a credible threat of prosecution ...................................3

    B.    The First Amendment chill on SFLA's donors confers standing in its as-applied challenge.............................................8

    C.    SFLA's valid as-applied claim does not defeat standing for its overbreadth claim.................................................................9

II.    Section 12-27-16's on-ad donor disclaimer requirement is facially unconstitutional...........................................................11

    A.    The Supreme Court has definitively established that exacting scrutiny requires narrow tailoring ...........................11

    B.    Section 12-27-16 is not narrowly tailored to the government's informational interest........................................12

        1.    Section 12-27-16 requires on-ad disclaimer of donors when the less restrictive alternative of including those donors in the statement filed with the State is available.......13

        2.    Section 12-27-16 is not narrowly tailored because it provides no donor off-ramp ...................................................17

        3.    The $100 threshold is not narrowly tailored .........................18

        4.    Section 12-27-16 is not narrowly tailored because its reach extends beyond election speech and lacks any pre-election window...............................................................20

i

Appellate Case: 26-1503    Page: 2    Date Filed: 08/07/2026 Entry ID: 5670140

5. The 48-hour filing requirement confirms rather than cures the statute's lack of fit ..................................................22

III. Section 12-27-16 is unconstitutional as applied to SFLA ...........24

   A. Section 12-27-16 reaches SFLA's issue advocacy communications...............................................................24

   B. SFLA and its donors face particular harm due to their speech on the controversial issue of abortion...........................25

   C. The geographic mismatch between SFLA's national operations and South Dakota's disclosure requirements demonstrates Section 12-27-16 is not narrowly tailored .........28

   D. Section 12-27-16 is not narrowly tailored as it pertains to SFLA's speech ...................................................................29

IV. Section 12-27-16 is unconstitutionally overbroad ......................30

V. Section 12-27-16 is unconstitutionally vague ...........................32

   A. Section 12-27-16's definition of "concerning" does not provide fair notice of what speech is regulated........................33

   B. This Court should follow the precedent of its sister circuit......34

Conclusion.............................................................................35

Certificate of Compliance...........................................................37

Appellate Case: 26-1503   Page: 3   Date Filed: 08/07/2026 Entry ID: 5670140

# Table of Authorities

**Cases**

*Ams. for Prosperity Found. v. Bonta,*
594 U.S. 595 (2021) ....................................9–14, 16, 19–20, 23, 25–27

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett,*
564 U.S. 721 (2011) ...............................................................................19

*Buckley v. Valeo,*
424 U.S. 1 (1976) .............................................................................19, 22

*Citizens United v. FEC,*
558 U.S. 310 (2010) ............................................... 12, 19, 28, 31, 32

*Dakotans for Health v. Noem,*
52 F.4th 381 (8th Cir. 2022).................................................................2

*Dinner Table Action v. Schneider,*
2025 U.S. Dist. LEXIS 134052 (D. Me. July 15, 2025) .....................18

*Dobbs v. Jackson Women's Health Org.,*
597 U.S. 215 (2022) ...........................................................................9, 26

*FEC v. Ted Cruz for Senate,*
596 U.S. 289 (2022) ...............................................................................29

*First Choice Women's Res. Ctrs., Inc. v. Davenport,*
146 S. Ct. 1114 (2026) ......................................................................9, 26

*Gaspee Project v. Mederos,*
13 F.4th 79 (1st Cir. 2021) ............................................. 16, 18, 21, 28

*Grayned v. City of Rockford,*
408 U.S. 104 (1972) ...............................................................................34

*Havlak v. Vill. of Twin Oaks,*
864 F.3d 905 (8th Cir. 2017).............................................................9, 10

*Iowa Right to Life Comm., Inc. v. Tooker,*
717 F.3d 576 (8th Cir. 2013)............................................................12, 23

*Jones v. Jegley,*
947 F.3d 1100 (8th Cir. 2020)..........................................................13–14

*Lyng v. Int'l Union,*
485 U.S. 360 (1988) ...............................................................................25

Appellate Case: 26-1503    Page: 4    Date Filed: 08/07/2026 Entry ID: 5670140

*McIntyre v. Ohio Elections Comm'n,*
514 U.S. 334 (1995) ........................................................................15

*Minn. Citizens Concerned for Life, Inc. v. Swanson,*
692 F.3d 864 (8th Cir. 2012).......................................................16–17

*Minn. State Ethical Practices Bd. v. NRA,*
761 F.2d 509 (8th Cir. 1985).............................................................19

*Missourians for Fiscal Accountability v. Klahr,*
830 F.3d 789 (8th Cir. 2016)............................................................2–3

*Musser v. Mapes,*
718 F.3d 996 (8th Cir. 2013)..............................................................33

*NAACP v. Ala. ex. rel. Patterson,*
357 U.S. 449 (1958) .......................................................... 8, 25, 26, 27

*Nat'l Org. for Marriage v. McKee,*
649 F.3d 34 (1st Cir. 2011)...........................................................19–20

*No on E v. Chiu,*
85 F.4th 493 (9th Cir. 2023)..................................................16–18, 21

*Rio Grande Found. v. Oliver,*
154 F.4th 1213 (10th Cir. 2025) ........................................................18

*Sabri v. United States,*
541 U.S. 600 (2004) ...........................................................................32

*Smith v. Helzer,*
95 F.4th 1207 (9th Cir. 2024) ................................................ 17, 18, 21

*SpeechNow.org v. FEC,*
599 F.3d 686 (D.C. Cir. 2010)............................................................12

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) .............................................................................7

*Thornburgh v. Am. Coll. of Obstetricians & Gynecologists,*
476 U.S. 747 (1986) ...........................................................................25

*United States v. Hansen,*
599 U.S. 762 (2023) .....................................................................31, 32

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
455 U.S. 489 (1982) .....................................................................33, 35

*Wyoming Gun Owners v. Gray,*

iv

83 F.4th 1224 (10th Cir. 2023) ................................................. 18, 34, 35

**Constitutional Authority**

U.S. CONST. amend. I ....................................................... 1–2, 8, 11, 25–27

**Statutory & Regulatory Authority**

26 U.S.C. § 6104 .........................................................................27

Cal. Gov't Code § 84501 ...............................................................16

R.I. Gen. Laws § 17-25-3...............................................................29

SDCL § 12-27-1 ....................................................... 3, 4, 6, 20, 21

SDCL § 12-27-15 ............................................................... 15, 16

SDCL § 12-27-16 ....................... 1–8, 10–13, 15–17, 19–20, 22–24, 28–33

SDCL § 22-6-2 ...........................................................32, 35

**Other Authorities**

Antonin Scalia & Bryan A. Garner, Reading Law:
The Interpretation of Legal Texts (2012) ..................................................5

Appellate Case: 26-1503     Page: 6     Date Filed: 08/07/2026 Entry ID: 5670140

**Introduction**

Defendants accuse Plaintiff Students for Life Action (SFLA) of "want[ing] to influence South Dakota public policy from the dark." Appellees' Br. i. The sunlight they invoke already shines: South Dakota's disclosure filings are public regardless of how this Court rules. Section 12-27-16 does not turn on more light; it conscripts SFLA to carry that light door to door, embedding its donors' names into every advertisement, year-round under threat of criminal penalty.

Defendants' desire for sunlight alone isn't enough to overcome Section 12-27-16's First Amendment violations. The statute is neither substantially related to any legitimate informational interest nor narrowly tailored. Its "concerning" trigger sweeps in virtually all year-round civic discourse—independently overbroad and void for vagueness. And as applied to SFLA—a pro-life organization whose donors face documented threats of violence—compelling the public identification of those donors chills their First Amendment right of association. Defendants' only answer is that the statute does not reach SFLA's issue advocacy at all. But the statute says "concerning," not "expressly

1

advocating," and that argument collapses the standing inquiry into the merits, a move the Supreme Court has repeatedly condemned.

Section 12-27-16 is unconstitutional on its face, as applied to SFLA, overbroad, and void for vagueness. This Court should reverse.

**Argument**

**I. SFLA has standing to bring its First Amendment claims against Section 12-27-16.**

SFLA wishes to engage in political speech, yet Section 12-27-16 criminalizes that speech unless SFLA identifies its donors on every covered communication, files a statement within 48 hours, and carries the State's mandatory donor disclaimer. Defendants contend that the statute's speech restrictions do not reach issue advocacy and therefore SFLA suffers no injury. But the law's text says otherwise.

This Court recognizes two types of injuries that confer standing for prospective First Amendment relief: (1) "when a plaintiff alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder," and (2) "when a plaintiff self-censors." *Dakotans for Health v. Noem*, 52 F.4th 381, 386 (8th Cir. 2022) (quoting *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d

2

789, 794 (8th Cir. 2016)). SFLA satisfies both. Section 12-27-16's plain text creates a credible threat of prosecution, establishing injury under the first prong. And the chilling effect the statute imposes on SFLA's donors' associational rights is itself a present, concrete injury under the second prong—independent of any threat of prosecution and how this Court resolves the statutory scope dispute.

### A. Section 12-27-16 applies to SFLA's issue advocacy, creating a credible threat of prosecution.

Section 12-27-16 imposes disclosure requirements on a person or entity that spends more than $100 on "an independent communication expenditure that concerns a candidate, public office holder, ballot question, or political party." SDCL § 12-27-1(11) defines "[i]ndependent communication expenditure" as "an expenditure . . . made by a person, entity, or political committee for a communication *concerning* a candidate or a ballot question [and is not coordinated]." (emphasis added).

Section 12-27-16's requirements include: (1) appending to the communication a disclaimer identifying the speaker, its address, and that the communication is "independently funded and not made in consultation with any candidate, public office holder, or political

3

committee"; (2) if the speaker is an entity, listing the names of the five persons making the largest contributions in aggregate to the entity during the preceding 12 months, SDCL § 12-27-16(1)(c); and (3) filing an independent communication expenditure statement within 48 hours of dissemination, SDCL § 12-27-16(2).

SFLA's issue advocacy—text messages about candidates' abortion-related voting records—is unquestionably a communication "concerning" a candidate.

Defendants assert that because Section 12-27-16(1)(c) uses the term "contributions"—defined in SDCL § 12-27-1(6) as donations "made for the purpose of influencing" an election—that the entire statute is limited to entities that receive such donations. Appellees' Br. 18–19. Defendants say that SFLA's donors do not make "contributions" and therefore "Appellant's issue advocacy does not fall within the purview of the statute" at all. *Id.* at 17.

But only one of Section 12-27-16's requirements—the five largest contributors listing in Section 12-27-16(1)(c)—is defined by reference to the statutory term "contribution." The remaining requirements—the disclaimer identifying the speaker and its address, the "independently

4

funded" statement, and the 48-hour independent communication expenditure statement required by Section 12-27-16(2)—are triggered solely by making an "independent communication expenditure" which is defined as a communication *concerning* a candidate or a ballot question.

Defendants cannot explain why the term "contributions" should limit the application of the other requirements. Under the negative-implication canon, *expressio unius*, the expression of a term in one part of a statute implies its exclusion from the parts where it is absent. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107–11 (2012). SFLA's communications plainly concern candidates, and each $100 or more communication triggers the identification, address, filing, and compelled-speech requirements regardless of whether any donor's gift qualifies as a "contribution." Those obligations alone constitute a cognizable, concrete injury sufficient to confer standing.

Even as to Section 12-27-16(1)(c), Defendants' argument is structurally incoherent. The "independent communication expenditure" definition—which uses "concerning"—governs whether the statute reaches an organization's speech at all. The "contribution" definition—

5

which uses "for the purpose of influencing"—governs only which specific donors must be named under Section 12-27-16(1)(c) once the statute applies.[1] Defendants collapse these two distinct inquiries into one, importing the narrow "contribution" definition to override the broad "independent communication expenditure" definition. But an organization can make independent communication expenditures "concerning" a candidate without any of its donors having donated "for the purpose of influencing" an election; the two definitions operate at different levels, and neither controls the other.

Defendants' interpretation is further undermined by their assertion that the "contribution" and "expressly advocate" definitions are "synonymous." Appellees' Br. 19–20. A "contribution" is a payment "made for the purpose of influencing" an election—a standard which turns on the donor's intent. "Expressly advocate" describes a

---

[1] This assumes the legislature's differential use of "concerning" and "for the purpose of influencing" was intentional—an assumption the statute's internal inconsistencies do not compel. Section 12-27-16(1)(c) covers communications concerning a "public office holder" and a "political party," yet SDCL § 12-27-1(11)'s definition of "independent communication expenditure" omits both. Either way, Defendants lose: if the differential drafting is intentional, *expressio unius* applies and their argument fails; if it reflects careless drafting, the statute's uncertain scope bolsters SFLA's vagueness claim.

6

"communication" that "has no other reasonable meaning" or "may only be interpreted by a reasonable person as" advocacy for or against a candidate—an objective standard focused on the communication itself, not the speaker's intent. Moreover, the legislature could have used the defined term "expressly advocate"—it did so elsewhere in the statute—yet deliberately chose "concerning" in Section 12-27-16(1), (2), and (3). That choice is controlling. Defendants offer no explanation for it.

Both the district court's standing ruling and Defendants' parallel "contribution" argument, *see* Appellees' Br. at 16–28, commit the same error: deriving a standing conclusion from a merits determination about the statute's scope. The Supreme Court has repeatedly held that standing requires only that a plaintiff intend to engage in conduct "arguably proscribed" by the statute and face a credible threat of prosecution—not that the plaintiff prove the statute actually and definitively applies to its conduct. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 163–64 (2014). Whether Section 12-27-16 covers SFLA's issue advocacy is a merits question. SFLA intends to engage in future communications concerning candidates and office holders in South Dakota that will cost more than $100. App. 107; R. Doc. 82, at 17.

7

Appellate Case: 26-1503    Page: 13    Date Filed: 08/07/2026 Entry ID: 5670140

That conduct is "arguably proscribed" by Section 12-27-16's plain text, and nothing more is required to establish standing.

**B.      The First Amendment chill on SFLA's donors confers standing in its as-applied challenge.**

The compelled donor disclosure requirement independently injures SFLA by chilling its donors' associational rights.

"Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *NAACP v. Ala. ex. rel. Patterson*, 357 U.S. 449, 462 (1958). A documented chilling effect on that associational privacy is itself a present, concrete injury sufficient to confer standing—independent of any threat of prosecution. Where an organization submits evidence that disclosure of its donors would expose them to threats, harassment, or reprisals, that chilling effect satisfies the injury-in-fact requirement without requiring the organization to await actual prosecution. *See id.* at 462. The Supreme Court has recognized that compelling a pro-life organization to reveal its supporters inevitably discourages people from associating with groups engaged in protected First Amendment advocacy and encourages groups to cease or modify protected advocacy

8

the government disfavors. *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1125 (2026). The evidence in this record establishes exactly that injury.

That injury is particularly acute here. The Supreme Court has recognized that abortion is one of the most "bitterly divisive" issues of "the past half century." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 292 (2022). The record documents "unprecedented levels of threats, vandalism and acts of destruction" targeting pro-life groups since mid-2022. App. 13; R. Doc. 24, at ¶ 47. In particular, a staffer for Texas Right to Life, an organization with a similar structure and mission to itself, received "numerous death threats" after his home address was circulated on the internet. *Id.* ¶ 48.

SFLA donors face a documented threat of retaliation that independently confers standing.

### C. SFLA's valid as-applied claim does not defeat standing for its overbreadth claim.

Defendants, citing *Havlak v. Vill. of Twin Oaks*, 864 F.3d 905 (8th Cir. 2017), assert that SFLA's as-applied challenge must rest on a different injury than its facial overbreadth claim. *See* Appellees' Br. 24–25. But *Americans for Prosperity Foundation v. Bonta* has overruled

9

this holding, striking down a compelled donor disclosure scheme on facial overbreadth grounds despite an as-applied challenge the Court described as the "same across the board." 594 U.S. 595, 611 (2021); *see also id.* at 646 (Sotomayor, J., dissenting). *Havlak* cannot survive that holding, and Defendants cite no post-*Bonta* authority to the contrary.

Even on its own terms, *Havlak* does not help Defendants because SFLA's facial and as-applied injuries are different in kind. SFLA's facial overbreadth injury is the statute's sweeping application of its "concerning" definition to issue advocacy by all speakers regardless of who is speaking. SFLA's as-applied injury is narrower and particularized: the documented threat of violence against pro-life organizations and their donors. App. 13; R. Doc. 24, at ¶ 47. *Havlak*, properly applied, requires nothing more than that distinction.

SFLA has standing on two independent grounds: the credible threat of prosecution created by Section 12-27-16's plain text, and the concrete chilling effect its compelled donor disclosure requirement imposes on SFLA's donors, either of which is sufficient. Defendants have defeated neither.

10

## II. Section 12-27-16's on-ad donor disclaimer requirement is facially unconstitutional.

Amicus Campaign Legal Center asserts that SFLA "concedes" that exacting, not strict scrutiny applies to this case. Campaign Legal Ctr. Amicus Br. 10. That is incorrect. SFLA has consistently stated that strict scrutiny is the proper standard—because (1) the disclaimer requirements effectively foreclose short-form spoken and text-message ads; (2) the statute is content based; and (3) political speech is at the core of what the First Amendment is designed to protect; *see* Appellant's Br. 12–16. But even under exacting scrutiny the statute cannot survive. *See* Appellant's Br. 15–16. It lacks an off-ramp, sets a far-too-low threshold, burdens core political speech with a lengthy compelled donor disclaimer, and imposes severe criminal penalties.

### A. The Supreme Court has established that exacting scrutiny requires narrow tailoring.

The Supreme Court held in *Bonta* that "[w]here exacting scrutiny applies, the challenged requirement must be narrowly tailored to the interest it promotes." 594 U.S. 595, 609–10 (2021). Disclaimer laws like Section 12-27-16 must therefore be narrowly tailored.

Defendants assert that "this Court has previously held that statutes like SDCL § 12-27-16 need not meet the narrow tailoring prong of

11

exacting scrutiny." Appellees' Br. 33 (citing *Iowa Right to Life Comm., Inc. v. Tooker*, 717 F.3d 576 (8th Cir. 2013)). *Bonta* supersedes *Iowa Right to Life*. Defendants must therefore demonstrate that Section 12-27-16 is narrowly tailored. They have not done so.

**B.     Section 12-27-16 is not narrowly tailored to the government's informational interest.**

Defendants assert that Section 12-27-16 serves an informational interest: allowing the public to know who is speaking about a candidate shortly before an election and providing the electorate with information about the sources of election-related spending.[2] Appellees' Br. 31. Even assuming this interest is substantial, Section 12-27-16 fails exacting scrutiny because it is not narrowly tailored.

---

[2] Defendants also assert interests in deterring corruption and detecting violations of contribution limits. Appellees' Br. 32. But neither interest applies to independent expenditures. The Supreme Court has held that "independent expenditures do not give rise to corruption or the appearance of corruption." *Freedom Club PAC*, 564 U.S. at 751 (cleaned up) (quoting *Citizens United v. FEC*, 558 U.S. 310, 357 (2010)). And contribution limits to groups making only independent expenditures are unconstitutional. *SpeechNow.org v. FEC*, 599 F.3d 686, 695–96 (D.C. Cir. 2010).

Appellate Case: 26-1503     Page: 18     Date Filed: 08/07/2026 Entry ID: 5670140

### 1. Section 12-27-16 requires on-ad disclaimer of donors when the less restrictive alternative of including those donors in the statement filed with the State is available.

Section 12-27-16's "Top Five Contributors" requirement is not narrowly tailored to serve the government's informational interest. That interest does not require embedding donor names in the communication itself. The state could achieve the same disclosure goal through the less restrictive means of requiring donor names in the independent communication expenditure statement—a permanent public record already mandated by SDCL § 12-27-16(2)–(3)—rather than commandeering the communication itself to carry that information. *See* Appellant's Br. 20–22. That alternative imposes a fraction of the burden on speech while fully serving the informational interest.

The government must "demonstrate its need" for disclosure "in light of any less intrusive alternatives." *Bonta*, 594 U.S. at 613. Defendants made no evidentiary showing that it is necessary to require donor names in the communication itself rather than in the publicly available filing statement. *See Jones v. Jegley*, 947 F.3d 1100, 1105–06 (8th Cir.

13

Appellate Case: 26-1503     Page: 19     Date Filed: 08/07/2026 Entry ID: 5670140

2020) (rejecting campaign-finance restriction where government failed to support its justification with evidence).

In fact, a public filing serves that interest more effectively than the on-ad requirement. Donor names spoken once in a radio or television ad are heard or seen fleetingly and forgotten; a public filing is permanent, searchable, and accessible to any voter who wants the information at any time.

Defendants counter that on-ad disclosure serves a unique "instant accessibility" interest that off-ad reporting cannot replicate, arguing that voters should not have to seek out a separate filing to learn who funds a communication. Appellees' Br. 35–36. Defendants' recharacterization of a more convenient, yet intrusive, means of disclosure as a *distinct* interest is precisely what *Bonta*'s narrow tailoring requirement forecloses. But the constitutional question is not whether on-ad disclosure serves the informational interest more effectively than a filed statement; it is whether the additional speech burden is justified by a need that off-ad reporting cannot meet. *Bonta*, 594 U.S. at 613. "The simple interest in providing voters with additional relevant information does not justify a state requirement that a writer

14

make statements or disclosures she would otherwise omit." *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 348 (1995).

Defendants' assertion that these on-ad disclaimer requirements are vital and disclosure of donors on a publicly filed statement would not suffice is undermined by South Dakota's own statutory scheme: candidates and political committees that coordinate directly with candidates are not required to include the on-ad donor disclaimers. *See* SDCL §§ 12-27-15, 16(1).

Nor does the "can't wait" rationale hold up against the statute's own terms. Under Section 12-27-16(2), the independent communication expenditure statement must be filed within 48 hours of the time the communication is "disseminated, broadcast, or otherwise published." Political advertisements run repeatedly over days and weeks. A voter who encounters the ad almost certainly will have a publicly available filed statement already waiting—and at the most, the filing would be available only 48 hours from when that voter encounters the ad. And if the "can't wait" rationale justified on-ad donor naming, one would expect it to apply most forcefully to the ads of candidates and political committees that directly coordinate with candidates. Yet South Dakota

15

law does not require candidates and non-independent political committees to make such on-ad donor disclaimers. *See* SDCL §§ 12-27-15, 16(1).

The cases Defendants cite do not supply the evidentiary showing *Bonta* requires: Neither *No on E v. Chiu*, 85 F.4th 493 (9th Cir. 2023), nor *Gaspee Project v. Mederos*, 13 F.4th 79 (1st Cir. 2021), required the government to demonstrate, with evidence, that off-ad reporting is *insufficient* to serve the informational interest. That is precisely what *Bonta* requires. *No on E* and *Gaspee Project* both involved statutory schemes much less restrictive than Section 12-27-16. The Rhode Island statute upheld in *Gaspee Project* included explicit off-ramps allowing donors to avoid disclosure. *See* 13 F.4th at 89. And the on-ad donor disclaimer upheld in *No on E* required the committee to name its three highest cumulative contributions of $5,000 or more.[3] 85 F.4th at 498. This Court is not bound by either decision. It is bound by *Minnesota Citizens Concerned for Life v. Swanson*, which held that an independent

---

[3] The Ninth Circuit also notes California's state disclaimer law, which sets a contributor floor of $50,000—500 times larger than South Dakota's $100 threshold. *No on E*, 85 F.4th at 498; Cal. Gov't Code § 84501(c)(1).

16

expenditure law "almost certainly failed" exacting scrutiny because the state could "accomplish any disclosure-related interests through less problematic measures." 692 F.3d 864, 876 (8th Cir. 2012).

### 2. Section 12-27-16 is not narrowly tailored because it provides no donor off-ramp.

Section 12-27-16 names an organization's five largest general-fund donors on every covered communication, with no mechanism to opt out, segregate funds, or earmark contributions away from electoral expenditures. A donor has no way to avoid being publicly associated with South Dakota political speech they never chose to support. And because the statute targets general-fund donors rather than those who actually funded the communication, it fails on its own informational terms: the names compelled aren't necessarily those who financed the speech at issue.

In response, Defendants rely on two Ninth Circuit cases, *Smith v. Helzer*, 95 F.4th 1207 (9th Cir. 2024), and *No on E. See* Appellees' Br. 14–15. But both involved far higher spending floors: $2,000 in *Smith* and $5,000 in *No on E. Smith*, 95 F.4th at 1211; *No on E*, 85 F.4th at 498. And, despite Defendants' claim that "the Ninth Circuit upheld" the statute in *Smith*, Appellees' Br. 14, the *Smith* court explicitly said that

17

Appellate Case: 26-1503    Page: 23    Date Filed: 08/07/2026 Entry ID: 5670140

its ruling would "provid[e] little guidance on the appropriate resolution of the merits" because "the factual record [was] yet to be fully developed." *Smith*, 95 F.4th at 1213. Neither case establishes that this statute is narrowly tailored.

The through-line across every case that has upheld a similar statute is that the statute provided donors a way to avoid being named on communications they did not intend to fund. *See Rio Grande Found. v. Oliver,* 154 F.4th 1213, 1228 (10th Cir. 2025); *Gaspee Project*, 13 F.4th at 89. The through-line across every case that has struck one down is that it did not. South Dakota's statute falls squarely in the second category, and Defendants have offered no answer to that. *See Wyoming Gun Owners v. Gray*, 83 F.4th 1224 (10th Cir. 2023); *Dinner Table Action v. Schneider,* 2025 U.S. Dist. LEXIS 134052, at \*19 (D. Me. July 15, 2025).

### 3. The $100 threshold is not narrowly tailored.

Every circuit that has upheld a comparable on-ad donor disclaimer did so at significantly higher spending floors: $1,000 in *Gaspee Project*, 13 F.4th at 88; $2,000 in *Smith*, 95 F.4th at 1211; $5,000 in *No on E*, 85 F.4th at 498. South Dakota's $100 threshold sweeps in the most modest

18

grassroots advocacy. SFLA's own communications cost $116.62. App. 44; R. Doc. 44, at 2.

Defendants invoke *Buckley v. Valeo*'s statement that "setting of spending thresholds is 'best left . . . to congressional discretion.'" Appellees' Br. 41 (quoting *Buckley*, 424 U.S. at 83). But that deference was extended in the context of contribution disclosure to candidate campaigns—where the government has independent interests in detecting violations of contribution limits. *See Buckley*, 424 U.S. at 82–83. That interest is absent here. The Supreme Court has repeatedly "held that 'independent expenditures . . . do not give rise to corruption or the appearance of corruption.'" *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 751 (2011) (cleaned up) (quoting *Citizens United*, 558 U.S. at 357).

The cases Defendants cite as upholding similar thresholds pre-date *Bonta* and involved none of Section 12-27-16's accompanying burdens— no compelled on-ad donor roster, no 48-hour year-round filing, no criminal penalties. *See* Appellees' Br. 40 (citing *Minn. State Ethical Practices Bd. v. NRA*, 761 F.2d 509 (8th Cir. 1985); *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34 (1st Cir. 2011)). Under *Bonta*, the

19

question is whether the statute as a whole is narrowly tailored. Defendants have made no showing that compelled donor disclosure applied to any independent communication expenditure of at least $100 meaningfully advances voter understanding.

4. **Section 12-27-16 is not narrowly tailored because its reach extends beyond election speech and lacks any pre-election window.**

Defendants contend that reading the definition of "independent communication expenditure" together with those of "candidate" and "ballot question" *in pari materia* limits Section 12-27-16 to express advocacy. Appellees' Br. 41–44. That construction fails. South Dakota law defines "expressly advocate" with specificity. SDCL § 12-27-1(9). The legislature knew how to use that term and chose not to in Section 12-27-16, instead choosing the materially broader word "concerning." The *in pari materia* canon harmonizes statutes addressing the same subject—it does not authorize substituting a more restrictive operative standard for the one the legislature actually enacted. Moreover, the definition of "independent communication expenditure" that Defendants invoke as the narrowing device itself uses "concerning a candidate or ballot question." SDCL § 12-27-1(11). Defendants' own *in pari materia*

20

reading therefore preserves the breadth they claim it cures. Nor do the definitions of "candidate" and "ballot question" supply the missing limitation: those definitions identify the subject a communication must be about; they do not convert "concerning" into "expressly advocating." A communication can concern a candidate without urging voters to elect or defeat one.

Defendants' reliance on cases upholding statutes without explicit temporal windows misreads the authorities. The Rhode Island statute upheld in *Gaspee Project* expressly limited its application to "independent expenditures made within one year of an election and to electioneering communications made either within thirty or sixty days of an election." 13 F.4th at 88–89. That explicit window was part of what the First Circuit found narrowly tailored. *Smith* and *No on E* involved contributor thresholds of $2,000 and $5,000, respectively, which functionally constrained their reach. *See Smith*, 95 F.4th at 1211; *No on E*, 85 F.4th at 498. South Dakota's statute has no equivalent limiting feature.

The government's informational interest is election-proximate by design. *Buckley* identified that interest as giving voters information

21

about "where political campaign money comes from." 424 U.S. at 66. That interest peaks in the weeks before an election, when voters are making decisions, and diminishes sharply when no election is imminent. A statute that compels public donor identification for communications published months or years before any election serves the asserted interest weakest precisely when it imposes disclosure on the most parties. That inverse relationship between burden and informational value is the opposite of narrow tailoring.

**5.  The 48-hour filing requirement confirms rather than cures the statute's lack of fit.**

Defendants answer the 48-hour filing argument by noting that SFLA controls its own communications and can anticipate any reporting needs in advance. Appellees' Br. 45. The tailoring question, however, is not whether compliance is administratively foreseeable. It is whether the reporting obligation is calibrated to the government's informational interest. Section 12-27-16 imposes a rapid, criminal-sanction-backed filing obligation on any group that disseminates a communication concerning a candidate—a trigger broad enough to reach issue advocacy organizations that do not maintain election-specific donor records and whose donors have no connection to the speech at issue.

22

Appellate Case: 26-1503    Page: 28    Date Filed: 08/07/2026 Entry ID: 5670140

Defendants invoke *Iowa Right to Life*, 717 F.3d at 595–96, for the proposition that this Court has upheld 48-hour filing requirements. Appellees' Br. 45. But *Iowa Right to Life*, as explained, preceded *Bonta* and did not apply narrow tailoring. Further, it involved reporting obligations for organizations that had already been determined to be political committees—entities whose donor records existed because they were assembled for electoral purposes. *Iowa Right to Life*, 717 F.3d at 582. Section 12-27-16 imposes the same rapid-filing obligation on groups that receive general-fund donations with no necessary connection to electoral speech. *Iowa Right to Life* does not hold that a 48-hour filing requirement satisfies narrow tailoring regardless of what it attaches to.

The district court dismissed the filing obligation as "event-driven" rather than ongoing. Add. 33; App. 75; R. Doc. 44, at 33. Whether a reporting obligation recurs is irrelevant to whether it is narrowly tailored. The question under *Bonta* is fit. A one-time filing requirement may be narrowly tailored when it attaches to a statute that otherwise calibrates its reach to an election-focused informational interest. It is not narrowly tailored when imposed at a $100 trigger, year-round, on

23

communications that need only mention a candidate, backed by criminal sanctions on organizations that do not maintain election-specific donor records. The 48-hour filing requirement does not save the statute's narrow tailoring; it confirms the absence of it.

## III.   Section 12-27-16 is unconstitutional as applied to SFLA.

SFLA engages only in issue advocacy; its donors are national contributors with no necessary connection to South Dakota; its communications cost barely more than $100; and its donors face documented risks of retaliation. Defendants' sole response to all of this is that the statute does not reach SFLA's communications at all. That construction fails for the reasons set out above, and Defendants have not shown how the statute as applied to SFLA meets exacting scrutiny.

### A.   Section 12-27-16 reaches SFLA's issue advocacy communications.

Defendants contend that Section 12-27-16 does not reach SFLA's issue advocacy at all. Appellees' Br. 48–50. For the reasons set out in

24

Section I.A, that statutory construction fails. The as-applied

constitutional questions must be addressed on the merits.

**B.  SFLA and its donors face particular harm due to their speech on the controversial issue of abortion.**

A plaintiff prevails on an as-applied First Amendment challenge to a

disclosure law by showing that the donor disclaimer requirement could

lead to "economic reprisal, loss of employment, threat of physical

coercion, and other manifestations of public hostility." *NAACP*, 357 U.S.

at 462. Courts have long held that government disclosure laws must not

be used to compel public identification of contributors where there is a

documented risk of retaliation against those donors. *See, e.g.*, *Lyng v.

Int'l Union*, 485 U.S. 360, 367 n.5 (1988); *Thornburgh v. Am. Coll. of

Obstetricians & Gynecologists*, 476 U.S. 747, 767 (1986); *NAACP*, 357

U.S. at 462. SFLA has made that showing. Defendants contend that

SFLA sets forth no facts showing a reasonable probability that its

donors would face threats, harassment, or reprisals if their names were

disclosed. Appellees' Br. at 26. But neither *NAACP* nor *Bonta* requires

individual donor declarations—the standard is an objectively

reasonable probability of harm, which can be established through

Appellate Case: 26-1503   Page: 31   Date Filed: 08/07/2026 Entry ID: 5670140

organizational evidence and documented third-party reporting. *Bonta*, 594 U.S. at 618–19; *NAACP*, 357 U.S. at 466.

The Supreme Court has recognized that abortion is one of the most "bitterly divisive" issues of "the past half century," *Dobbs*, 597 U.S. at 292. The record contains evidence of "unprecedented levels of threats, vandalism and acts of destruction" targeting pro-life organizations and their donors since mid-2022. App. 13; R. Doc. 24, ¶ 47. SFLA's treasurer declared that if compelled to disclose its top five donors, "donors may reduce the amount of their donations or stop donating entirely." Add. 48; App. 94; R. Doc. 82, at 4. That is precisely the chilling effect the First Amendment protects against.

Amicus characterizes *First Choice* as merely "an Article III standing decision" that did not apply exacting scrutiny, narrow tailoring, or fit and notes that it involved a targeted investigative subpoena rather than a general disclaimer regime. Amicus Campaign Legal Ctr. Br. 28. But the constitutional injury *First Choice* recognized—that compelled disclosure of donor identity inflicts ongoing harm to First Amendment associational rights "not just when a demand is enforced, but when it is made and for as long as it remains outstanding," 146 S. Ct. at 1125—is

Appellate Case: 26-1503    Page: 32    Date Filed: 08/07/2026 Entry ID: 5670140

not a feature of targeted subpoenas specifically. A statute that imposes the same compulsion automatically on every covered organization, continuously and without any individualized determination, is at least as threatening to association as a one-time investigative demand. That injury is precisely what *Bonta*'s narrow tailoring requirement asks the State to justify.

Defendants contend that SFLA's donors have no cognizable expectation of privacy because SFLA is a public advocacy organization that seeks public promotion of its message. Appellees' Br. 51. That argument is foreclosed by *Bonta*. The plaintiffs in *Bonta* were public advocacy organizations that openly promote their missions. The Supreme Court held their donors' associational rights were nonetheless protected and struck down California's disclosure requirement under exacting scrutiny. *Bonta*, 594 U.S. at 616–17. The First Amendment has never conditioned associational privacy on whether an organization keeps a low profile. *NAACP v. Alabama*, 357 U.S. at 462; *see also* 26 U.S.C. § 6104 (exempting tax-exempt organizations from public donor disclosure).

Appellate Case: 26-1503   Page: 33   Date Filed: 08/07/2026 Entry ID: 5670140

**C. The geographic mismatch between SFLA's national operations and South Dakota's disclosure requirements demonstrates Section 12-27-16 is not narrowly tailored.**

Because SFLA is a national organization based in Fredericksburg, Virginia, App. 43; R. Doc. 44, at 1, its top five donors are its five largest *national* donors over the preceding twelve months. These donors likely have no connection to South Dakota, no interest in South Dakota politics, and no intention that their contributions be used for South Dakota communications. Yet Section 12-27-16 provides no off-ramp by which those donors' contributions can be excluded, meaning each of those donors' names must be emblazoned on every communication SFLA makes in South Dakota that exceeds $100.

Defendants' asserted informational interest is to inform voters "who is speaking about a candidate shortly before an election," *Citizens United*, 558 U.S. at 369, but the on-ad donor disclaimer tells South Dakota voters nothing meaningful about who is financing political speech in their state. The First Circuit recognized the importance of geographic tailoring in *Gaspee Project*, where the court noted that Rhode Island's statute required the communication be "targeted to the relevant electorate," meaning it "can be received by two thousand or

28

more persons in the district the candidate seeks to represent." 13 F.4th at 88–89 (cleaned up) (quoting R.I. Gen. Laws § 17-25-3(16)). South Dakota imposes no comparable targeting requirement.

Defendants accuse SFLA of trying to "circumvent South Dakota's laws by delivering its message from outside the state's borders." Appellees' Br. at 51–52. But the circumvention accusation mistakes the constitutional question. The question is whether requiring SFLA to name its top five national donors on those communications is narrowly tailored to the informational interest Defendants assert: informing South Dakota voters about who funds political speech in their state. Defendants leave that question entirely unanswered.

**D.    Section 12-27-16 is not narrowly tailored as it pertains to SFLA's speech.**

The government bears the burden of demonstrating narrow tailoring. *FEC v. Ted Cruz for Senate,* 596 U.S. 289, 307 (2022). It has not met that burden as applied to SFLA. SFLA engages only in issue advocacy. Its donors are national contributors with no necessary connection to South Dakota or the communications at issue. Its covered communications cost barely more than $100. The on-ad donor disclaimer of five donor names consumes a disproportionate share of the

29

Appellate Case: 26-1503    Page: 35    Date Filed: 08/07/2026 Entry ID: 5670140

limited ad space. Its donors face documented risks of retaliation that the record amply supports. And the statute provides no mechanism for any of those donors to avoid disclosure. Defendants' only answer is that the statute does not reach SFLA at all. As shown in Sections I.A and III.A, that construction fails. Defendants have never explained how compelling SFLA to name its top five national donors on its issue advocacy communications meaningfully advances voter understanding of South Dakota political speech. That is the narrow tailoring question, and Defendants have left it unanswered.

## IV. Section 12-27-16 is unconstitutionally overbroad.

Section 12-27-16 applies year-round to any communication "concerning" a candidate, office holder, ballot question, or political party that costs more than $100—a trigger that on its face reaches issue advocacy organizations, civic groups, churches, and any other speaker that mentions a candidate or official in any context, at any time of year. *See* SDCL § 12-27-16(1). That sweeping reach captures a substantial amount of protected speech—issue advocacy, routine civic discourse, and communications with no connection to electoral outcomes. Where a statute "prohibits a substantial amount of protected speech relative to

30

its plainly legitimate sweep, then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid." *United States v. Hansen*, 599 U.S. 762, 769–70 (2023) (cleaned up).

The Supreme Court has upheld disclosure and disclaimer requirements before, but none approaching the scale of Section 12-27-16. Section 12-27-16 mandates a disclosure report within 48 hours of the dissemination of any communication that exceeds $100 in value and concerns a political candidate. SDCL § 12-27-16(2); it further mandates that the top five donors be listed in the advertisement itself. SDCL § 12-27-16(1)(c). This requirement applies year-round. SDCL § 12-27-16(1)(c). On its face, the statute reaches a national issue advocacy organization texting voters about a candidate's voting record, a civic group sending a $101 mailer that mentions a local official, and a church distributing a voter guide—none of whom are engaged in anything the Supreme Court has ever treated as regulable electoral speech.

Section 12-27-16 is far more sweeping than the reporting requirement upheld in *Citizens United v. FEC*, which only required names to be included in reports rather than the ads, had an indexed-to-

31

inflation $200 threshold, and required only intermittent reports tailored to the proximity of the election. *Citizens United*, 558 U.S. at 338.

Defendants' only answer is that the statute's "concerning" trigger is cabined to express advocacy by operation of the "contribution" definition—an argument addressed and rejected at Sections I.A and III.A above. A court-imposed narrowing construction cannot supply the tailoring the statute's text lacks. *See* Appellant's Br. 18–20.

Defendants invoke *Sabri v. United States* for the proposition that facial challenges to criminal statutes are "especially to be discouraged." Appellees' Br. 53 (quoting *Sabri*, 541 U.S. 600 (2004)). But the criminal character of Section 12-27-16 cuts the other way. A speaker who cannot determine whether her $101 communication "concerns" a candidate does not face a regulatory fine—she faces up to a year in jail. *See* SDCL § 22-6-2. That exposure is precisely what magnifies the chilling effect the overbreadth doctrine exists to address. *Hansen*, 599 U.S. at 769–70.

## V.    Section 12-27-16 is unconstitutionally vague.

A statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages serious discriminatory

32

Appellate Case: 26-1503     Page: 38     Date Filed: 08/07/2026 Entry ID: 5670140

enforcement." *Musser v. Mapes*, 718 F.3d 996, 1000 (8th Cir. 2013). Where a statute imposes criminal penalties, the vagueness standard is applied with particular strictness. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982).

### A. Section 12-27-16's definition of "concerning" does not provide fair notice of what speech is regulated.

Defendants concede that "concerning" means "relating to" or "is about." Appellees' Br. 57. That concession is not a defense—it is the problem. A trigger that reaches any communication "relating to" a candidate, office holder, ballot question, or political party provides no meaningful limiting principle. A speaker cannot determine in advance whether her communication crosses the line, and the statute gives her no objective standard.

Defendants' fallback is that their limiting construction—reading "concerning" through the "contribution" definition to require a "purpose of influencing" an election—resolves the ambiguity. Appellees' Br. 57–58. But that construction substitutes one vague standard for another. Whether a communication was made "for the purpose of influencing" an election is a subjective inquiry that turns on the speaker's intent—a standard that neither the speaker nor the government can objectively

33

apply in advance. Worse, the "for the purpose of influencing" text in the statute applies to the donors, not the speaker. A speaker with no electoral purpose cannot know whether a prosecutor or court will later characterize its communication—or a donor's contribution to that speaker—as having been made for the purpose of influencing an election. That is not fair notice. It is precisely the kind of standardless trigger that the void-for-vagueness doctrine prohibits.

## B. This Court should follow the precedent of its sister circuit.

The Tenth Circuit's analysis in *Wyoming Gun Owners* is instructive. There, the court found that Wyoming's requirement that organizations disclose contributions that "relate to" an electioneering communication was void for vagueness as applied because the bare relational phrase provided no objective standard for determining which donors triggered the disclosure obligation. 83 F.4th at 1247. The phrase "authorizes Wyoming to sanction [the organization] for failing to adhere to the 'best' method for deciding which contributions . . . relate to some communication—whatever it decides is best on an 'ad hoc and subjective basis.'" *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972)).

34

South Dakota's "concerning" trigger presents the same deficiency at the threshold level. Just as Wyoming's "relate to" gave organizations no objective standard for identifying which donors to report, South Dakota's "concerning" gives speakers no objective standard for determining whether their communications are covered. A speaker cannot know in advance whether a communication "concerning" a candidate triggers the statute's requirements—and under criminal penalties of up to a year in jail, it cannot afford to guess wrong. *See* SDCL § 22-6-2. The Constitution requires more precision than that. *Hoffman Estates*, 455 U.S. at 499.

## Conclusion

For the foregoing reasons, SFLA respectfully requests that this Court reverse the district court's dismissals of its facial compelled speech, overbreadth, and void-for-vagueness claims; reverse the district court's grant of summary judgment to Defendants on SFLA's as-applied compelled speech claim; and enter summary judgment for SFLA on its as-applied compelled speech claim.

Date: August 5, 2026

Appellate Case: 26-1503    Page: 41    Date Filed: 08/07/2026 Entry ID: 5670140

Respectfully Submitted,

/s/ Jeffrey M. Schwab

Jeffrey Schwab
Timothy Kilcullen
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
tkilcullen@ljc.org

*Counsel for Appellant*

36

## Certificate of Compliance

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,495 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point Century Schoolbook font using Microsoft Word for Mac version 16.109.3.

A virus detection program was run on the brief and no virus was detected.

/s/ Jeffrey M. Schwab

Jeffrey Schwab
*Counsel for Appellant*

Appellate Case: 26-1503    Page: 43    Date Filed: 08/07/2026 Entry ID: 5670140